```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ISRAEL GAMERO,

                Plaintiff,

        v.                              15 CV 2697 (KPF)

KOODO SUSHI CORP., et al.,

                Defendants.

------------------------------x
                                        New York, N.Y.
                                        July 15, 2015
                                        4:00 p.m.

Before:

                HON. KATHERINE POLK FAILLA,

                                        District Judge

                        APPEARANCES

MICHAEL FAILLACE & ASSOCIATES, P.C.
     Attorneys for Plaintiff
BY:  SHAWN CLARK

MICHELLE KOO
     Pro Se Defendant
```

1        THE DEPUTY CLERK:  In the matter of Israel Gamero, et
2    al. v. Koodo Sushi, et al.  If counsel and parties could say
3    their names for the record.
4        MR. CLARK:  Shawn Clark from Michael Faillace &
5    Associates for the plaintiffs.  Good afternoon.
6        THE COURT:  Good afternoon.  Is Ms. Gutierrez not
7    interested in showing up?
8        MR. CLARK:  I apologize.  Ms. Gutierrez is on
9    vacation, so I filed an appearance earlier today.
10       THE COURT:  It hasn't made its way to me.  That's
11   fine.
12       Hi, Ms. Koo.
13       MS. KOO:  Good afternoon.  I'm sorry.  I don't know
14   what the procedure how to do it.  My name is Michelle Koo.
15       THE COURT:  Ms. Koo, let me ask you the easy question.
16   How do you pronounce the name of your business?
17       MS. KOO:  Koodo Sushi.
18       THE COURT:  There is a Mr. Koo perhaps, a Raymond Koo?
19       MS. KOO:  Raymond Koo was my brother.  When we formed
20   the corporation was in 2002, and you needed someone to sign the
21   paper as a witness or someone.  So he put his name to help me
22   do it.  He has nothing to do with us.  And I have from day one
23   the corporation tax return.  There is nothing with him.  He has
24   no interest in this issue.
25       THE COURT:  It is your company and your company alone.

```
 1                MS. KOO:  My company alone, yes.
 2                THE COURT:  Okay.
 3                MS. KOO:  2009 when I divorced, it is on my own.
 4    Before, it was me and my husband.
 5                THE COURT:  So, 2002 when the company was formed --
 6                MS. KOO:  Is formed, yes.
 7                THE COURT:  That was your brother assisting you or
 8    being a signatory?
 9                MS. KOO:  A secretary or something.  I don't know what
10    is that.
11                THE COURT:  He was a secretary of the company?
12                MS. KOO:  Yes, he signed it because they needed two
13    people or some people to sign, so he helped to sign it.
14                THE COURT:  Okay.  Your husband was not involved in
15    2002?
16                MS. KOO:  No.  It is only me.  But when time we
17    divorced and the whole company belongs to me, because he took
18    everything else.  I took the company.
19                THE COURT:  Thank you very much.  I'll ask a couple of
20    questions of Mr. Clark right now.
21                MS. KOO:  Sure.  May I sit down?
22                THE COURT:  Yes, please.  It is easier if you're
23    speaking to me, I'll ask you to stand so I can see you and hear
24    you, otherwise you can sit down.
25                MS. KOO:  Thank you.
```

1          THE COURT:  Mr. Clark, have you or Ms. Gutierrez been

2     in contact with Ms. Koo since she appeared in this case?

3          MR. CLARK:  Yes, we have.  I did also have a

4     conversation with Ms. Koo prior to this conference about some

5     of the issues, including Mr. Raymond Koo.  I understand that

6     both him and of course the defendant, defendant corporation are

7     in default presently.  Given her representation concerning

8     Mr. Raymond Koo, I am inclined to dismiss him.  I would need to

9     confer with my clients in order to simply substantiate what I'm

10    being told here.  I do think one of the motivating factors

11    behind naming him in this action is that the New York State

12    Department of State filings for the corporation do include him

13    being referenced I believe several times.

14         THE COURT:  Yes.  Perhaps for the reasons she has

15    suggested to us.

16         MR. CLARK:  Exactly.  I do want to try to verify that

17    as best I can.  Otherwise I'm inclined to dismiss him from the

18    case as long as all of that proves true.

19         THE COURT:  We have a different issue, sir, and you

20    know what it is because you are about to hint at it.  That is

21    that the corporation itself cannot be represented by Ms. Koo.

22    The corporation can't go pro se and it needs a lawyer.  Yet it

23    might be counterproductive to pursue default judgment

24    proceedings against the corporation when its principal is right

25    here, seeming to be interested in resolving or at least

1   addressing this litigation.

