1

G2AHKOO

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ISRAEL GAMERO, et al.,

4                   Plaintiffs,

5           v.                              15 CV 2697 (KPF)

6
    KOODO SUSHI CORP., et al.,
7                                           Conference

8                   Defendants.

9   ------------------------------x
                                            New York, N.Y.
10                                          February 10, 2016
                                            4:40 p.m.
11
    Before:
12
                    HON. KATHERINE POLK FAILLA,
13
                                            District Judge
14
                          APPEARANCES
15
    MICHAEL FAILLACE & ASSOCIATES, P.C.
16       Attorneys for Plaintiffs
    BY:  RAQUEL A. GUTIERREZ
17
    MICHELLE KOO, Pro Se Defendant
18

19

20

21

22

23

24

25

G2AHKOO

1          (Case called)

2          THE COURT:  When we were last together, which I think

3   was in the fall, there were hopes, and they were mostly mine,

4   that we might be able to resolve this case short of litigation.

5   I do understand that those hopes were unduly optimistic on my

6   part, and now we'll just go forward.  But I guess what we could

7   do is talk about discovery in this case, and I'm happy to do

8   that.  But I think there's a preliminary question which is

9   directed to Ms. Gutierrez.

10          Ms. Gutierrez, right now there are how many

11  individuals who have signed on, have opted in, to be

12  plaintiffs?  I have four on the page that I am looking at -- or

13  three.

14          MS. GUTIERREZ:  It should be three.  And no one has

15  opted in since we originally filed the complaint.

16          THE COURT:  So it's Mr. Gamero, Mr. Mastranzo, and

17  Mr. Sanchez; correct?

18          MS. GUTIERREZ:  Correct.

19          THE COURT:  As a first order of business, is it your

20  contemplation that you would want to be moving for conditional

21  certification of a collective action?

22          MS. GUTIERREZ:  No.

23          THE COURT:  We're sticking with those three?

24          MS. GUTIERREZ:  We're past that stage, I think, yes.

25          THE COURT:  I do understand.  So then the issue is

G2AHKOO

1    discovery; correct?

2                   MS. GUTIERREZ:  Correct.

3                   THE COURT:  Have the parties exchanged any discovery

4    in the course of dealings in the fall?

5                   MS. GUTIERREZ:  Yes.  Ms. Koo was kind enough to come

6    to my office, actually, on more than one occasion to share with

7    me some of the several items that she used to account for -- I

8    would say how she paid and on what frequency she paid the

9    plaintiffs in this case.  It is, I would say, a somewhat unique

10   system.  Obviously, it's not something that I've -- it's not a

11   neat kind of Excel spreadsheet, or anything like that.  So I

12   just wanted to have a conversation with your Honor about if

13   this case does go forward to trial, having a date by which

14   anything which she intends to use and anything that we intend

15   to use just be turned over, seeing as how I don't think the

16   more formal interrogatory and deposition process is necessarily

17   going to be fruitful considering that Ms. Koo is pro se.  I've

18   actually handed over, I believe, document requests.  They are

19   lengthy.  And, ultimately, I just kind of want to know what she

20   would use at trial, just to simplify it.

21                   THE COURT:  I understand.  Are you suggesting, then,

22   rather than have a formal case management plan, we, the three

23   of us, talk about what's out there to be produced and what can

24   be produced?

25                   MS. GUTIERREZ:  Yes, that would be helpful.

G2AHKOO

1          THE COURT:  Have you produced items to Ms. Koo in the

2     course of this case?

3          MS. GUTIERREZ:  I don't think I ended up turning over

4     any.  I don't have that much.  Whatever I have, I will

5     certainly turn over, but I don't believe I got to that.  I

6     think I was just more curious to see what systems she had in

7     place.

8          THE COURT:  Sure.  What are your tangible items, your

9     documents and tangible items?  Are there pay stubs or copies of

10    documents that your clients have?

11         MS. GUTIERREZ:  If anything, it would be something

12    akin to maybe a receipt or -- because they were paid in cash.

