Ga41gamc

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 3    ISRAEL GAMERO, et al.,
 4                  Plaintiffs,
 5            v.                          15 Civ. 2697 (KPF)
 6    KOODO SUSHI CORP., et al.,
 7                  Defendants.           Conference
 8    ------------------------------x
                                         New York, N.Y.
 9                                        October 4, 2016
                                         4:18 p.m.
10
      Before:
11
                     HON. KATHERINE POLK FAILLA,
12
                                         District Judge
13
                          APPEARANCES
14
      MICHAEL FAILLACE & ASSOCIATES, P.C.
15         Attorneys for Plaintiffs
      BY:  SHAWN R. CLARK, ESQ.
16
      LATHAM & WATKINS LLP
17         Attorneys for Defendants
      BY:  SERRIN A. TURNER, ESQ.
18         THOMAS J. GIBLIN, ESQ.
           ERIC L. TAFFET, ESQ.
19         M. THEODORE TAKOUGANG, ESQ.
20
21
22
23
24
25
```

Ga41gamc

```
 1          (Case called)
 2          MR. CLARK:  Shawn Clark, Michael Faillace & Associates
 3     for the plaintiffs.
 4          Before we begin, I just want to apologize to you and
 5     to defense counsel for my tardiness today.  My apologies.
 6          THE COURT:  All right.  You're here now.  First day of
 7     trial you're going to be on time, right?
 8          MR. CLARK:  Most certainly, your Honor.
 9          THE COURT:  Okay.  Or even early.
10          Okay.  And at the back table, go ahead.
11          MR. GIBLIN:  Thomas Giblin, Latham & Watkins, for the
12     defendants, and Michelle Koo is seated next to me.
13          MR. TAFFET:  Eric Taffet for defendants.
14          MR. TAKOUGANG:  Theodore Takougang for the defendants.
15          MR. TURNER:  And Serrin Turner for the defendants as
16     well.  Hi, your Honor.
17          THE COURT:  Hello.  And Mr. Owens is not joining us
18     today, sir?
19          MR. TURNER:  No.  I'm trying to fill his shoes.
20          THE COURT:  I'm not going to comment on that.  That is
21     fine.  Thank you, all.
22          Ms. Koo, I see you as well.  Good afternoon.
23          MS. KOO:  Yes, hello.
24          THE COURT:  Mr. Clark, do I understand that you will
25     be trial counsel on this case?  Is that correct, sir?
```

Ga41gamc

```
 1              MR. CLARK:  Yes, your Honor.

 2              THE COURT:  Okay.  Will you be doing this solo, sir,

 3     or with assistance from your firm?

 4              MR. CLARK:  I believe so, your Honor.  We actually

 5     have a fairly recent associate who's just joined the firm

 6     yesterday, and I think that we were potentially contemplating

 7     having her, Ms. Marisol Santos, work as a second chair.

 8              THE COURT:  Off the record, please.

 9              (Discussion off the record)

10              THE COURT:  I see.  Now normally I put up my fight and

11     I'd indicate that I have a rule of practice against such a

12     thing and that you have to be here from the beginning, but

13     since the folks at the back table keep multiplying

14     exponentially, I don't think it's fair to limit you to just one

15     of you.  So if Ms. Santos is on board, I think that's fine.

16              Sir, while you're standing, I have a few questions

17     about your views on things.  I will then talk to the folks at

18     the back table about some housekeeping matters, and then I will

19     hear from you on the motion *in limine*.

20              The parties have indicated to me that this is a

21     three-day trial.  Can I hope that that's a really overly

22     thoughtful outlook?  I mean, it's not going to take three full

23     days of testimony.  Do we really have three full days of

24     testimony, sir?

25              MR. CLARK:  Your Honor, in my experience, I think that
```

Ga41gamc

1   that could potentially be overestimating it, but certainly the

2   length of cross examinations both ways does determine how long

3   these things go.  I think two days, we could potentially get it

4   done, but I think three is the parties being fairly safe.

5          THE COURT:  Okay.  And your pretrial order suggests

6   the possibility of witnesses to authenticate documents.  I

7   understood from the exhibit lists that there weren't disputes

8   about the authenticity or the authentication of the documents,

9   simply about perhaps their relevance or admissibility at the

10  trial.  Is that correct?

11         MR. CLARK:  I agree, your Honor.

12         THE COURT:  So given that, at this juncture do you

13  contemplate that you'll have witnesses who are called only for

14  the purpose of authenticating things?

15         MR. CLARK:  I don't believe so, your Honor.

16         THE COURT:  And I suppose I can't ask you about

17  rebuttal witnesses because you'll have to see what comes in.

18         In your list of exhibits, there is a collection of

19  Seamless receipts, sir, on the order of about 2100 pages.  I'd

20  like to have all of your exhibits -- and this goes for the

21  folks at the back table too -- by next Tuesday, one week from

22  today, so that I can look at them in advance of trial.  But

23  should I be reading 2100 pages of receipts or is there

24  something in particular that I should be focused on?

25         MR. CLARK:  Yes, your Honor.  Part of the reason for

Ga41gamc