2           Do you agree?

3           MR. CLARK:  I agree completely.  I did speak prior to
4   this conference with Ms. Koo.  I served her with our initial
5   disclosures and some beginning discovery requests.

6           But after talking with her and understanding it may
7   not be helpful to be sending legally worded interrogatories and
8   document demands, I said it may be helpful just to have some
9   informal discovery of what documents do exist in the case.  And
10  I also asked if there were any voluntarily financial
11  disclosures she would like to make.  She made many references
12  to the fact this is a situation where her business does not
13  have substantial assets.

14          THE COURT:  By "substantial assets," do you mean
15  assets sufficient to meet the threshold?

16          MR. CLARK:  Well, assets sufficient to pay the
17  potential judgment in this action.

18          This is a case where, from my conversations with her,
19  I don't believe there is any real dispute that at least two of
20  the three plaintiffs were paid at a salary rate without any
21  real attempt to pay them hourly at all.  Often the salary
22  calculations in these kinds of cases lead to very substantial
23  damages.  We did serve a damages calculation on the defendants,
24  and I know she is very distressed about that, given the amount
25  of potential liability in the case.  And we did have

1   conversations about the financial status of her business.
2              I thus asked her to provide some sort of financial
3   documentation, if she can, in advance of a settlement
4   conference.  I did try to explain what the settlement
5   conference may look like before a magistrate.  And then see if
6   we can reach some sort of amicable resolution before we really
7   rely on any formal discovery mechanisms or like.
8              THE COURT:  All right.  I understand what you are
9   saying and I am going to talk to her in a moment about this.  A
10  related question for me is this:  We are at a very early stage
11  of the litigation.  It is usually at this initial conference
12  that you and I talk about whether it is appropriate to seek
13  conditional certification of a collective action, and whether
14  the discovery protocols in the case should reflect time for a
15  motion or a stipulation.  I don't know, based on your knowledge
16  of the financial situation or your ever growing knowledge of
17  the financial situation of the defendants, whether we wish to
18  engage in motion practice.
19             MR. CLARK:  I don't think that's necessary, your
20  Honor.  I think the best chance for the best possible recovery
21  for the individuals who are in this action is to proceed as
22  individuals.
23             THE COURT:  Okay.  Then, should we consider -- I'll
24  talk to Ms. Koo about this in a moment -- endorsing the case
25  management plan that you have provided for me, explaining to

1    Ms. Koo what that means, and what a settlement conference can
2    often result in or how it would progress, and what would happen
3    if it fails?
4             MR. CLARK:  Yes.  I think that sounds perfect, your
5    Honor.
6             THE COURT:  Thank you.
7             Ms. Koo, you're welcome to sit down as well.  Let me
8    talk to you just what we were talking about.  There are a
9    couple of things at issue in this case that I would like to
10   explain to you.  In so doing, I'm not attempting to provide you
11   legal advice.  I'm simply telling you things that come up at
12   conferences of this type.
13            You are of course able to proceed pro se without the
14   assistance of an attorney and you are doing that right now.
15   The law is such that a company may not do that.  So, Koodo
16   Sushi may not be represented by you, and somebody has to speak
17   on its behalf.
18            That said, at this time there doesn't seem to be a
19   reason to suggest that Koodo is in default of its obligations
20   in this lawsuit, because here you are trying to resolve the
21   matter on your behalf and on its behalf.  So for the moment, at
22   least, we'll put Koodo to the side for a moment.
23            The other thing we were talking about is this case,
24   when it was initially filed, had within it a suggestion that
25   the plaintiffs might wish to add other parties, other delivery

1    persons.  And sometimes that is done by motion practice where
2    the plaintiff asks me to define a class in a certain manner,
3    and sometimes it is done by the parties' agreement as to who is
4    within the class.
5             In this case, what Mr. Clark and I were just talking
6    about is that there are several named plaintiffs in the case,
7    and it might be best for them and for this case if we keep the
8    group that now exists and not have motion practice that might
9    be costly and might be complicating for other reasons.  So,
10   what we're going to do for now is this case will proceed with
11   these two plaintiffs, three plaintiffs, excuse me, no.
12   Mr. Gamero and Mr. Sanchez, is that correct?
13            MR. CLARK:  No, there's three, your Honor.
14   Mr. Gamero, Mr. Mastranzo, and Mr. Sanchez.
15            THE COURT:  Thank you very much.  So there are these
16   three plaintiffs.  And if there is not going to be discussion
17   about this motion practice regarding expanding the class of
18   plaintiffs, what happens next in cases of this type is
19   discovery.
20            Now, am I correct have you filed an answer, Ms. Koo?
21            MS. KOO:  Yes.
22            THE COURT:  That's what I thought.  So discovery is
23   the period of time in a case where the parties exchange the
24   information that each side believes is relevant to its claims
25   or to its defenses.  In cases of this type, what typically