13    So there's not much to show on their end.  I'm just trying to

14    remember if there was anything more specific, like an envelope

15    or anything, but I don't think there's much on our end, to be

16    honest.

17         THE COURT:  Is there, for example, any sort of chart

18    that you put together upon speaking with your clients to figure

19    out quite how much you believe they're owed?

20         MS. GUTIERREZ:  Yes, there's a damages calculation.

21         THE COURT:  Has that been shared?

22         MS. GUTIERREZ:  That's been shared.

23         THE COURT:  I don't certainly want to invade attorney

24    work product, but are there other things on that order that you

25    think would be useful to share with Ms. Koo?  Because that

G2AHKOO

1    damages chart wouldn't necessarily come in at trial as an

2    exhibit.  I don't know that it qualifies.

3                MS. GUTIERREZ:  Right.

4                THE COURT:  But it's something that is useful.

5                MS. GUTIERREZ:  Nothing else, really, just the chart

6    and any kind of, for lack of a better word, paper tidbits or

7    something that we got from the plaintiffs; but I don't think

8    it's extensive.

9                THE COURT:  Are you going to depose Ms. Koo in this

10   matter?

11               MS. GUTIERREZ:  Ms. Koo and I have had very candid

12   conversations.  I don't think that a deposition would

13   necessarily -- I don't think that this case would benefit from

14   a deposition the way another case might if they're represented

15   by counsel.  So, no, I can safely say I'm not going to depose

16   Ms. Koo.

17               THE COURT:  Are there other third parties whom you

18   would want to depose in this matter?

19               MS. GUTIERREZ:  No, not that I know of at this time.

20               THE COURT:  Let me talk to Ms. Koo for a while, and

21   then I'll get right back to you.  Thank you.

22               Ms. Koo, good afternoon.  I want to make sure you

23   understand what we've just been talking about, so let me take a

24   little time to do that.  And I'm sorry to the extent you know

25   all of this already.

G2AHKOO

1          MS. KOO:  Okay.

2          THE COURT:  At this stage in the matter, after the

3    complaint has been filed, after you've appeared -- and has

4    Ms. Koo answered?  Is there an answer on record for her?

5          MS. GUTIERREZ:  There is an answer.

6          THE COURT:  Excellent.  The next stage in the case is

7    what's known commonly as discovery.  And the idea of discovery

8    is that the parties share with each other the information that

9    they believe is relevant to the issues in the case.  There may

10   be some things that are kept back.  For instance, if you had

11   hired an attorney and you and your attorney sat up one night

12   putting something together, maybe that wouldn't be produced,

13   and you wouldn't have to speak about your conversations with

14   your attorney.  But in the main --

15         MS. KOO:  I don't have an attorney.

16         THE COURT:  I know.  That's what I'm saying.  I'm

17   giving you just a hypothetical.  I'm sorry.  Maybe that was

18   confusing, so I won't do that again.

19         MS. KOO:  Okay.  Okay.

20         THE COURT:  The issue is the documents and the items

21   that you have that you would use if this case were to go to

22   trial is what you ought to be producing.  So I believe that

23   you've shown a lot of these materials to Ms. Gutierrez.  I know

24   you've had a lot of conversations with her.  I appreciate, on

25   both sides, the professionalism, the cordiality, the civility,

7

G2AHKOO

1   which I hope has characterized your communications.  But what

2   I'm trying to make sure is that there are no surprises here.

3            So what you saw me discussing with Ms. Gutierrez is,

4   to the extent she has things that she's going to use at trial,

5   she's got to show them to you.  She's got to give them to you.

6   I don't know what those things are.  If she had, for example, a

7   copy of a receipt.  If, for example -- and I don't think this

8   happened -- Mr. Gamero went home every time you gave him cash

9   and photocopied the cash and had a record of or had some other

10  way of documenting it, then, yes, they ought to show that to

11  you.  But, really, she's probably going to have very little.