```
1    my delay is I culled the 2100 pages of exhibits and brought
2    them with me, so I have those here today for your Honor.
3    Really what we think that this speaks to is partially the tip
4    deduction claim, which does include Seamless web deductions.
5    We think that this would be relevant for that.  Certainly we
6    could, depending on how liability is determined in the course
7    of the trial, craft a spreadsheet based on the Seamless web
8    information, in order to come up with an estimate of the
9    damages for the tip deduction claim.  And really that's the
10   purpose of admitting all of that, because we think that all of
11   those Seamless web reports, which include information
12   concerning gratuities, could conceivably be relevant for that
13   tip deduction claim.  I don't think that your Honor needs to
14   give any special attention to all 2100 pages of the documents,
15   and certainly if it's found in the course of trial that there
16   is liability concerning tip deductions, then I think plaintiffs
17   would be very happy to craft some sort of helpful exhibit in
18   order to come up with a damages calculation for that claim in
19   particular.
20            THE COURT:  Okay.  Now, sir, I don't believe I've seen
21   any of these records, and I'm not asking to see them now, but
22   do they indicate in particular which plaintiff was affected by
23   which order?
24            MR. CLARK:  I believe that they do, depending, but I'd
25   need to look at them closely.  They vary a little bit in terms
```

Ga41gamc

1    of their content.

2           THE COURT:  Okay.  And sir, I suppose I'll live until

3    the time you show up on the 17th.  I don't have anything else

4    from a housekeeping perspective.  Are there things that you

5    want to raise to my attention other than the *in limine* motion,

6    which I'll address separately?

7           MR. CLARK:  Nothing really from plaintiff's

8    perspective.

9           THE COURT:  If Ms. Santos is on board, she ought to

10   let me know sooner rather than later.

11          MR. CLARK:  Yes.  I'll instruct her to file a notice

12   of appearance as soon as possible.

13          THE COURT:  Thank you very much.

14          Who is taking the oar for the back table?  Mr. Giblin,

15   is it you today, sir?

16          MR. GIBLIN:  It would be me, your Honor.

17          THE COURT:  Okay.  Thank you, sir.

18          The same questions to you in part.  Will there be

19   authentication witnesses?

20          MR. GIBLIN:  There may be one authentication witness.

21   I have not yet had enough time to discuss it with counsel, but

22   as your Honor knows, we did include a summary exhibit, sort of

23   similar in concept to what he wants to do with the Seamless

24   receipts, probably the construction of a spreadsheet

25   summarizing the various schedules and wage payout information

Ga41gamc

1    that we have, so we may choose to call someone from our firm

2    who can walk your Honor through the methodology by which that's

3    put together.

4              THE COURT:  Okay.  And, sir, in that regard, I should

5    ask you this:  When I dealt with Ms. Koo earlier in the case,

6    when she was proceeding pro se, I had a sense that there

7    weren't a complete set of payroll records, but I don't know,

8    because I did not actually see what was produced.  Were you

9    able to locate a complete set of payroll records as to these

10   two individuals?

11             MR. GIBLIN:  Your Honor, I would not rely on the word

12   "complete."

13             THE COURT:  Okay.  Perhaps I should say three, right?

14   Mr. Gamero, Mr. Mastranzo, and Mr. Sanchez?

15             MR. GIBLIN:  Yes.  We believe we have enough to

16   construct at least a reasonable inference of what plaintiffs

17   were paid over the course of that time period.  Certainly I

18   would not describe it as definitive.  But we would appreciate

19   the opportunity to make that case at trial.

20             THE COURT:  Okay.  Because I'm remembering far back

21   from another FLSA case that I had where I thought there was

22   something akin to a presumption that if there is a deficiency

23   in the records, it is, as it were, on you, on the employer to

24   indicate or to demonstrate that payment was made in accordance

25   with these statutes.  Is that correct?

Ga41gamc

1          MR. GIBLIN:  That is correct, your Honor.

2          THE COURT:  Okay.  And your belief, sir, is that by

3     the records that you do have, you will be able to make that

4     showing.

5          MR. GIBLIN:  We will, in good faith --

6          THE COURT:  You will endeavor to make that showing.

7          MR. GIBLIN:  We will endeavor to make that showing

8     based on the evidence that we have in our possession, that's

9     right, your Honor.

10          THE COURT:  Okay, sir.  I believe I have from you

11     electronic versions of the exhibits, is that correct?  They've

12     all been sent to me electronically?

13          MR. GIBLIN:  Yes, except for the seven exhibits on

14     which the summary exhibit will be based, and I'm willing to

15     discuss with the Court how best to approach that exactly.

16          THE COURT:  What I'm wondering is, could I have all

17     the exhibits you think I should have by a week from today?

18          MR. GIBLIN:  I believe that's possible, yes.

19          You will have them by next Tuesday, your Honor.

20          THE COURT:  That is a better answer.  But that is

21     fine.  Okay.  Thank you very much.  Because I would prefer an

22     opportunity, before any of you walk into court, to have read

23     everything and to have a sense of what's going on.

24          In that vein, are there deposition transcripts?

25          MR. GIBLIN:  Yes, there are.  Two depositions were

Ga41gamc

1    taken, one of Ms. Koo and one of Mr. Sanchez, one of the

2    plaintiffs.

3              THE COURT:  Okay.  Would someone be able to email

4    those to my chambers' email account so I can read them in

5    advance of the trial?  I use that not to poison the well or

6    anything along those lines but because it aids me in

7    understanding if someone is going to later claim that there is

8    testimony inconsistent with their prior testimony, so if I get

9    to look at that, that would be useful.  Since you're standing,

10   if I could ask you to send it to me, and if there are any

11   problems, please work it out with Mr. Clark and one of you send

12   it to me.

13             MR. GIBLIN:  I would be happy to do so, your Honor.

14   An electronic version is fine?

15             THE COURT:  That is fine, yes, exactly.

16             Is there anything else you want me to know, sir?  And

17   while we're talking about the three days, is the three days

18   realistic?

19             MR. GIBLIN:  Yes, your Honor, I think it's realistic.

20   As you know, we have five witnesses called.  I think only one

21   will be lengthy.  And there is one consideration I'd like the

22   Court to know, which is that one of our witnesses, who I

23   believe is listed as Ruyi Wu -- Ruyi Wang, but her name is

24   actually Ruyi Wu --

25             THE COURT:  Yes.  That was the issue that plagued you

10

Ga41gamc