1    happens is that companies like yours are asked for records that
2    they may have of their employees, their schedules, their
3    payments, how they were paid, if there are electronic or paper
4    documents evidencing that.  Sometimes folks are asked questions
5    about the notices that they provide to their employees about
6    their rights under certain statutes, things of that nature.
7    And especially in cases of this type, it can be helpful, I'm
8    not saying it is necessary, but it can be helpful to exchange
9    certain documents early on so that both parties really get a
10   sense of just how much substance there are to these claims and
11   how much it will cost to litigate them.
12            MS. KOO:  Okay.
13            THE COURT:  So, I will give you a period of
14   approximately 120 days to get this all done.  I am suggesting
15   to you that you may find it useful to get your materials
16   together very early and to share them with Mr. Clark and his
17   law firm, and he will share his relevant materials with you
18   all.
19            The next step would then be to see whether there is a
20   basis to settle the case.  Sometimes the parties can settle on
21   their own.  Oftentimes in cases of this type, they receive
22   assistance from either a court-appointed mediator or a
23   magistrate judge.  And without, again, making the decision for
24   you, I can tell you that you have Judge Netburn as a magistrate
25   judge.  She's in this building.  She has settled many cases of

1    mine, and I think she's very good -- they're all very good at
2    what they do, but she is especially good at helping parties
3    determine whether a case can be settled or not.
4            Unless the parties have an objection, it may make the
5    most sense to refer the case to Judge Netburn in approximately
6    a month, and then you can decide when and if it is fruitful to
7    go before her.
8            Just a couple of things to keep in mind.  When I
9    endorse this schedule, there will be a number of dates in it.
10   Really, for me, the important date is the end date of
11   discovery, which ends up being in the middle of November.  I'm
12   one of those judges who is quite stringent about deadlines.
13   So, I believe you have enough time to figure out your documents
14   and to exchange them and to talk between yourselves.  I would
15   ask you not to ask for extensions, because I won't give them to
16   you.
17           My hope is that in the next couple of months you can
18   figure out whether this case can settle or not.  If not, you'll
19   get the discovery done that you need to get done.  If it turns
20   out this case does not settle and discovery concludes without
21   settlement, you'll come before me in November to talk about
22   where we are in the case and what you both would like to do and
23   whether this is a situation that for which a trial would be
24   useful, whether there is something else that can be done.
25           So, I will set a conference right now for November 24

1   at 3:30.  Don't worry.  I'll be sending you a document with
2   that date in it.
3           MS. KOO:  November 24 I won't be here.
4           THE COURT:  Where will you be?
5           MS. KOO:  I will be in China.
6           THE COURT:  Okay.
7           MS. KOO:  I'm leaving on November 17.
8           THE COURT:  November 17.  When will you return?
9           MS. KOO:  Return December 5.
10          THE COURT:  All right.  I'll look at our calendar and
11  see if we can get something either before the 17th or after the
12  5th.
13          MS. KOO:  Sorry.  It is very important.  It is my
14  father.  We need to have a ceremony and I need to go.
15          THE COURT:  I understand that.
16          MS. KOO:  Sorry.
17          THE COURT:  All right.  Mr. Clark, I should ask you,
18  do you have any commitments during that time period that you
19  know of?
20          MR. CLARK:  No.  Nothing other than like the
21  traditional Thanksgiving period.
22          THE COURT:  I'll try not to have something on
23  Thanksgiving.  Okay.
24          So, Mr. Clark, does it make sense to do as I've just
25  suggested, to endorse the case management plan, to set up the

1    issuance of a referral to Judge Netburn in about 30 days, and
2    to understand you will be speaking with Ms. Koo on a regular
3    basis about the discovery you have and the discovery you need?
4             MR. CLARK:  Yes.  Absolutely, your Honor.  I think a
5    settlement conference may be the best way of resolving the
6    case.
7             THE COURT:  Should I issue the referral order sooner
8    than 30 days, sir?
9             MR. CLARK:  Some of it depends on what timetable the
10   defendants can produce the documents that we've described.
11   Both the underlying wage documents, and to what degree the
12   voluntary financial documents can be produced as well.  This is
13   a case that strikes me, from what I've heard thus far, is
14   really going to be about the defendant's ability to pay rather
15   than a substantial issues around the merits.  And accordingly,
16   whatever we can get in order to verify defendant's
17   representations before the settlement conference would be for
18   the best.
19            THE COURT:  Then I will keep the 30-day window that
20   I've suggested.  And obviously, if the parties want something
21   sooner, you'll let me know.
22            Ms. Koo, do you understand what I've been talking
23   about with respect to discovery and with respect to how this
24   case will progress?
25            MS. KOO:  As I understand it, I told this gentleman