12  In these cases, oftentimes plaintiffs have very little.  If you

13  have records, you need to show them to her.

14           MS. KOO:  Yeah, I did.

15           THE COURT:  You did.  So have you shown her --

16           MS. KOO:  It has their name; has the hour they

17  working.

18           THE COURT:  Yes.

19           MS. KOO:  And on the same day of all the tips, how to

20  pay them, and they signed their name on it.

21           THE COURT:  You've given this to Ms. Gutierrez to look

22  at?

23           MS. KOO:  Yes, yes.

24           THE COURT:  Ms. Gutierrez, do you have a copy of all

25  these things?

G2AHKOO

1          MS. GUTIERREZ:  Yes.  As I mentioned, I do have copies

2     of several items.  I just kind of wanted to do a kind of

3     catch-all of if she knows what she's going to use, put it all

4     in one place, because we did have several meetings where one

5     meeting's receipts -- you brought some receipts and the next

6     meeting there were some envelopes.  So just anything else that

7     she might use.

8          THE COURT:  Of course.

9          Ms. Koo, if you've got anything at home or in your

10    office that relates to your employment of these gentlemen that

11    you have not shown to Ms. Gutierrez, could you show it to her

12    and let her copy it.  Is there anything else out there that you

13    can think of that you might not have given to her?

14         MS. KOO:  I think with different hours, they pay by

15    each week.

16         THE COURT:  Yes.

17         MS. KOO:  And they pay tips every single day.

18         THE COURT:  Yes.

19         MS. KOO:  Every single day has a paper this thick with

20    their sales together, with their name, with how much they get

21    tips.  And every single day.

22         THE COURT:  Yes.  My question is all of those

23    documents you've given to Ms. Gutierrez?

24         MS. KOO:  I give to her all of what she request.  Like

25    the first day they started working and all of those things and

G2AHKOO

1    the first payroll.

2              THE COURT:  Yes.

3              MS. KOO:  I have all of those things.

4              THE COURT:  Let me ask the question this way:  Any

5    paper, any document that you have relating to any of these

6    three gentlemen, have you shown that to Ms. Gutierrez?

7              MS. KOO:  There's tons of them.

8              THE COURT:  I don't know if that's a yes or no to my

9    question.  Is the answer no?

10             MS. KOO:  Anything she request, I give to her.

11             THE COURT:  Okay.

12             MS. KOO:  But anything related to this, there's tons

13   of them, so many years over there.

14             THE COURT:  I see.

15             MS. KOO:  You know, before it's only -- before 2013,

16   they have a flood; they have damage something.  But I think

17   most of them is after this.  And I have every single day over

18   there, just like so many boxes.

19             THE COURT:  All right.  Ms. Gutierrez, were you aware

20   of this before this?

21             MS. GUTIERREZ:  Yes.  I guess I should have phrased

22   this.  I know that there's actually a wealth of paperwork that

23   I haven't seen that is similar to and relates to what I have

24   seen.

25             THE COURT:  I see.

G2AHKOO

1          MS. GUTIERREZ:  It is just a lot for her to,

2     obviously, carry and bring to my office or even copy all at

3     once.

4          THE COURT:  Yes.

5          MS. GUTIERREZ:  That's why I was trying -- I would

6     like to just streamline it that if she were to present

7     evidence, what would she show.

8          THE COURT:  Now I understand that.  Thank you.

9          Ms. Koo, I was misguided.  Now I understand it.  Can

10    we agree that if there is any paper that you have not shown to

11    Ms. Gutierrez that you would want to show to a jury or to me at

12    trial, that you will give it to her to make a copy of?

13         MS. KOO:  Not really.

14         THE COURT:  Wait.  I'm sorry.  Why not?  Maybe I'm not

15    asking the question the right way.  Let's say there's a trial

16    in this case.

17         MS. KOO:  Okay.

18         THE COURT:  And let's say in defending your case, you

19    want to show a piece of paper to me.