```
1    earlier, yes.

2              MR. GIBLIN:  Yes, that's right.

3              She cannot testify on Tuesdays.  She is unfortunately

4    ill and receives treatment on Tuesdays.  So we would like to

5    reserve her for Wednesday morning, if the Court will allow us.

6              THE COURT:  And she's not available Monday?

7              MR. GIBLIN:  She is available Monday, but I am acting

8    on the assumption that plaintiff's case will at least take the

9    afternoon.

10             THE COURT:  I see.  Although --

11             MR. GIBLIN:  I can have her available on Monday,

12   though.

13             THE COURT:  Let me back you up one moment, sir.  If

14   you'll excuse my grandmother's expression, let's burn that

15   bridge when we get to it, because I believe Ms. Wu is the

16   subject of the in limine motion.  She's not?

17             MR. GIBLIN:  No.

18             THE COURT:  She's okay.

19             So then, Mr. Clark, do you have a view?

20             MR. CLARK:  Your Honor, I'm happy to take her out of

21   order and take her on Monday in the afternoon, if that works

22   out, if defense counsel is okay with that.

23             THE COURT:  Sir, does that work for her and you?

24             MR. GIBLIN:  Subject to actually confirming with her,

25   yes, I believe it does, your Honor.
```

Ga41gamc

1          THE COURT:  Could you please.

2          MR. GIBLIN:  I will.

3          THE COURT:  And yes, if need be, if she has medical

4    issues, I will let her come in on Wednesday, but if there's a

5    possibility of evidence closing on Tuesday, it would be also

6    fine to have her testimony in before then.

7          Okay.  Anything else, sir?

8          MR. GIBLIN:  No, your Honor.

9          THE COURT:  Okay.

10          All right.  Mr. Clark, let me hear from you with

11    respect to your motion, please.

12          MR. CLARK:  Yes, your Honor.

13          THE COURT:  And let's just set the table here for a

14    moment.  Other than Ms. Koo and me, no one else was here when

15    this case began, so I am sympathetic to both sides and the fact

16    that there have been changes in personnel.  Similarly, I'm not

17    sure how receptive I am to the notion that someone was delaying

18    or someone could have done something earlier because -- and

19    this is directed as much to the folks at the back table as it

20    is to you -- when Ms. Koo first came before me, I think there

21    were rather significant efforts made to explain to her the

22    discovery process and to get from her the information that we

23    believed was relevant.  So perhaps I may have misapprehended

24    what the relevant information was, but there certainly was an

25    attempt.  Let me understand what happened, how it is you came

Ga41gamc

1    to learn of these folks' existence, and why it is right now

2    that it would be prejudicial for you to have them testify at

3    this trial.

4              MR. CLARK:  Yes, your Honor.

5              Certainly, as you know, I have not been following this

6    case entirely.  Ms. Raquel Gutierrez is now currently at Fox

7    Rothschild, so she's yet another attorney jumping across the

8    lines, as it were.

9              THE COURT:  Yes.  Off the record again.

10             (Discussion off the record)

11             MR. CLARK:  So I came onto this case closer to the

12   period where we were preparing the joint pretrial order.

13   Certainly in the course of discovery, this second period of

14   discovery that occurred following Ms. Koo obtaining defense

15   counsel, paper discovery was exchanged, a deposition was had.

16   In the course of that period we did serve interrogatories,

17   trying to understand the full universe of relevant witnesses in

18   the case.  Some of the individuals who are listed in the joint

19   pretrial order were identified in response to these

20   interrogatory requests, and our motion doesn't speak to them.

21   However, there were these two individuals, Yazhong -- and I

22   apologize, my pronunciation is probably terrible -- Yazhong

23   Zhang and Quirong Lin.  These two individuals were never

24   identified in response to interrogatory requests, so they were

25   not identified in initial disclosures and there was no attempt

Ga41gamc