1    already anything he wants I provide to him.  I have all
2    detailed information, their signature, everything.  The only
3    thing is I told him, like, when I first hire you, I tell you
4    what is your wage, whatever.  The first payroll I write down
5    very detail for.  But I am working by myself seven days a week.
6    No way for me every single pay I'll write down very clearly.
7    So the first one, definitely very clear.  But afterwards it is,
8    especially for two of them, it's the fixed rate.  So it is like
9    450 or 550.  I won't detail and break down.  There is no way
10   for me to do it.  As I explained to him, I said beside this, I
11   have their signature, everything I said.
12            Thank you so much for letting me have the opportunity
13   to defend myself.  Because I call a lawyer, he says $15,000 for
14   retaining fee.  I cannot do it.
15            THE COURT:  I understand.
16            Let me talk to you about a couple more things.  All
17   right.  You may have heard us use some terms, and I want to be
18   sure you know what they are.  In discovery, the parties ask
19   each other for documents.  So you may see "requests for
20   documents," and that means what it says.  They are asking you
21   if you have documents that are relevant or that are responsive
22   to certain things.  And if you do, you oftentimes have to
23   produce them.
24            Sometimes you will hear the word "interrogatories."
25   Interrogatories means questions to you.  They tend to be used

1   to help folks identify who people are, who works at your
2   company, who pays people at your company.  It may be in this
3   case that you may have discussions with Mr. Clark or with
4   Ms. Gutierrez that suggest you don't need formal
5   interrogatories, but that's what they are.  If you see them,
6   that's what they are.
7           Sometimes there may be depositions.  You may have
8   heard that term.  I will tell you what it is.  A deposition is
9   the questioning of someone under oath.  You meet in an office,
10  there is a court reporter, just as we have here, taking down
11  the proceedings, and you are placed under oath.  And someone
12  such as Mr. Clark will ask you questions about the case.  You
13  have the ability to depose people yourself.  But if you hear
14  someone refer to a deposition, that's what we're talking about.
15          Mr. Clark is aware, as I am aware, that you have some
16  financial issues that are occurring right now and he may make a
17  decision and you may make a decision that deposition testimony
18  is just not necessary in this case.
19          At the front end what seems to be the most necessary
20  is for you and he to talk about your documents and to see
21  whether they could answer the questions that he and his clients
22  have.  All right?
23          MS. KOO:  Sure.  One question.  Documentation.  I have
24  the whole thing.  I give to him or give him copy or how this
25  work?

1                THE COURT:  Ah.

2                MS. KOO:  Our pay, right, in one day we have five

3     people together.  Everyone have a printout thing, they have

4     their signature, we all attach together.  Everything in an

5     envelope.  It is this much.  So do I need to give all original

6     to him or how this working?

7                THE COURT:  You and he will talk about this.  If you

8     give him the original, the concern is you want to have a set

9     for yourself.  So it does make the most sense to give him a

10    copy.  If it is electronic, it is much easier than you standing

11    by a photocopier and copying things.  You want to have a record

12    of what you've given to him, so you probably want to keep a set

13    for yourself.

14               MS. KOO:  Thank you.

15               THE COURT:  Do you have any other questions?

16               MS. KOO:  That's all.  Thank you so much.

17               THE COURT:  Certainly.

18               So I will endorse this case management plan.  I will

19    send it to you both.  In 30 days we'll get the referral order.

20    We'll find a post-discovery conference that is not when Ms. Koo

21    is away, and Mr. Clark, I am going to ask you please to get a

22    copy of this transcript for today's proceeding, and when you

23    receive it, and you can receive it just in the ordinary course,

24    please send a copy to Ms. Koo so she has a record of what

25    happened here today.

F7F3GAMC

1          MR. CLARK:  Yes, your Honor.
2          THE COURT:  Do you have anything that you want to
3  raise with me today?
4          MR. CLARK:  Nothing from plaintiffs, your Honor.
5          THE COURT:  Thank you both for coming in this
6  afternoon.
7          MS. KOO:  Thank you so much.
8                            o0o