20         MS. KOO:  Okay.

21         THE COURT:  Before you do that, you're going to show

22    her first; correct?

23         MS. KOO:  Yeah.

24         THE COURT:  What I'm saying is think about -- I know

25    you've got many, many boxes and many, many documents.  What I'm

G2AHKOO

1   asking you to think about is if you want to use any of that

2   information in this case, if you want to use any of that

3   information in a trial in this case, then get it together and

4   give her a copy of it or give it to her to copy.

5           MS. KOO:  Sure, sure.

6           THE COURT:  Can you make the decision in the next 30

7   days as to anything you might want to use in this case?  Is

8   that too soon a period of time?  Is that enough time?

9           MS. KOO:  I don't know what should I need.

10          THE COURT:  Of course.

11          MS. KOO:  What I told her is anything you want, you

12  let me know.  So I go home digging -- me and my daughter

13  digging for everything, take it out; give to her.  She make a

14  copy; I bring home.  That's all I was doing.

15          THE COURT:  I understand that.  What she's done, I'm

16  sure, is think about what she would need to prove her case or

17  to at least give her information about the issues on her side

18  of the case.  What I'm saying is if you have decided or if you

19  do decide to put anything in at trial other than that

20  information --

21          MS. KOO:  No, no.

22          THE COURT:  -- you got to let us know what it is.

23          MS. KOO:  No, I don't think I have anything.

24          THE COURT:  Okay.

25          MS. KOO:  Only the paper I give to her and similar

G2AHKOO

1    things like that.

2              THE COURT:  Sure.  Can I ask you, please, to think

3    about it for 30 days.

4              MS. KOO:  Okay.

5              THE COURT:  And if there's anything else you want to

6    put into this case, you'll tell us both; okay?

7              MS. KOO:  Okay.  Sure.  No problem.

8              THE COURT:  Then we give you 30 days for that.

9              Now, the next thing is sometimes in these cases there

10   are things called interrogatories or requests for admissions.

11   Yes, you're puzzled and you should be, and that's okay.  I

12   don't think we're going to need those here.  You guys have had

13   enough conversations.  I think you understand each side's

14   position.  So I am telling you, Ms. Koo, that sometimes some

15   attorneys, not usually pro se litigants but they can, file

16   interrogatories.  Interrogatories are simply questions:  Tell

17   me about this.  Tell me about this.  I believe, based on our

18   conversations, that you and Ms. Gutierrez have already

19   discussed everything and that neither one of you has any

20   reluctance to ask each other questions.  So I don't think you

21   need interrogatories.  I just want to make sure you know that

22   they exist.

23             MS. KOO:  Okay.

24             THE COURT:  There is something called requests for

25   admission.  You tell the other side:  Admit that something

G2AHKOO

 1   happened on a certain day.  Admit that this person did

 2   something.  I don't think you need that either, but I'm not

 3   going to tell you.  I'm just letting you know it's something

 4   that is out there, but I believe that you have had all the

 5   discussions with Ms. Gutierrez, so I think you know her

 6   position on things.

 7           The last thing is depositions.  A deposition is a

 8   proceeding where you or someone is asked questions while you're

 9   under oath, and there's a court reporter or a tape recorder

10   nearby taking it down.  I have had cases where the parties

11   don't use depositions; I have had cases where they do.  I've

12   just talked with Ms. Gutierrez, and to make clear, it is her

13   view that she does not need to depose you in this case because

14   you've had all of these conversations and because you've

15   exchanged the documents.

16           MS. KOO:  Yes.

17           THE COURT:  And she doesn't need to depose anybody

18   else in the case.

19           MS. KOO:  Okay.

20           THE COURT:  If you want to take a deposition of

21   someone, then we ought to talk about that.  You don't have to,

22   but you can.  If you do, I'm not going to tell you what to do,

23   of course, but sometimes people find it easier to do

24   depositions by just writing out questions and having the other

25   side respond rather than actually being face to face in a room.