```
 1    to amend the initial disclosures prior to the close of

 2    discovery to include these two individuals.

 3            THE COURT:  I'm going to ask you to slow down just a

 4    bit, sir, because I'm also reading notes as I'm talking to you.

 5            Go ahead, please.

 6            MR. CLARK:  In the process of putting together the

 7    joint pretrial order, it did come to my attention that when I

 8    raised it as a potential issue in the drafting of the joint

 9    pretrial order, I asked whether or not there were going to be

10    any witnesses who had not been previously disclosed in the

11    discovery process, the defendants indicated that they did not

12    consider themselves bound by the initial disclosures in

13    formulating their witness list.  I said to that extent, to the

14    extent that there are individuals who were not raised in

15    discovery, I would be seeking exclusion, under the plain

16    language of Rule 26.

17            Then, as we were exchanging drafts of the joint

18    pretrial order, I did receive one that included the names of

19    these witnesses.  That was my first introduction to these

20    witnesses being requested in the trial process.  Certainly that

21    kind of notice I think is very problematic.  The defendants,

22    even in their reply to my motion *in limine*, indicated that

23    these are witnesses that possess relevant and in fact essential

24    information for defendants' case, and yet they were never

25    mentioned in the discovery process, never mentioned in
```

Ga41gamc

 1  responses to interrogatories and the like.  Certainly I do

 2  think that there is an argument in defendant's reply that I

 3  guess we shouldn't have truly believed their interrogatory

 4  responses.

 5          THE COURT:  I'm sorry.  Can I hear that again, please.

 6          MR. CLARK:  There was an argument that I think we were

 7  insufficiently diligent in seeking out the names of witnesses.

 8  Other than in an interrogatory asking for the name of all

 9  relevant witnesses that could potentially be brought in at

10  trial, it is unclear to me what further diligence plaintiffs

11  could have really employed in order to discover these names.

12          THE COURT:  I think a point of confusion for me, sir,

13  is that I understand from the defendants that there was a

14  Mr. Zhang and a Ms. Wu who were identified in depositions, and

15  so the individuals who are mentioned now in the pretrial order

16  are neither of these people?  There is a Joe Zhang who is

17  mentioned in the interrogatory response, but that is a

18  different Zhang than Yazhong Zhang, who is sought to be a

19  witness in this case?

20          MR. CLARK:  I believe that's different than the

21  interrogatory response, yes.

22          THE COURT:  Okay.

23          MR. CLARK:  If there is some sort of confusion there,

24  maybe there is a lingering confusion that the individual

25  identified -- if the individual is identified in the

Ga41gamc

interrogatory, I don't have an issue with it, but my understanding is that this is the first time we've ever received this particular information concerning this particular individual.

THE COURT:  Okay.  And, sir, what I'm understanding you to say is that you first became aware of this in discussions about the pretrial order?

MR. CLARK:  Yes, your Honor.

THE COURT:  Your adversaries have suggested a telephone conference on or about the 16th of September of this year.  Do you think that might be the first time you were made aware of this?

MR. CLARK:  I think that that was around the time we were discussing the contents of the joint pretrial order.

THE COURT:  And there seemed to have been an exchange of pretrial orders on the following Monday, September 19th.

MR. CLARK:  I believe that timeline sounds right.  I'd need to check my calendar to confirm, but --

THE COURT:  I'll try to question this way:  Today is the 4th of October.  It's only been in the last three weeks that you were made aware of these individuals?

MR. CLARK:  Yes, absolutely.

THE COURT:  And do you know what roles they played in this case?

MR. CLARK:  No, your Honor.

Ga41gamc

1          THE COURT:  Okay.  All right.  Please continue, sir.

2     Is there anything else you want to just make me aware of?

3          MR. CLARK:  Oh, I don't believe so, your Honor.  I

4     think that we could rest on the papers otherwise.

5          THE COURT:  All right.  I might come back to you on

6     reply.

7          All right.  Is it Mr. Taffet?  Yes?

8          MR. TAFFET:  Yes.  Your Honor, as an initial matter,

9     I'd like to point out what plaintiff's counsel has failed to

10    point out, which is there is no prejudice to plaintiffs in this

11    case as a result of this disclosure.

12         THE COURT:  May I take issue with that, sir.  Again, I

13    accept, first of all, that there are a number of you doing very

14    fine work for Ms. Koo and doing everything possible to give her

15    the best possible defense in this case.  The issue for me, sir,

16    is the following:  It's one thing for you to say, we came on

17    the case late, we've done everything we can, we've worked as

18    hard as we can, and we've come up with this information and

19    that is what happens when you're preparing for trial.  What I

20    find less persuasive to me, although I'm not going to say it's

21    ultimately defeating, is the suggestion that somehow

22    plaintiff's counsel is to blame.  Again, sir, I know you

23    weren't involved in this.  I am telling you, Ms. Gutierrez and

24    I sat with Ms. Koo, and we were solicitous to the point of

25    indulgence early on in this case.  So I take issue on

Ga41gamc

1    Ms. Gutierrez's behalf that in some way she should have done

2    more here.  So I will listen to you about what they knew and

3    when they should have known it, but in terms of saying they