G2AHKOO

```
 1          What I'm also going to ask you to do is, in this
 2   30-day period that I'm giving you, decide if you want to take
 3   depositions.  Again, you don't have to.  I want to make you
 4   aware that this is a thing that exists.  On day 30, you're
 5   going to write me a letter and you're going to write
 6   Ms. Gutierrez a letter.  You're going to give it to both of us.
 7          MS. KOO:  Okay.
 8          THE COURT:  You're going to tell me if there are any
 9   other documents or materials that you want to use and if there
10   are any depositions you want to take or anything else you want
11   to do with respect to discovery.
12          MS. KOO:  Okay.
13          THE COURT:  Does that make sense?
14          MS. KOO:  Yes.
15          THE COURT:  Then when I get that letter, then I'm
16   going to know that we have all of our materials or we don't
17   have all of our materials.
18          MS. KOO:  Okay.
19          THE COURT:  Ms. Gutierrez, let me ask you this:  Is
20   this a bench trial or a jury trial?  And/or are you changing
21   your mind?
22          MS. GUTIERREZ:  No, I think we have not requested a
23   jury.  I don't believe Ms. Koo has requested a jury.  So a
24   bench trial would be fine.
25          THE COURT:  On some level that makes sense.
```

G2AHKOO

```
 1              Ms. Koo, let me explain what we're talking about.
 2     There are different types of trials, and not every statute
 3     provides for the ability to have a jury hear your case.  Even
 4     when it does, sometimes people prefer to have cases presented
 5     to the judge.  Right now, the way things stand -- and I'm going
 6     to confirm this, but I think that is probably the way it will
 7     stand -- is that neither one of you has asked to have a jury
 8     hear your case.  And what that means is you'll each talk to me.
 9     The trial will be me deciding the factual issues and the legal
10     issues.  If that's the way we go, when I hear from you in 30
11     days, I'll either have you both on the phone or I'll have you
12     come in again, and we'll set a schedule for a trial in this
13     case.  Well, if it's a bench trial, to me that's the same thing
14     as a summary judgment motion, basically.  I don't know that
15     there's a need for summary judgment practice in this case.  So
16     we'll set a date, and I'll talk to you about what a trial is
17     and how you present information to me; and we'll see if we
18     can't agree on some ground rules for how that will take place.
19              MS. KOO:  Sure.
20              THE COURT:  But for now, the phase that we're in is
21     called discovery, and all it is, is designed to make sure both
22     sides have the information they need and nobody is surprised.
23              MS. KOO:  Sure.
24              THE COURT:  That's what I'd like you to do.
25              Now, Ms. Gutierrez, have I forgotten anything in
```

G2AHKOO

1     discovery?  Obviously, I can't provide legal advice, but at

2     least as I'm speaking, I don't want to be inaccurate.  Is there

3     anything I have omitted telling Ms. Koo about discovery?

4               MS. GUTIERREZ:  No.  Again, my only concern is that

5     because there is such a wealth of documents, just to have

6     whatever she pulls out and thinks, oh, I haven't shown it to

7     Ms. Gutierrez, but if this is like something else that I did

8     show her, if she knows that she hasn't shown it to me, make the

9     effort to let me know.

10              THE COURT:  Okay.

11              MS. GUTIERREZ:  That's pretty much it.

12              THE COURT:  Ms. Koo, anything that comes in at this

13    trial will have to have been shown to Ms. Gutierrez beforehand.

14              MS. KOO:  Of course.  Okay.

15              THE COURT:  Even if it looks like something you've

16    already shown her.

17              MS. KOO:  Sure, sure.

18              THE COURT:  You may decide in 30 days I've got no more

19    documents to show her, no depositions I wish to take, but I

20    want to give you that time to think about it and look at your

21    documents.  But none of us wishes to be surprised at a trial.