4    should have been more diligent, that is an argument that will

5    not resonate with me.

6          MR. TAFFET:  We understand, your Honor, and we

7    appreciate that effort, and we did not mean to suggest

8    otherwise.  To the extent, however, that plaintiff's counsel

9    suggested that plaintiffs could have deposed these individuals,

10   the notion that they would have or may have deposed them in the

11   initial discovery period we think is not the case, considering

12   they didn't conduct any depositions during that period.

13         THE COURT:  But again, sir, it is not my role to play

14   the part of Ms. Gutierrez in these proceedings.  What I'm

15   telling you is, the way in which discovery was conducted at the

16   beginning was in deference to Ms. Koo's pro se status and the

17   fact that she had an ongoing business to run.  So yes, they

18   could have conducted depositions, but I'm not at the moment

19   willing to say that that was some dereliction of their duty.

20   Maybe ultimately I'll decide it, but I don't think that's your

21   strongest argument.

22         MR. TAFFET:  Okay.  Well, I understand that, your

23   Honor, and we understand that Ms. Koo was given the opportunity

24   and did all she could and showed up at the plaintiff's

25   counsel's offices and tried to respond as best she could, and

Ga41gamc

we think she made every good-faith effort she could to provide

answers to the questions that were posed to her.  And since our

coming on the case and having discovery reopened, the Court

granted a single deposition to plaintiffs, a single deposition

of Ms. Koo, not of anyone else, in an effort to mitigate any

potential prejudice to plaintiffs as a result of reopening

discovery for defendants on the limited basis.  So from that

point forward it's clear that if these witnesses had been

identified, no deposition could have been conducted.  And --

THE COURT:  No, no, no, no, no.  Again, I'll take

issue with you.  Why couldn't someone have written to me and

said, why couldn't Mr. Clark have written to me and said:  We

are just now being made aware of something; in contravention of

the interrogatory responses that we received, there are

actually other people?

MR. TAFFET:  He could have done that, your Honor.  We

don't expect that would happen because plaintiff's counsel did

oppose reopening discovery in the first place.  And when

discovery was reopened, we worked diligently to investigate, to

the extent we could up until that point, to find out the names

of relevant individuals who might have relevant information to

the case, and we did identify two individuals.  I believe in

the interrogatory responses it was Ruyi Wu and Joe --

THE COURT:  Zhang?

MR. TAFFET:  -- Zhang.

Ga41gamc

1    THE COURT:  And neither of those are the proposed

2    trial witnesses?

3    MR. TAFFET:  That's correct.  But notably, your Honor,

4    counsel doesn't take issue with the fact that those two

5    witnesses are going to be called at trial.  And no deposition

6    was sought of those two witnesses.  So the notion that if we

7    had listed two additional names in our interrogatory responses,

8    counsel would have chosen to write to the Court to reopen

9    discovery for further witnesses, not just for the limited

10    purposes for which it had been opened in the court order, is a

11    questionable proposition on the issue of prejudice, your Honor.

12    THE COURT:  Why is it that the two individuals who are

13    the subject of this *in limine* motion were identified so late?

14    Are they current employees, sir?

15    MR. TAFFET:  Your Honor, they are current employees of

16    the restaurant.  We acknowledge that we perhaps could have

17    initially created an extensive list of all employees at the

18    restaurant, but we didn't expect that every single employee of

19    the restaurant would have information relevant to this case and

20    didn't think that would be useful.  It so happened in the

21    deposition of Ms. Koo, as noted in our papers, that these two

22    individuals -- in response to a question by plaintiff's

23    counsel, Ms. Gutierrez, Ms. Koo provided the names of these two

24    individuals, one of whom was not identified by the name that is

25    used in the joint pretrial order.  But with that in mind, even

Ga41gamc

1   once discovery was closed, which I believe was about two days

2   after those depositions, you'll recall, your Honor, we had to

3   submit papers to the Court to extend discovery maybe a week,

4   ten days.  I'm not sure what it was.  But to accommodate

5   schedules for depositions was the reason for that.  And the

6   discovery deadline ended up being only a few days after the

7   depositions, so once we had a chance to get the rough

8   transcripts of the depositions, we were able to look at them

9   and review that with Ms. Koo and identify who these individuals

10  were and go back to her and discuss with her who they were, and

11  only then were we able to find the time to go down to her

12  establishment, her place of business, to discuss with them what

13  they might know.  And at that point we were coming up -- well,

14  at that point we were coming up on the deadline for the

15  pretrial order.  And as plaintiff's counsel has acknowledged,

16  several days before the pretrial order was due, we had

17  discussions with him about the witness list that would be

18  included.  We notified counsel that there were a few witnesses

19  who we would like to include, who had not been previously

20  identified.  He did notify us of his plans to possibly move to

21  exclude those witnesses at that time.  We were prepared to

22  exchange drafts on that day, actually, but it was suggested

23  that we exchange the following Monday, so that was fine with

24  us.  And at that point, about a month before trial, in

25  accordance with the deadline for the joint pretrial order,

Ga41gamc