22              MS. KOO:  No problem.

23              THE COURT:  Least of all me.

24              MS. KOO:  Yes, I understand.  I understand.

25              THE COURT:  Then that's great.

G2AHKOO

1           Anything else we should be talking about today?

2           MS. GUTIERREZ:  No.  It can wait because I'm not

3     familiar with your trial procedures, whether you do it through

4     affidavit or you wanted live testimony, but we can obviously

5     talk about that at the next hearing.

6           THE COURT:  Sure.  Since you've asked, I do directs by

7     affidavit and the crosses in person.  That said, if that is

8     complicated by Ms. Koo's status as a pro se litigant, I can

9     spare the time to do both live.  Doesn't matter to me.

10          MS. GUTIERREZ:  I guess we can discuss that later.

11          THE COURT:  If you'll excuse my grandmother's

12    expression, we'll burn that bridge when we get to it.  When

13    we're done with discovery, we'll plan the trial, but I do

14    understand your concern that you'd like to know before you step

15    in here how my trial days go.

16          MS. GUTIERREZ:  Okay.

17          THE COURT:  That is fine.

18          Yes, Ms. Koo, any questions you have?

19          MS. KOO:  Yes, Judge.

20          THE COURT:  Of course.

21          MS. KOO:  You said I have 30 days; right?

22          THE COURT:  Yes, ma'am.

23          MS. KOO:  Will go to March 10, around?

24          THE COURT:  Let's figure it out.  Yes, it would be,

25    actually, because February has 29 days, I think it's going to

G2AHKOO

1    the 11th of March.  It will be Friday, the 11th of March.

2              MS. KOO:  I need instruction how to do it.

3              THE COURT:  Of course.

4              MS. KOO:  The second is since the business is not good

5    right now --

6              THE COURT:  Yes.

7              MS. KOO:  -- and I try to sublease the bar,

8    everything, to at least share my rent, you know, and still not

9    working well.  So I talked to the landlord.  He say:  You owe

10   me $310,000.  How you want to pay me back?  Because that's

11   during the construction, beginning when we started.  It's not

12   right now.  At that time.  And I say, you know, I do my best,

13   you know, to see how much permit costs, and you can use this to

14   give to the new lease to see how much counter -- and I cannot

15   close down the Koodo Sushi physically in 2015 because all of

16   these debts out there.  So I need to pay the sales tax, the

17   backpay.  It's around 50,000.

18             THE COURT:  I'm sorry.  How much?

19             MS. KOO:  50,000.

20             THE COURT:  Five zero?

21             MS. KOO:  That one, I'm going to work hard on my life.

22   I'm going to pay it because we owe them.

23             THE COURT:  Okay.

24             MS. KOO:  Because in 2008 when the recession first

25   started, we wrote them a letter, you know.  We couldn't pay for

G2AHKOO

1   it at that time.  Till right now, it's a long thing.  And so we

2   tried to close it so I have more time to deal with this one.

3              THE COURT:  Yes.

4              MS. KOO:  Right now I'm frustrated.  Like, right now,

5   I need to back by 5:00 o'clock.  And the one thing is I'm

6   leaving on March 15 and come back on April -- March 19 --

7   March 18, come back on April 17, one month, because I'm

8   going -- my mom is 83 years old.  I'm going to bring her to see

9   more of the job opportunity in New Zealand.  And even though

10  I'm going there, I will always contact with you.  If anything,

11  I can come back.  I talk to them.  I say:  Look, if I'm going

12  to receive your job, get your job, because right now I don't

13  make any income --

14             THE COURT:  Careful.  You just lost your microphone.

15  Just bring it closer to you.

16             MS. KOO:  Sorry.  Okay.  Right now I don't receive any

17  income working so hard.  I cannot survive like this.  I need

18  get an income.

19             THE COURT:  Ms. Koo, I want to make sure I understand

20  what you're saying.  What you're saying is you're traveling

21  with your mom for one month to explore a job opportunity for

22  you?

23             MS. KOO:  Two, one is New Zealand and one is

24  Australia.  I never been there in my life.  I don't know if I

25  can take it or not.  And I don't know anyone to give me advice.