```
 1   these names were identified in draft.

 2           We don't think this is a case where surprise witnesses

 3   have been disclosed on the eve of trial.  We think that the

 4   plaintiffs are in the same position as they were before.  The

 5   time period between the interrogatories and the joint pretrial

 6   order, it doesn't seem the plaintiff's position has changed.

 7   They didn't have the opportunity to depose these two

 8   individuals at the time of the interrogatories, and there's no

 9   change in that now.

10           THE COURT:  I'd like to back up a little bit, sir.

11           MR. TAFFET:  Yes.

12           THE COURT:  I do not believe that I have seen formal

13   interrogatories in this case, although I was involved in some

14   capacity as an intermediary between Ms. Gutierrez and Ms. Koo

15   in communicating on interrogatories.  Is there an interrogatory

16   to which these two witnesses' names would have been responsive?

17           MR. TAFFET:  As it stands today, yes, your Honor, to

18   our knowledge, our knowledge as it exists today, we would have

19   included these two individuals' names in the interrogatory

20   responses.

21           THE COURT:  Okay.  And similarly, sir, had you been

22   involved at the time of the Rule 26 disclosures, such as they

23   were, would you have disclosed the identity of these two

24   individuals?

25           MR. TAFFET:  To the extent our investigation had
```

Ga41gamc

1    reached that point, your Honor, we would have been able to

2    disclose them.  I don't know at what stage we would have been

3    at that point.  For example, when we responded to the

4    interrogatories, that was when we were beginning to represent

5    Ms. Koo and her restaurant in this matter, and we had not

6    reached that point in our investigation and thus were not able

7    to disclose the names of these individuals.

8          THE COURT:  Okay.  And I mean not to beat the dead

9    horse here.  I just want to understand it better.  How did the

10   lightbulb suddenly go on at the deposition that had not been on

11   for the entirety of this litigation?  It would be in the

12   category of not crazy to think that employees who served

13   concurrently with the plaintiffs might have some knowledge

14   about the case.  So why were they not disclosed to them

15   earlier?

16         MR. TAFFET:  Your Honor, I don't take issue with that

17   proposition.

18         THE COURT:  Okay.

19         MR. TAFFET:  But as we worked quickly and we worked to

20   develop --

21         THE COURT:  No, no.  I'll ask the question again.

22         MR. TAFFET:  Sorry.

23         THE COURT:  Without disclosing privileged

24   communications, do you have some sense as to why Ms. Koo, while

25   representing herself pro se, did not think that it was

Ga41gamc

1  necessary to disclose these individuals' names?

2          MR. TAFFET:  Your Honor, I don't have that information

3  offhand.  I don't want to --

4          THE COURT:  I don't want you to lie, sir, so that's

5  okay.

6          MR. TAFFET:  -- testify to knowledge, but I do think

7  that -- and we appreciate the Court's full efforts to explain

8  Ms. Koo's discovery obligations to her.  I think, as we

9  understand it, in her interactions with Ms. Gutierrez, she, in

10  good faith, was extremely amenable to plaintiff's counsel.  She

11  showed up at their office; she brought these documents with her

12  that she was asked to bring.  While we understand that,

13  proceeding pro se, it was incumbent upon her to make efforts to

14  understand her obligations, we don't believe that she fully

15  comprehended what it meant to even put forth her case to go to

16  trial, let alone what was relevant to trial and who might have

17  relevant information.  I mean, there are --

18          THE COURT:  No, no.  I won't make you speculate, sir.

19          MR. TAFFET:  Okay.

20          THE COURT:  Let me ask you something.  I want to

21  return to something you and I spoke about a few moments ago.

22          Oh, is there something you want to communicate to me,

23  sir?

24          MR. CLARK:  Not here.

25          THE COURT:  No, no.  There's a note that's being

Ga41gamc

1    passed.

2            MR. TAFFET:  That's okay, your Honor.

3            THE COURT:  Okay.  Sir, earlier you and I spoke and I

4    indicated to you that I wasn't as receptive as you wanted me to

5    be to the notion that no depositions were taken and therefore

6    no depositions would have been taken, but I appreciate, as

7    we've been talking, what I think you are making as a refinement

8    on that argument, which is, looking at the period of Ms. Koo's

9    representation by your law firm, I should derive some

10   significance from the fact that even though there were