G2AHKOO

1    So, mom, go with me.  She's going with me.  I be back with my

2    mom together to the states on April --

3              THE COURT:  17.

4              MS. KOO:  -- 17, in the morning, so I can directly go

5    to work because I try to finish that way.  It's too much for

6    me.  It's like a nightmare to me.

7              THE COURT:  Okay.  Hang on, Ms. Koo.  The first part

8    of this discussion was about how you could communicate this

9    information to me.  Let me ask the parties, are you sharing

10   e-mails with each other or has it been all by phone?

11             MS. KOO:  Yes, e-mail.

12             MS. GUTIERREZ:  We've been e-mailing.

13             THE COURT:  All right.  Ms. Gutierrez, Ms. Koo is not

14   receiving ECF notices; correct?

15             MS. GUTIERREZ:  I'm not sure.

16             THE COURT:  Ms. Koo, you're not getting e-mails from

17   the court, are you?

18             MS. KOO:  I don't think so.

19             THE COURT:  You'd know.  You'd know.

20             If she were to give to you the letter on the 30th day,

21   could you send it to me, and we'll docket it or could you

22   docket it, however it works?

23             MS. GUTIERREZ:  No problem.  I can file it, too, if

24   that's what you prefer.

25             THE COURT:  That's fine.  That's how it will get to

G2AHKOO

1    me.

2          MS. KOO:  I let you know in one-month period of time.

3    I will be back.  Even if I accept the job, it will be next

4    year, not sooner, because I have so many things here I need

5    taken care.

6          THE COURT:  Yes, I understand that.  Also, let's be

7    clear.  I want this information from you, but if something

8    comes up on the work side that needs your immediate attention,

9    I think Ms. Gutierrez and I are interested in your business

10   remaining afloat.  So you'll tell me if something --

11         MS. KOO:  I don't understand.  What is "afloat"?

12         THE COURT:  I'm sorry.  The Koodo Sushi, is it

13   operational right now?

14         MS. KOO:  We half operation right now.

15         THE COURT:  Yes.

16         MS. KOO:  Because we try to sublease everything out.

17   When everything out, they deal with the landlord directly.  I

18   only deal with landlord with the debts, that's it.

19         THE COURT:  Sure.  Are you today delivering sushi to

20   anybody?

21         MS. KOO:  Yes, right now.  That's why right now I need

22   to go to work by myself.

23         THE COURT:  Okay.  We will let you go to work.  Okay.

24   I understand what you're saying.  Thank you for the

25   clarification.

G2AHKOO

```
 1              MS. KOO:  I'm sorry because I just want to let you
 2     know it's not -- I don't want to -- I just want to let you know
 3     in advance not I'm running out or something.  No, it's not.
 4     I'm always here.  The minute you ask me, I will be here.  But
 5     in this one-month period of time, I will go there, but the
 6     earliest I make decision is -- next year we are starting over
 7     there; this year, I need everything closed down to make sure
 8     everything's okay at the time I'm leaving.
 9              THE COURT:  Yes.  So we would probably be meeting or
10     talking at the end of April when you return.
11              MS. KOO:  Thank you.
12              THE COURT:  Thank you for the clarification.  All
13     right.  Please sit down.
14              Let's go off the record for a minute.
15              (Discussion off the record)
16              THE COURT:  Is there anything else we should be
17     talking about this afternoon?
18              MS. GUTIERREZ:  Nothing further, your Honor.
19              THE COURT:  Thank you.
20              Ms. Koo, anything else?
21              MS. KOO:  Nothing.  I just let you know my schedule.
22     Sorry for this.  Because you told me it's one month, oh,
23     April 10, I'm leaving on April 18.  So that's why.
24              THE COURT:  I completely understand.  We both
25     appreciate you letting us know.  That is fine.  I'll see you in
```

G2AHKOO

1    about two months.  Thank you both.

2              MS. KOO:  Thank you so much.

3              MS. GUTIERREZ:  Thank you.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25