11   witnesses identified in July, there were no efforts made to

12   depose those witnesses.  So while I have been focused on the

13   early phase of the case, I think what you were trying to

14   redirect me to, and I want to make sure that therefore, I am

15   not misconstruing your argument, is that I should look at and

16   derive some significance from the fact that in July, when two

17   other names were floated, there was not suddenly a rush to come

18   to me seeking permission to take depositions, nor was there a

19   request to take their depositions.  And so what you're saying

20   is, given that, I should understand that these September

21   disclosures, had they been made in July, would have been met

22   with similar crickets, as it were.

23           MR. TAFFET:  I think that's right, your Honor.  And

24   the only thing I would add to that is that when the opportunity

25   to depose even Ms. Koo was presented by our motion to reopen

Ga41gamc

1    discovery, it was opposed.

2              THE COURT:  Well, yes, but again, I understand why it

3    was.

4              MR. TAFFET:  All right.

5              THE COURT:  I mean, the point was -- and I don't mean

6    to speak for plaintiff's counsel, but here I am again speaking

7    for plaintiff's counsel.  I think the belief was, they were

8    fine with Ms. Koo getting representation, but they had

9    proceeded in a particular way with a particular course of

10   action and did not appreciate being upended by your joining the

11   case.  So I understand both sides' positions on that.

12             Let me take a moment, please, to talk to Mr. Clark,

13   unless there's any argument you have not made to me that you

14   wish to, sir, because I don't want to leave you wishing you had

15   said something.

16             MR. TAFFET:  I believe that's all, your Honor.

17             THE COURT:  Thank you very much.

18             Mr. Clark, can I hear from you on the issue of

19   prejudice, sir.  And I think you heard the discussion I was

20   having most recently with Mr. Taffet, and that is that they're

21   asking me to discern a lack of prejudice from the fact that

22   when names were floated in July, you or your predecessor did

23   not immediately run to court asking to depose these

24   individuals.  So could you talk to me about that, please.

25             MR. CLARK:  Yes, your Honor.

Ga41gamc

 1          As to prejudice, I think it's fairly clear that there

 2     would be prejudice in this case.  Certainly defendants'

 3     response to the motion *in limine* indicated that these witnesses

 4     are essential to their case, that these witnesses contain

 5     relevant information.  It's hard to imagine an instance of

 6     ambush before trial any more than giving over names of

 7     witnesses with essential information the day the joint pretrial

 8     order was due.  And certainly if my clients go to trial with

 9     two witnesses who have been represented to contain essential

10     information concerning this case, I think it's clear that there

11     would be prejudice.

12          As to the second point, concerning the fact that

13     additional depositions weren't done, I do think that there is

14     one sort of sideview by defendants, which was that the only

15     individual that we could depose under your Honor's order was

16     Ms. Koo.  It's hard for me to think exactly what prior

17     plaintiff's counsel were thinking about this.

18          THE COURT:  Okay.

19          MR. CLARK:  My understanding would be, I question very

20     seriously whether or not we could have deposed the other

21     individual, given the fact that I think part of why only one

22     witness was allowed to be deposed on defendant's part was to

23     limit the prejudice concerning the late reopening of discovery

24     after significant discovery had occurred.  I think if it had

25     been clear that we had these additional names, first, we would

Ga41gamc

1    have very seriously weighed, given the represented information

2    that they had, deposing them, and writing to the Court

3    concerning that information; and then second, there was a

4    deposition of Ms. Koo in which there was no real ability to

5    depose Ms. Koo substantively on who these essential witnesses

6    were and are and what information that they have.  Given the

7    fact that we were completely blind as to these individuals and

8    that our ability to functionally investigate the information

9    those individuals have is crippled in the discovery process, I

10   think that there are many ways that prejudice could be

11   inferred.

12           THE COURT:  All right.  And sir, I don't want you to

13   establish too much importance to the hypothetical I'm about to

14   ask you, because it is just that.

15           MR. CLARK:  Okay.

16           THE COURT:  If you were given access to these

17   individuals in the two weeks prior to trial, would you depose

18   them?

19           MR. CLARK:  In the next two weeks?

20           THE COURT:  Yes, sir.

21           MR. CLARK:  Yes, I would.

22           THE COURT:  Okay.  All right.  What else do you want

23   me to know about prejudice, sir, or anything else in response

24   to what I've been discussing with Mr. Taffet?

25           MR. CLARK:  I believe I've said my piece as to it,

Ga41gamc

 1    your Honor.

 2                THE COURT:  Okay.  Thank you very much.

 3                Mr. Taffet, would these individuals be available for

 4    deposition in the next two weeks?

 5                MR. TAFFET:  Your Honor, while we stand by all of the

 6    arguments we've made today, if your Honor is receptive to

 7    potential accommodation, we would be happy to make them

 8    available for deposition.

 9                THE COURT:  I will tell you that my initial feeling,

10    when I came out on the bench, was that I was going to allow one

11    and not both and let you choose.  But that sounds too much like

12    baby splitting to me, and I don't think it's fair to either

13    side, actually.  So the hypothetical will become real.  Make

14    them available for depositions in the next week or so, sometime

15    prior to trial, so that plaintiff's counsel is not unaware of

16    what they're going to say.  You'll find some time to make them

17    available, and if there are problems, someone will let me know,

18    because you know how to do that.  But I think that is the

19    fairest resolution of the matter.  It has been just represented

20    to me that had they known, they would have deposed them.  I

21    accept what you've told me about the discovery of this

22    information, and I accept what he tells me about the need for

23    this information, and that is the way I will resolve it.  If it

24    turns out you're only able to make one available for

25    deposition, that will be the one who testifies at trial.  All

Ga41gamc

| 1 | right? |
|---|---|

2          MR. TAFFET:  Yes, your Honor.

3          THE COURT:  All right.  While you're standing, sir, is

4    there anything else you want to bring to my attention?

5          MR. TAFFET:  No, your Honor.

6          THE COURT:  Okay.  Let me talk for a moment, please,

7    to -- ah, I've got a blank on your name.  You know I can't

8    pronounce it, so would you pronounce it for me, sir.

9          MR. TAKOUGANG:  Takougang.

10         THE COURT:  Yes, thank you.  Are you going to be

11   admitted by the time of this trial, sir?

12         MR. TAKOUGANG:  I think I've been admitted *pro hac*.

13         THE COURT:  I know.  That's what I was asking.  I'll

14   let you go *pro hac*, but I believe we had another conference

15   where you talked about getting admitted all the way.

16         MR. TAKOUGANG:  Yes.  I just took the bar in January

17   and so --

18         THE COURT:  I see.  Thank you for bringing that to my

19   attention.

20         All right.  Mr. Clark, is there anything you want to

21   bring to my attention?

22         MR. CLARK:  No, your Honor.  We will be getting a

23   Spanish translator for plaintiffs for their testimony.

24   Certainly we know how it all works, getting someone certified

25   and the like.

Ga41gamc

```
 1              THE COURT:  Yes.  Thank you.

 2              Yes, Mr. Taffet?

 3              MR. TAFFET:  As reflected in the joint pretrial order,

 4     we'll also need a Mandarin translator for some of the

 5     defendants.

 6              THE COURT:  Yes.  I guess that is going to contribute

 7     too to the length of the trial, because there will be a little

 8     extra time for the translation.  That's fine.  As long as it

 9     gets done.  And I was saying to my law clerk, the trial is a

10     little bit preclimactic and not anticlimactic because I'm

11     interested in the findings of fact and the conclusions of law

12     that you each prepose to me as a result of which we're here for

13     this trial.

14              Let me thank all of you for coming this afternoon.

15     Again, other than Ms. Koo and myself, you guys are all new to

16     this case.  We're happy to have you on board.  I certainly am.

17              You will, I expect, discuss with each other a schedule

18     for these two depositions and you will tell me if there are any

19     problems.

20              Mr. Taffet, since you're standing, can I impose upon

21     you, please, sir, the responsibility for obtaining a transcript

22     of this conference.

23              MR. TAFFET:  Yes.

24              THE COURT:  All right.  Thank you all for coming in.

25              MR. CLARK:  Thank you, your Honor.    (Adjourned)
```