**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ISRAEL GAMERO, NORBERTO
MASTRANZO AND OSCAR SANCHEZ,
individually and on behalf of others similarly
situated,

                              Plaintiffs,

          -against-

KOODO SUSHI CORP. (d/b/a KOODO SUSHI),
RAYMOND KOO AND MICHELLE KOO,

                              Defendants.

15 Civ. 2697 (KPF)(SN)

**DEFENDANTS' PROPOSED
FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

          Defendants Michelle Koo and Koodo Sushi Corp. ("Koodo Sushi") (collectively,

"Defendants"), by their attorneys Latham & Watkins LLP, along with the accompanying

memorandum of law, hereby submit their proposed findings of fact and conclusions of law.

<u>**Defendants' Proposed Findings of Fact**</u>

          1.      The Plaintiffs filed the present action in the United States District Court for the

Southern District of New York on April 7, 2015.  (Joint Stipulations of Fact ¶ 1, Dkt. No. 62,

Oct. 7, 2016.)

          2.      Defendants Michelle Koo and Koodo Sushi own, operate, or control a Japanese

restaurant located at 55 Liberty Street, New York, New York 10005 under the name Koodo

Sushi.  (Joint Stipulations of Fact ¶ 2, Dkt. No. 62, Oct. 7, 2016.)

          3.      Defendant Michelle Koo opened Koodo Sushi in 2002, in part as a way to provide

jobs to former co-workers who had been laid off following the September 11, 2001 attacks from

the downtown hotel where she worked as the controller.  Defendant Koo had never owned or

operated a business previously.  (Trial Tr. 171:24-174:18 (Koo Direct).)

4.      Raymond Koo does not and has not participated in the ownership, operation or control of Koodo Sushi.  (Joint Stipulations of Fact ¶ 2, Dkt. No. 62, Oct. 7, 2016.)

5.      Michelle Koo was an employer of Plaintiffs Israel Gamero, Oscar Sanchez, and Roberto Mastranzo (collectively, "Plaintiffs") for purposes of the FLSA and the NYLL.  (Joint Stipulations of Fact ¶ 3, Dkt. No. 62, Oct. 7, 2016.)

6.      Koodo Sushi employees regularly used ingredients and other items that have traveled or were produced in interstate commerce.  (Joint Stipulations of Fact ¶ 4, Dkt. No. 62, Oct. 7, 2016.)

7.      Koodo Sushi reported gross receipts of $763,389 on its federal tax return for the year 2013; $520,242 for the year 2014; and $493,039 for the year 2015.  (Court Ex. 1.)

8.      From 2009 until the date this action was filed (the "Relevant Period"), Koodo Sushi employees were paid by check, unless they specifically requested to be paid in cash.  (Trial Tr. 203:10-206:15 (Koo Direct).)

9.      Plaintiffs were each paid in cash.  (Trial Tr. 19:17-21 (Sanchez Direct), 27:23-28:1 (Sanchez Direct), 28:11-23, (Sanchez Direct), 75:5-15 (Mastranzo Direct), 121:7-15, 133:18-19 (Gamero Direct), 189:5-9 (Koo Direct), 244:1-5 (Koo Direct), 281:24-25 (Koo Direct), 291:6-7 (Koo Direct).)

Koodo Sushi Operating and Working Hours

10.     Throughout the Relevant Period, Koodo Sushi was open to the public from 11:00 a.m. to 3:00 p.m. and from 5:00 p.m. to 10:00 p.m. on Mondays through Fridays, and from 5:00 p.m. to 10:00 p.m. on Saturdays and Sundays.  (Trial Tr. 177:4-17 (Koo Direct), 364:9-20 (Koo Cross).)[1]

---

[1]      For ease of reference, the period from 11:00 a.m. to 3:00 p.m. is referred to as the "Lunch

11.     Throughout the Relevant Period, approximately 95 percent to 98 percent of Koodo Sushi's business during the Lunch Shift was derived from customers who dined at Koodo Sushi, rather than from delivery orders.  (Trial Tr. 179:6-10 (Koo Direct).)

12.     Throughout the Relevant Period, approximately 75 percent to 85 percent of Koodo Sushi's business during the Dinner Shift consisted of delivery orders placed by employees at large companies, including Goldman Sachs, AIG, Chase, and Citibank.  Many of these orders were placed as future orders prior to 7:00 p.m., but would show up in Defendants' delivery system at 7:00 p.m.  (Trial Tr. 179:24-180:23, 181:1-6 (Koo Direct).)

13.     Throughout the Relevant Period, employees of Koodo Sushi, including Plaintiffs, were not expected to, and did not typically perform work for Koodo Sushi during the Midday Break. (Trial Tr. 186:21-187:11 (Koo Direct), 307:25-308:20 (Zhou Direct).)

14.     Throughout the Relevant Period, Koodo Sushi employees, including Plaintiffs, slept inside the restaurant, left the premises of Koodo Sushi, or otherwise did not work during the Midday Break.  (Trial Tr. 186:21-187:21 (Koo Direct), 307:25-308:20 (Zhou Direct), 321:9-15 (Zhong Direct).)

15.     Throughout the Relevant Period, the lights at Koodo Sushi were switched off during the Midday Break  (Trial Tr. 187:22-188:6 (Koo Direct), 308:11-20 (Zhou Direct).)

16.     Throughout the Relevant Period, Koodo Sushi typically had two busy periods: *first*, during the Lunch Shift between 12:05 p.m. and 2:00 p.m., (Trial Tr. 179:11-20 (Koo Direct)), and *second*, during the Dinner Shift between 7:00 p.m., when the pre-placed delivery orders arrived, and 8:00 p.m. (Trial Tr. 180:3-182:23) (Koo Direct).)

17.     Throughout the Relevant Period, Koodo Sushi employees who worked the Lunch

Shift," the period from 5:00 p.m. to 10:00 p.m. as the "Dinner Shift," and the period from 3:00 p.m. to 5:00 p.m. as the "Midday Break."

Shift took a half-hour lunch break that took place after 2:00 p.m., when the busy period had ended, and prior to 3:00 p.m.  (Trial Tr. 179:17-23 (Koo Direct), 308:21-309:1 (Zhou Direct).)

18.     Throughout the Relevant Period, Koodo Sushi employees who worked the Dinner Shift took a half-hour dinner break that took place after 8:00 p.m., when the busy period ended, and before 9:00 p.m.  (Trial Tr. 181:12-182:3 (Koo Direct), 308:21-309:3 (Zhou Direct).)

19.     In general, during the Relevant Period, Koodo Sushi employees did not work during meal breaks.  (Trial Tr. 309:4-15 (Zhou Direct).)

20.     If a delivery order came in during a meal break it was handled by Yazhong Zhong because he was a full-time delivery worker.  (Trial Tr. 323:6-12 (Zhong Direct), 324:8-11 (Zhong Direct).)  Beginning in 2008, and throughout the Relevant Period, Yazhong Zhong was the only full-time delivery person employed by Koodo Sushi.  (Trial Tr. 405:22-406:19 (Koo Cross).)

21.     If a delivery order arrived during a meal break and Yazhong Zhong was already handling a delivery, another delivery employee would handle the new delivery order.  (Trial Tr. 323:6-324:11 (Zhong Direct).)  It can be inferred from the testimony that those interruptions were infrequent and typically lasted for only a short duration.

22.     Throughout the Relevant Period, Koodo Sushi stopped accepting delivery orders at 9:50 p.m.  (Trial Tr. 186:17-20 (Koo Direct), 307:23-25 (Zhou Direct).)

23.     At all times throughout the Relevant Period, the restaurant was opened in the morning and closed in the evening by either Defendant Koo, or a Koodo Sushi employee named Ruyi Wu.[2]  (Trial Tr. 177:18-178:23 (Koo Direct), 185:11-186:1 (Koo Direct), 322:22-24 (Zhong Direct), 364:21-25 (Koo Cross).)

---

[2]     Ruyi Wu was sometimes referred to as "Zha Wong" in trial testimony.  (*See, e.g.*, Trial Tr. 177:25-178:3 (Koo Direct).)

<u>Defendants' Efforts to Stay Up to Date with Labor Law</u>

24.     In 2008, Defendants settled an action instituted by New York Department of Labor ("NYDOL") for $2,000.  (Trial Tr. 359:24-360:10 (Koo Cross).)

25.     In the course of the action by the NYDOL against Defendants in 2008, an NYDOL representative visited Defendant Koo.  During that visit, Defendant Koo learned of certain NYLL rules and regulations of which she had previously been unaware.  These included regulations relating to the spread of hours, tip credit, meal credit, and meal breaks.  (Trial Tr. 190:20-191:5 (Koo Direct), 192:3-5 (Koo Direct), 195:1-8 (Koo Direct), 361:21-362:6 (Koo Cross), 362:23-363:11 (Koo Cross), 373:21-374:3 (Koo Cross).)

26.     Beginning at the time of Defendant Koo's meeting with the NYDOL representative, and at all times during the Relevant Period, Defendants provided their employees, including Plaintiffs, with the legally required compensation for the spread of hours, and where permitted, adjusted wages based on a tip credit, meal credit, and meal breaks.  (Trial Tr. 190:20-193:4 (Koo Direct), 361:23-363:7 (Koo Cross), 374:4-375:17 (Koo Cross); Ex. D-F; Ex. D-O; Ex. D-P; Ex. D-Q.)

27.     Beginning at the time of her meeting with the NYDOL representative, and at all times during the Relevant Period, Defendant Koo visited Internet websites annually in an effort to remain up to date on labor law rules and regulations, including the minimum wage.  (Trial Tr. 301:5-12 (Koo Direct).)

28.     Beginning at the time of Defendant Koo's meeting with the NYDOL representative, and at all times during the Relevant Period, Defendants paid an hourly wage rate to their employees, including Plaintiffs, that Defendant Koo in good faith believed complied with minimum wage rates under the FLSA and NYLL.  (Trial Tr. 190:5-191:5 (Koo Direct).)

5

29.     Beginning at the time of Defendant Koo's meeting with the NYDOL representative, and at all times during the Relevant Period, Defendants paid each employee, including Plaintiffs, an hourly wage rate of one and one-half times an employee's regular hourly wage rate for all hours in excess of 40 hours worked in a week.  (Trial Tr. 193:6-18 (Koo Direct), 361:21-25 (Koo Cross), 404:17-25 (Koo Cross).)

30.     Beginning at the time of Defendant Koo's meeting with the NYDOL representative, and at all times during the Relevant Period, on any day on which the interval between the beginning and the end of an employee's work day exceeded 10 hours, Defendants paid the employee for an additional hour of at least the minimum wage.  (Trial Tr. 188:13-189:5 (Koo Direct), 361:21-362:2 (Koo Cross).)

31.     During the pendency of this proceeding, Defendant Koo met with a court-appointed attorney who specializes in employment law.  That attorney provided Defendant Koo with Spanish-language versions of the documents that employers are required by law to distribute to their employees.  Since that time, Defendant Koo has maintained employment documents written in Spanish to provide to any new Spanish-speaking employees.  (Trial Tr. 370:3-22 (Koo Cross).)

<u>Tips</u>

32.     Throughout the Relevant Period, Koodo Sushi customers paid tips to Koodo Sushi delivery workers in a number of forms, including with cash, by credit card in connection with orders taken by phone, and by credit card through online delivery websites such as Delivery.com and Seamless (formerly known as SeamlessWeb).  (Trial Tr. 235:12-237:8 (Koo Direct).)

33.     Throughout the Relevant Period, when a Koodo Sushi delivery employee received a tip from a customer by any means other than a credit card charge through Seamless, the

employee received the entire amount of that tip.  (Trial Tr. 235:14:241:6 (Koo Direct), 386:2-12 (Koo Cross)).

34.     Throughout the Relevant Period, when Koodo Sushi customers paid tips to Koodo Sushi delivery workers by credit card through Seamless, Seamless retained approximately 14% of the tip and provided the rest to Koodo Sushi.  (Trial Tr. 239:11-25 (Koo Direct), 244:12-17 (Koo Direct), 386:12 (Koo Cross).)  Koodo Sushi provided the full amount of tips it received from Seamless to the delivery person for whom the tip was intended.  (Trial Tr. 239:11-25 (Koo Direct), 240:15-21 (Koo Direct), 386:12 (Koo Cross).)

<u>Records</u>

35.     During the Relevant Period, Defendant Koo required Koodo Sushi employees to sign a document each week demonstrating when and how much each employee had been paid for the previous week, although the document itself changed over time.  A more detailed description of these documents follows.  (Ex. D-A, Ex. D-G, Ex. D-J, Ex. D-K; Trial Tr. 21:10-12 (Sanchez Direct), 49:14-18 (Sanchez Cross), 62:13-63:20 (Sanchez Cross), 75:16-19 (Mastranzo Direct), 84:5-12 (Mastranzo Direct), 89:6-10 (Mastranzo Cross) 121:16-23, (Gamero Direct), 207:23-208:15 (Koo Direct), 215:13-216:3 (Koo Direct), 217:19-219:23 (Koo Direct), 229:16-231:6 (Koo Direct), 232:13-233:21 (Koo Direct).)

A.     <u>Aldelo Payroll System</u>

36.     From 2009 until early 2014, Defendant Koo recorded cash wage payments to employees in a computer system called Aldelo on a weekly basis.  (Trial Tr. 217:19-218:9 (Koo Direct).)

37.     From 2009 until early 2014, when Defendants paid an employee, Defendant Koo used Aldelo to print a thermographic paper that showed the amount the employee was paid, and

the employee was required to sign the paper as acknowledgment of the payment.  (Trial Tr. 217:19-218:9 (Koo Direct), 234:2-9 (Koo Direct); Ex. D-G; Ex. D-J.)  Defendants maintained copies of the papers Defendant Koo printed; however, most of those papers have faded to such an extent that they are illegible.  (Trial Tr. 217:19-218:8 (Koo Direct).)

38.    The information that Defendant Koo entered in Aldelo was electronically preserved in the Aldelo program.  That information is reflected on a "Pay Out Details Report" that was generated from the Aldelo program.  (Ex. D-L; Trial Tr. 218:17-220:3 (Koo Direct), 219:24-228:25 (Koo Direct).)

39.    The "Pay Out Details Report" displays information in five columns.  (Ex. D-L.)

40.    In the first column on the left of the Aldelo Pay Out Details Report titled "Paid To," Defendant Koo recorded the name of the employee whom she paid and a letter representing that employee's job.  (Trial Tr. 220:17-223:4 (Koo Direct); Ex. D-L.)

41.    Payments to Plaintiff Gamero are displayed in the Aldelo Pay Out Details Report in rows in which the first column (titled "Paid To") contains the phrase "Israel D," where "D" signifies that Plaintiff Gamero worked only as a delivery worker.  (Ex. D-L at LW_Koodo2142-43; Trial Tr. 220:4-221:10 (Koo Direct).)

42.    Payments to Plaintiff Sanchez are displayed in the Aldelo Pay Out Details Report in rows in which the first column (titled "Paid To") contains the phrase "Oska K," where "K" signifies that Plaintiff Sanchez performed kitchen work.  (Trial Tr. 221:5-13 (Koo Direct); Ex. D-L at LW_Koodo2143-49.)

43.    Payments to Plaintiff Mastranzo are displayed in the Aldelo Pay Out Details Report in rows in which the first column (titled "Paid To") contains the phrase "Rob K," where "K" signifies that Plaintiff Mastranzo performed kitchen work.  (Trial Tr. 221:16-23 (Koo

8

Direct); Ex. D-L at LW_Koodo2150-55.)

44.    The second column from the left of the Aldelo Pay Out Details Report titled "Date/Time," recorded the date and time when Defendant Koo entered a payment and printed a pay stub.  (Trial Tr. 223:5-15 (Koo Direct); Ex. D-L.)

45.    In the third column from the left of the Aldelo Pay Out Details Report titled "Amount Paid," Defendant Koo recorded the amount she paid on the date, and to the employee recorded in the "Date/Time" and "Paid To" columns, respectively, in the same row.  (Trial Tr. 223:17-18 (Koo Direct); Ex. D-L.)

46.    Some of the entries in the Aldelo Pay Out Details Report contain a date range in the fourth column from the left, titled "Description."  In such instances, the date range represents the week of work for which Defendants paid the employee listed in the same row.  (Trial Tr. 223:19-224:16 (Koo Direct); *see, e.g.*, Ex. D-L at LW_Koodo002143.)

47.    Some of the entries in the Aldelo Pay Out Details Report contain the notation "Tips" in the fourth column from the left, titled "Description."  In such instances, the entry refers to a cash value that Defendants provided to one of the Plaintiffs that a delivery customer provided as a tip for one of the Plaintiffs.  (Trial Tr. 225:6-14 (Koo Direct); *see, e.g.*, Ex. D-L at LW_Koodo002143.)

48.    Some of the entries in the Aldelo Pay Out Details Report contain the notation "Extra" in the fourth column from the left, titled "Description."  In such instances, the entry refers to a cash payment that Defendants paid to one of the Plaintiffs, separate from his hourly wages, for work he performed other than his usual job.  (Trial Tr. 225:15-10 (Koo Direct), 228:18-25 (Koo Direct); *see, e.g.*, Ex. D-L at LW_Koodo002143, 48-52.)

49.    Some of the entries in the Aldelo Pay Out Details Report contain the symbol "+"

9

followed by a number in the fourth column from the left, titled "Description."  In such instances, the number that follows the "+" refers to a cash payment that Defendants provided to one of the Plaintiffs, separate from his hourly wages, for work he performed other than his usual job.  (Trial Tr. 226:1-228:17 (Koo Direct); *see, e.g.*, Ex. D-L at LW_Koodo002144-45, 50-51, 53-54.)

50.    Some of the entries in the Aldelo Pay Out Details Report contain notations listing numbers of hours or days in the fourth column from the left, titled "Description."  In such instances, the number of hours or days refers to the working time for which a wage payment was made.  (Trial Tr. 226:8-227:9; *see, e.g.*, Ex. D-L at LW_Koodo002144.)

51.    The fifth column from the left of the Aldelo Pay Out Details Report titled "Paid By" contains the name or abbreviation of the name of the person who paid the employee listed in the same row, and a letter representing a job title.  (Trial Tr. 224:17-24 (Koo Direct); Ex. D-L.)

        B.    <u>Calendar</u>

52.    In or around December of 2013 or January of 2014, Defendant Koo discontinued the use of the Aldelo system.  (Trial Tr. 217:19-23 (Koo Direct), 218:15-219:4 (Koo Direct).)

53.    Simultaneously, Defendant Koo began to keep a calendar at Koodo Sushi that was used to record the work hours and amounts paid to certain employees, including Plaintiff Mastranzo and Plaintiff Sanchez, and that Plaintiff Mastranzo and Plaintiff Sanchez were required to sign at the time they were paid.  (Ex. D-K; Trial Tr. 209:16-18 (Koo Direct), 217:19-218:9 (Koo Direct).)

54.    Defendants recorded Plaintiff Mastranzo's work hours and payment amounts on the calendar using the name "Rob."   (Trial Tr. 209:25-210:10 (Koo Direct); Ex. D-K at LW_Koodo002157, 59, 61, 70-71.)

55.    Defendants recorded Plaintiff Sanchez's work hours and payment amounts on the

calendar using the name "Oska."    (Trial Tr. 210:13-16 (Koo Direct); Ex. D-K at LW_Koodo002157, 59, 61, 70-71.)

56.    On days on which Plaintiff Mastranzo or Plaintiff Sanchez were paid, Defendant Koo wrote "Rob" or "Oska" in a corresponding box on the calendar, and wrote the amount they were paid immediately to the right of the names.  Defendants paid Plaintiffs for work performed the week prior to the day on which they were paid.  (Trial Tr. 210:18-211:3 (Koo Direct); Ex. D-K at LW_Koodo002157, 59, 61, 70-71.)

57.    On certain days on the calendar, number ranges appear under the word "Rob" or "Oska."  In those instances, Defendant Koo wrote the ranges to record Plaintiff Mastranzo's or Plaintiff Sanchez's work hours for that day.  (Trial Tr. 211:12-212:10 (Koo Direct); Ex. D-K at LW_Koodo002157, 70-71.)

58.    Defendant Koo sometimes recorded on particular days on the calendar when Plaintiff Mastranzo or Plaintiff Sanchez arrived later than his scheduled start time.  (Ex. D-K at LW_Koodo002162.)

59.    From March 2014 to October 2014, Defendants used the calendar to record only instances where an employee's work schedule varied from the employee's normal schedule. Thus, when Plaintiff Mastranzo's or Plaintiff Sanchez's working hours were not recorded on the calendar, they worked their general schedules those weeks.  (Trial Tr. 214:8-215:6 (Koo Direct).)

60.    On some occasions in November 2014 and December 2014, Defendant Koo recorded that Plaintiff Mastranzo worked on Saturday, but she did not record the hours he worked.  In such instances, it may be inferred that Plaintiff Mastranzo worked his default weekend schedule from 5:00 p.m. to 10:00 p.m. (*i.e.*, the hours that Koodo Sushi was open). (Ex. D-K at LW_Koodo002170-71; Tr. 212:14-18 (Koo Direct), 298:14-18 (Koo Direct).)

C.   Seamless Report Delivery Sheets

61.   Beginning in late 2013, Defendant Koo recorded wage payments to Plaintiff Gamero on Seamless Report delivery sheets.  (Trial Tr. 282:1-6 (Koo Direct); Ex. D-F; Ex. D-I; Exs. D-V19-V45.)  Plaintiff Gamero's wage payment was noted at the far right of the row that applied to Plaintiff Gamero—designated with the letter "I"—and was a multiple of $5.00 for the reasons explained in paragraphs 87-88 below.  (Trial Tr. 144:9-18 (Gamero Cross), 282:8-21 (Koo Direct); Ex. D-F; Ex. D-I; Ex. D-V32.)

62.   The delivery sheets also reflected tips paid by customers for Seamless in connection with Delivery.com delivery orders, and sometimes the particular days Plaintiff Gamero worked and/or number of hours he worked the preceding week.  (Trial Tr. 243:12-244:2 (Koo Direct), 278:15-282:19 (Koo Direct); Ex. D-I; Exs. D-V19-V45.)

63.   On days when Plaintiff Gamero received tips from both Seamless and Delivery.com orders, the tips from Seamless orders were recorded on the Seamless Report delivery sheet first, followed by a "+" and a number that constituted the Delivery.com tips Mr. Gamero had received that day.  (Ex. D-I; Trial Tr. 243:12-245:1 (Koo Direct).)

64.   At the far right of the Seamless Report delivery sheets, Defendants recorded and circled the total amount paid by Defendants to Plaintiff Gamero.  When Defendants circled two numbers, the amount that was a multiple of $5.00 was Plaintiff Gamero's hourly wage payment, and the other number was the total amount Plaintiff Gamero received in tips from Seamless and Delivery.com delivery orders.  (Ex. D-I; Trial Tr. 243:12-245:1 (Koo Direct).)

65.   The total amount of tips received by Plaintiff Gamero from Seamless and Delivery.com delivery orders equaled all tips paid by customers for Seamless delivery orders, less the approximately 14% retained by Seamless, plus the full value of tips paid by customers

for Delivery.com delivery orders.  (Ex. D-I; Trial Tr. 243:12-245:1 (Koo Direct).)

66.     In addition to Plaintiff Gamero, Defendants recorded tips paid to other Koodo

Sushi employees (including Plaintiff Mastranzo and Plaintiff Sanchez) from Seamless and

Delivery.com delivery orders using the same method on Seamless Report delivery sheets.  (Trial

Tr. 243:12-244:2 (Koo Direct); Ex. D-F; Ex. D-I; Ex. D-V19-45; Ex. P-3.)

        D.     Delivery Log-In Sheets

67.     For a period of time, including in 2010, Defendants recorded the hours worked by

and wages paid to delivery workers on daily delivery login sheets.  (Trial Tr. 291:18-296:23

(Koo Direct); Ex. D-A; Ex. D-B; Exs. D-V1-V16.)

68.     Defendants recorded Plaintiff Mastranzo's work hours and pay on daily delivery

login sheets using the name "Rob" or "Rob (K)."  (Trial Tr. 291:18-296:23 (Koo Direct); Ex. D-

B.)

69.     Defendants recorded Plaintiff Sanchez's work hours and pay on daily delivery

login sheets using the name "Oska."  (Ex. D-A; Trial Tr. 65:4-23 (Sanchez Cross).)

70.     When Defendants marked entries under an employee's name on the daily delivery

sheet with "N/A," it meant that the employee did not work the shift under which the "N/A"

appeared.  (Trial Tr. 292:7-22 (Koo Direct); Ex. D-V1.)

71.     When an employee's hourly wage payment was recorded on a daily delivery login

sheet, the employee was required to sign the sheet near where Defendant Koo had recorded the

amount of the wage payment and the corresponding week for which the employee was paid.

(Trial Tr. 291:18-296:23 (Koo Direct); Ex. D-B, Ex. D-V1.)

        E.     Sign-In Sheets

72.     From late 2008 to early 2013, Defendants required Koodo Sushi employees,

including Plaintiffs, to sign a paper showing when they arrived at work and when they left work. Defendants prepared the sign-in sheets each week, and posted the sign-in sheet for the current week on the wall at Koodo Sushi.  (Ex. D-E, Ex. D-V17; Trial Tr. 195:1-199:24 (Koo Direct), 200:21-23 (Koo Direct).)

73.     Defendants discontinued the use of the sign-in sheets because employees were not complying with Defendant Koo's request that employees sign the paper when they arrived at work and when they left work.  (Trial. Tr. 198:5-15 (Koo Direct), 199:19-22 (Koo Direct).)

### Israel Gamero

74.     Plaintiff Gamero was hired in or around December 2012, when Defendant Koo first recorded Plaintiff Gamero's schedule and recorded his first payment in Aldelo.  (Ex. D-F; Ex. D-L at LW_Koodo002142; Ex. D-P; Trial Tr. 277:19-278:11 (Koo Direct).)

75.     Plaintiff Gamero worked at Koodo Sushi until April 2015, except for a period lasting approximately one year.  (Ex. D-P; Trial Tr. 132:19-24 (Gamero Direct), 277:19-278:11 (Koo Direct).)

76.     Plaintiff Gamero worked as a delivery person the entire time he worked for Koodo Sushi.  (Trial Tr. 118:10-11 (Gamero Direct), 132:23-133:2 (Gamero Cross), 275:4-6 (Koo Direct).)

77.     Plaintiff Gamero performed only delivery work for Koodo Sushi, and did not perform any non-tipped duties during his employment.  (Trial Tr. 284:18-285:6 (Koo Direct).)

78.     When Plaintiff Gamero began his employment at Koodo Sushi, Defendant Koo explained his hourly wage, job duties, and a schedule he would generally work, and wrote down the same for him.  (Trial Tr. 193:25-194:15 (Koo Direct); Ex. D-F.)  The schedule Defendant Koo wrote down for him reflected that he would work from either 6:00 p.m. to 8:00 p.m. or 6:00

p.m. to 10:00 p.m, and that she would pay him $5.00 per hour.  (Ex. D-F.)

79.     Plaintiff Gamero generally worked between two hours and four hours per day. (Trial Tr. 275:7-19 (Koo Direct); 280:20-281:13 (Koo Direct); Ex. D-F, Ex. D-H; Ex. D-I; Ex. D-P; Ex. D-V20; Ex. D-V37; Ex. D-V40; Ex. D-V42; Ex. D-V43; Ex. D-V45.)

80.     For example, Plaintiff Gamero typically worked from 6:00 p.m. to 8:00 p.m. or from 6:00 p.m. to 10:00 p.m.  (Trial Tr. 275:7-19) (Koo Direct), 279:4-11 (Koo Direct); Ex. D-F.)

81.     On occasion, Plaintiff Gamero worked from 11:00 a.m. to 2:00 p.m.  (Trial Tr. 141:1-23 (Gamero Cross); Ex. D-H; Ex. D-P; Ex. D-V20.)

82.     On days that he worked for Koodo Sushi, Defendants provided Plaintiff Gamero with one meal per shift, free of charge.  (Trial Tr. 192:6-8 (Koo Direct), Trial Tr. 308:25-309:10 (Zhou Direct).)

83.     On days he worked for Koodo Sushi between 8:00 p.m. and 9:00 p.m., Plaintiff Gamero took a half-hour meal break.  (Trial Tr. 179:17-23 (Koo Direct), 192:15-16 (Koo Direct), 308:21-309:1 (Zhou Direct).)

84.     Plaintiff Gamero did not work during his meal break, and any interruptions were infrequent and brief because customers rarely placed delivery orders during the Koodo Sushi employee meal periods.  The rare delivery orders that were placed during that time were handled by Yazhong Zhong.  (Trial Tr. 309:4-15 (Zhou Direct), 323:6-12 (Zhong Direct), 324:8-11 (Zhong Direct).)

85.     Plaintiff Gamero never worked in excess of 40 hours in a week at Koodo Sushi. (Trial Tr. 277:2-16 (Koo Direct); Ex. D-F; Ex. D-H; Ex. D-P; Ex. D-V31; Ex. D-V34.)

86.     Plaintiff Gamero was paid $5.00 per hour.  (Ex. D-F; Ex. D-V31; Ex. D-V34; Ex.

D-P; Trial Tr. 143:5-24 (Gamero Cross), 144:19-24 (Gamero Cross), 145:9-147:3 (Gamero

Cross), 190:20-191:19 (Koo Direct), 280:20-281:21 (Koo Direct).)

      87.    Defendant Koo calculated the minimum amount she owed Plaintiff Gamero to be

less than $5.00 per hour by applying applicable credits to his wages as follows:

      a.   Defendants applied a tip credit against Plaintiff Gamero's hourly wage. (Ex. D-F;

         Trial Tr. 275:20-276:15 (Koo Direct), 280:20-281:21 (Koo Direct).)

      b.   Defendants applied a meal credit for one meal per shift against Plaintiff Gamero's

         wages. (Ex. D-F (noting "meal credit"); Ex. D-P (noting "less employee meal

         credit"); Trial Tr. 190:20-191:16 (Koo direct), 276:2-15 (Koo Direct), 280:20-

         281:21 (Koo Direct).)

      c.   Plaintiff Gamero's half hour meal breaks were non-working time for which he did

         not need to be compensated. (Trial Tr. 192:12-193:4 (Koo Direct), 276:9-15

         (Koo Direct).)

      88.    Even though Defendant Koo calculated the minimum amount she owed Plaintiff

Gamero to be less than $5.00 per hour, she always paid employees more than her minimum wage

calculations so that she would have a "cushion." (Trial Tr. 276:2-18 (Koo Direct).)

      89.    Thus, the number of hours Plaintiff Gamero worked equals the wage he was paid

divided by $5.00. For example:

      a.   Defendants paid Plaintiff Gamero $45.00 on April 10, 2014 for working 9 hours

         the prior week. (Ex. D-V20.)

      b.   Defendants paid Plaintiff Gamero $75.00 on April 24, 2014 for working 15 hours

         the prior week. (Ex. D-H.)

      c.   Defendants paid Plaintiff Gamero $90.00 on June 5, 2014 for working 18 hours

the prior week.  (Exs. D-V26-V29.)

d.  Defendants paid Plaintiff Gamero $90.00 on June 12, 2014 for working 18 hours the prior week.  (Ex. D-V30.)

e.  Defendants paid Plaintiff Gamero $75.00 on June 26, 2014 for working 15 hours the prior week.  (Ex. D-I.)

f.  Defendants paid Plaintiff Gamero $75.00 on July 2, 2014 for working 15 hours the prior week.  (Ex. D-V31.)

g.  Defendants paid Plaintiff Gamero $90.00 on July 10, 2014 for working 18 hours the prior week.  (Ex. D-V32.)

h.  Defendants paid Plaintiff Gamero $90.00 on July 31, 2014 for working 18 hours the prior week.  (Ex. D-V34; Trial Tr. 145:9-147:3 (Gamero Cross).)

i.  Defendants paid Plaintiff Gamero $45.00 on Tuesday, August 26, 2014 for working 9 hours the prior week.  (Ex. D-V35.)

j.  Defendants paid Plaintiff Gamero $30.00 on Friday, August 29, 2014 for working 6 hours during that week.  (Ex. D-V37.)

k.  Defendants paid Plaintiff Gamero $90.00 on September 6, 2014 for working 18 hours the prior week.  (Ex. D-V38; Ex. D-V45.)

l.  Defendants paid Plaintiff Gamero $45.00 on November 9, 2014 for working 9 hours the prior week.  (Ex. D-V40.)

m.  Defendants paid Plaintiff Gamero $45.00 on November 22, 2014 for working 9 hours the prior week.  (Ex. D-V41.)

n.  Defendants paid Plaintiff Gamero $15.00 on November 30, 2014 for working 3 hours the prior week.  (Ex. D-V42.)

     o.   Defendants paid Plaintiff Gamero $30.00 on December 4, 2014 for working 6 hours the prior week.  (Ex. D-V43.)

90.     Each time Defendants paid Plaintiff Gamero, he signed a document showing how much he was paid, and sometimes the days and hours he had worked in a week.  (Trial Tr. 121:16-23 (Gamero Direct), 138:18-140:25 (Gamero Cross), 278:15-281:23 (Koo Direct); Ex. D-F; Ex. D-H; Ex. D-I; Ex. D-J; Ex. D-P; Exs. D-V21-V35; Exs. D-V37-V45.).

91.     During the entire course of his employment by Defendants, Plaintiff Gamero spoke fluent English.  (Trial. Tr. 407:6-9 (Koo Cross).)

92.     When Plaintiff Gamero received a tip from a customer in connection with a delivery placed by any means other than through Seamless, he received the entire amount of that tip.  (Trial Tr. 235:14–241:6 (Koo Direct), 386:2-12 (Koo Cross).)

93.     When Plaintiff Gamero received a tip from a customer through Seamless, Seamless retained approximately 14% of his tip and Defendants forwarded him the balance. (Trial Tr. 239:8-25 (Koo Direct), 240:15-21 (Koo Direct), 386:2-12 (Koo Cross)).

94.     Prior to working at Koodo Sushi, Plaintiff Gamero made deliveries for a different restaurant using a bicycle he owned.  He used the same bicycle to perform his work duties at Koodo Sushi.  (Trial Tr. 285:7-12 (Koo Direct).)

95.     Plaintiff Gamero was not required to purchase a bicycle to perform his work duties at Koodo Sushi.  (Trial Tr. 285:13-15 (Koo Direct).)

96.     Defendants provided Plaintiff Gamero with a bicycle helmet to perform his work duties at Koodo Sushi.  (Trial Tr. 285:7-22 (Koo Direct).)

97.     Defendants provided Plaintiff Gamero with lights for his bicycle to perform his work duties at Koodo Sushi.  (Trial Tr. 285:7-22 (Koo Direct).)

98.    Plaintiff Gamero's recollection at trial of his dates of employment, work schedule and the total hours he worked per week, and amount he was paid at Koodo Sushi was unclear and not credible.  (Trial Tr. 147:23-149:16 (Gamero Cross), 151:24-153:17 (Gamero Cross), 153:21-23 (Gamero Cross), 155:16-157:5 (Gamero Cross), 160:5-22 (Gamero Cross); Exs. D-V21-V22; Exs. D-V27-V28; Ex. D-V30; Exs. D-V32-V33; Ex. D-V35.)

a.    Plaintiff Gamero testified that he was paid $15.00 per shift regardless of how long he worked, despite the existence of contradictory evidence demonstrating that, after applying applicable credits to his wage rate, he was paid $5.00 per hour. (Trial Tr. 133:8-10 (Gamero Direct); 138:9-18 (Gamero Cross).)

b.    Plaintiff Gamero testified that he started working at Koodo Sushi in November 2011, but available records, including Aldelo and the initial schedule that Defendant Koo prepared for Plaintiff Gamero when he first worked at Koodo Sushi, reflect that he did not begin working there until December 2012.  (Trial Tr. 117:12-13 (Gamero Direct), 278:13-279:11 (Koo Direct); Ex. D-F; Ex. D-L at LW_Koodo002142.)

c.    Plaintiff Gamero testified that he took a year break from working at Koodo Sushi from November 2013 to November 2014, but available records reflect that he was paid for work at Koodo Sushi during the months of May 2014 through August 2014.  (Trial Tr. 151:24-160:22) (Gamero Cross); Exs. D-V21-V22; Exs. D-V27-V28; Ex. D-V30; Exs. D-V32-V33; Ex. D-V35.)  Plaintiff Gamero conceded on cross-examination that his direct testimony and memory regarding when he worked at Koodo Sushi were incorrect.  (Trial Tr. 152:17-153:23 (Gamero Cross).)  He responded a number of times with the phrases:  "I don't remember,"

"I'm not certain," and "I don't know."   (*See, e.g.*, Trial Tr. 152:17-153:23 (Gamero Cross), 156:9-157:5 (Gamero Cross), 160:5-23 (Gamero Cross).)

d.   Plaintiff Gamero testified that, from 2011 to 2013, he had a fifty hour work schedule—on Monday through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and on Sundays from 5:00 p.m. to 10:00 p.m.  (Trial Tr. 120:5-12 (Gamero Direct).).  He also claimed that he spent the hour between 2:30 p.m. to 3:30 p.m. each weekday cutting cardboard.  (Trial Tr. 119:11-120:2 (Gamero Cross).)  Plaintiff Gamero then testified that, from November 2014 until the end of his employment at Koodo Sushi he worked sixteen hours per week every week—from 11:00 a.m. to 3:00 p.m. on Mondays, Wednesday, Thursdays, and Fridays.  (Trial Tr. 134:9-14 (Gamero Direct).)  Existing documentary evidence, however, contradicted Plaintiff Gamero's testimony regarding the number of hours he worked per day at Koodo Sushi; the existing records showed that he consistently worked fewer hours than the schedule to which he testified on direct examination.  (Trial Tr. 147:4-151:14 (Gamero Cross), 275:7-19 (Koo Direct), 280:20-281:13 (Koo Direct); Ex. D-F; Ex. D-H; Ex. D-I; Ex. D-P; Ex. D-V20; Ex. D-V37; Ex. D-V40; Ex. D-V42; Ex. D-V43; Ex. D-V45.)

e.   When confronted with a document he admitted that he signed, Plaintiff Gamero claimed he did not look at the number immediately next to his signature when he signed the paper that recorded the number of hours he worked.  (Trial Tr.  149:9-16 (Gamero Cross); Ex. D-V40.)

f.   Plaintiff Gamero conceded on cross-examination that he could not remember the number of hours he worked, but that Defendant Koo paid him on an hourly basis.

(Trial Tr. 146:23-147:3 (Gamero Cross), 157:1-5 (Gamero Cross).)

g.  Plaintiff Gamero initially testified that he cut cardboard every day, then that he only did so sometimes, and that it took him an implausibly long amount of time to complete that task—an hour to cut sixty to seventy small pieces.  (Trial Tr. 119:11-120:2 (Gamero Direct), 120:13-126 (Gamero Direct), 161:19-162:22 (Gamero Cross).)  He also testified that he spent an implausibly long amount of time vacuuming 15 stairs (30 minutes).  (Trial Tr. 161:5-18 (Gamero Cross).)  In fact, Plaintiff Gamero neither cut cardboard nor vacuumed the stairs.  (Trial Tr. 284:18-285:6 (Koo Direct).)

h.  Plaintiff Gamero testified that he was required to purchase two bicycles for $150 and $200, respectively, to work at Koodo Sushi.  (Trial Tr. 134:9-14 (Gamero Direct).)   In fact, Plaintiff Gamero owned the bicycle he used to perform deliveries at Koodo Sushi before he began working at Koodo Sushi, and he was not required to purchase an additional bicycle.  (Trial Tr. 285:7-15 (Koo Direct).)

i.  Plaintiff Gamero testified that he does not speak English despite credible testimony that he spoke fluent English throughout his employment at Koodo Sushi.  (Trial. Tr. 117:2-5 (Gamero Direct), 407:6-9 (Koo Cross).)

<u>Roberto Mastranzo</u>

99.     Plaintiff Mastranzo worked for Koodo Sushi from the end of January 2010[3] until February 2015.  (Ex. D-L at LW_Koodo2150; Trial Tr. 72:25-73:1 (Mastranzo Direct), 87:22-23 (Mastranzo Cross).)

100.    Plaintiff Mastranzo speaks English.   (Trial Tr. 90:10-16 (Mastranzo Cross), 100:16-23 (Mastranzo Cross).)

101.    When Plaintiff Mastranzo began his employment at Koodo Sushi, Defendant Koo explained his general work schedule, hourly wage, and job duties, and wrote down the same for him.  (Trial Tr. 74:10-25 (Mastranzo Direct), 75:1-11 (Mastranzo Direct), 193:25-194:15 (Koo Direct).)

102.    Plaintiff Mastranzo's general schedule was as follows:  11:00 a.m. to 3:00 p.m. and from 5:00 p.m. to 10:00 p.m. on Monday through Friday, and from 5:00 p.m. to 10:00 p.m. on Saturday or Sunday.  (Ex. D-Q; Ex. D-K at LW_Koodo002157; Ex. D-V1; Trial Tr. 74:24-75:1 (Mastranzo Direct), 88:6-9 (Mastranzo Cross), 194:17-25 (Koo Direct), 211:4-19 (Koo Direct), 291:13-15 (Koo Direct).)

103.    Plaintiff Mastranzo's work schedule varied during the holiday season.  (Trial Tr. 194:17-25 (Koo Direct).)

104.    As set forth in paragraph 72 above, Defendants required Koodo Sushi employees, including Plaintiff Mastranzo, to record on a sign-in sheet the time they arrived at work and when they left work.   However, on several occasions, one of Plaintiffs' co-workers signed Plaintiff Mastranzo's name on these sign-in sheets, such that the hours recorded on it were

---

[3]     Although the first day of Plaintiff Mastranzo's employment is not apparent from the record, the first payment to Plaintiff Mastranzo recorded in the Aldelo system occurred on February 1, 2010.  (Ex. D-L at LW_Koodo002150.)

inaccurate—behavior Plaintiff Mastranzo characterized as a "joke."   (Trial Tr. 113:16-23

(Mastranzo Cross), 114:19-22 (Mastranzo Cross), 115:3-9 (Mastranzo Cross), 198:5-15 (Koo

Direct).)

105.    When he worked during the Lunch Shift, Plaintiff Mastranzo did not begin work

before 11:00 a.m.  (Trial Tr. 183:20-24 (Koo Direct), 320:20-321:2 (Zhong Direct).)

106.    When he worked during the Lunch Shift, Plaintiff Mastranzo often arrived at

work later than 11:00 a.m.  (Trial Tr. 298:14-20 (Koo Direct); 320:22-25 (Zhong Direct).)

107.    When he worked during the Lunch Shift, Plaintiff Mastranzo worked as a

dishwasher.  (Trial Tr. 74:10-22 (Mastranzo Direct), 288:18-22 (Koo Direct).)

108.    When Plaintiff Mastranzo worked as a dishwasher during the Lunch Shift, he was

paid the hourly minimum wage required under the NYLL.  (Trial Tr. 190:5-19 (Koo Direct),

291:10-12 (Koo Direct), 400:3-6 (Koo Cross).)

109.    Plaintiff Mastranzo did not perform work for Koodo Sushi while the restaurant

was closed during the Midday Break.  (Trial Tr. 186:22-188:12 (Koo Direct), 308:4-13 (Zhou

Direct), 321:13-15 (Zhong Direct).)

110.    When he worked during the Dinner Shift, Plaintiff Mastranzo did not work later

than 10:00 p.m.  (Trial Tr. 185:11-186:1 (Koo Direct), 321:20-22 (Zhong Direct).)

111.    Plaintiff Mastranzo frequently left work at Koodo Sushi earlier than 10:00 p.m.

and often as early as 9:00 p.m.  (Trial Tr. 291:13-17 (Koo Direct).)

112.    When he worked the Dinner Shift, Plaintiff Mastranzo worked as a delivery

person.  (Trial Tr. 79:10-23 (Mastranzo Direct), 289:12-17 (Koo Direct), 290:22:–291:4 (Koo

Direct), 334:3-8 (Zhong Direct).)

113.    When Plaintiff Mastranzo worked as a delivery person during the Dinner Shift,

Defendants paid him $5.00 per hour.  (Trial Tr. 190:20-191:5 (Koo Direct), 291:10-12 (Koo Direct).)

114.    Defendant Koo calculated the minimum amount she owed Plaintiff Mastranzo for work as a delivery person to be less than $5.00 per hour by applying applicable credits to his wages as follows:

      a.    When Plaintiff Mastranzo worked as a delivery person, Defendants applied a tip credit against his hourly wage.  (Trial Tr. 191:4-12 (Koo Direct).)

      b.    Defendants applied a meal credit against Plaintiff Mastranzo's wages for each meal Defendants provided to him.  (Trial Tr. 191:17-19 (Koo Direct), 192:3-17 (Koo Direct), 192:22-193:4 (Koo Direct).)

      c.    Plaintiff Mastranzo's half hour meal breaks were non-working time for which he did not need to be compensated.  (Trial Tr. 192:12-193:4 (Koo Direct).)

115.    Even though Defendant Koo calculated the minimum amount she owed Plaintiff Mastranzo for work as a delivery person to be less than $5.00 per hour, she always paid employees more than her minimum wage calculations so that she would have a "cushion."  (Trial Tr. 276:2-18 (Koo Direct).)

116.    On days that he worked for Koodo Sushi during the Lunch Shift, Defendants provided Plaintiff Mastranzo with one meal free of charge during that shift.  (Trial Tr. 192:6-8 (Koo Direct), Trial Tr. 308:25-309:10 (Zhou Direct).)

117.    On days that he worked for Koodo Sushi during the Dinner Shift, Defendants provided Plaintiff Mastranzo with one meal free of charge during that shift.  (Trial Tr. 192:6-8 (Koo Direct), 192:22-193:4 (Koo Direct), 308:25-309:10 (Zhou Direct).)

118.    On days that he worked for Koodo Sushi during the Lunch Shift, Plaintiff

Mastranzo took a half-hour lunch break.  (Trial Tr. 179:17-23 (Koo Direct), 308:21-309:1 (Zhou Direct)).)

119.   Plaintiff Mastranzo was not required to work during his lunch break.  (Trial Tr. 309:4-15 (Zhou Direct).)

120.   On days that he worked for Koodo Sushi during the Dinner Shift, Plaintiff Mastranzo took a half-hour dinner break.  (Trial Tr. 181:12-182:3 (Koo Direct), 308:21-309:3 (Zhou Direct).)

121.   Plaintiff Mastranzo did not work during his dinner break, and any interruptions were brief and infrequent.  (Trial Tr. 181:12-182:3 (Koo Direct), 309:4-15 (Zhou Direct).)

122.   From the beginning of his employment at Koodo Sushi until December 31, 2013, for 185 weeks, which excludes weeks when Plaintiff Mastranzo is known to have worked fewer than or greater than 50 hours (for example, during the holiday season or where the number of hours he worked was noted in Aldelo or trial exhibits), he was paid an average of $400.56 per week.  (App'x 1; Ex. D-A; Ex. D-B; Ex. D-E; Ex. D-L at LW_Koodo002150-55; Ex. D-Q; Exs. D-V1-11; Exs. D-V13-16.)

123.   The amount Defendants paid Plaintiff Mastranzo per week sometimes varied because Defendants paid him an hourly wage.  (Trial Tr. 189:15-23 (Koo Direct).)

124.   From the beginning of his employment at Koodo Sushi until December 31, 2013, based on available documents, Plaintiff Mastranzo's number of hours worked, schedule of hours worked, and corresponding hourly wages are known for the following weeks:

   a.   Defendants paid Plaintiff Mastranzo $450.00 on August 16, 2010 for his work the prior week.  During that week, he performed exclusively non-tipped cleaning work and worked the following schedule:  Monday through Friday from 11:00

a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and either Saturday or Sunday from 5:00 p.m. to 10:00 p.m., for a total of 50 hours.  (Ex. D-L at LW_Koodo002150; Ex. D-V1; Trial Tr. 294:14-297:15; App'x 1.)

b.   Defendants paid Plaintiff Mastranzo $450.00 on August 23, 2010 for his work the prior week.  During that week, he performed exclusively non-tipped cleaning work and worked the following schedule:  Monday through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Saturday from 5:00 p.m. to 10:00 p.m., for a total of 50 hours.  (Ex. D-A; Ex. D-L at LW_Koodo002151; Exs. D-V1-V6; Trial Tr. 294:14-297:15; App'x 1.)

c.   Defendants paid Plaintiff Mastranzo $450.00 on November 1, 2010 for his work the prior week.  During that week, he worked the following schedule:  Monday through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and either Saturday or Sunday from 5:00 p.m. to 10:00 p.m., for a total of 50 hours. (Ex. D-L at LW_Koodo002150; Ex. D-Q; App'x 1.)

125.   From January 1, 2014 to December 31, 2014, for 42 weeks, which excludes weeks when Plaintiff Mastranzo is known to have worked fewer than or greater than 50 hours (for example, during the holiday season, or where the number of hours he worked is noted in Aldelo or trial exhibits), he was paid an average of $413.69 per week.  (App'x 1; Ex. D-E; Ex. D-K; Ex. D-L at LW_Koodo002150-55; Ex. P-3 at LW_Koodo002108.)

126.   From January 1, 2014 to December 31, 2014, Plaintiff Mastranzo's number of hours worked, schedule of hours worked, and corresponding hourly wages are known for the following weeks:

a.   Defendants paid Plaintiff Mastranzo $300.00 on January 5, 2014 for his work the

prior week.  During that week, he worked the following schedule:  Monday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., Tuesday from 11:00 a.m. to 3:00 p.m., Thursday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Friday from 11:00 a.m. to 2:00 p.m., for a total of 24 hours.  (Ex. D-K; App'x 1.)

b. Defendants paid Plaintiff Mastranzo $400.00 on January 13, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 9:00 p.m., and Tuesday through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., for a total of 44 hours. (Ex. D-K; Ex. D-L at LW_Koodo002153; App'x 1.)

c. Defendants paid Plaintiff Mastranzo $400.00 on February 2, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 9:00 p.m., and Tuesday through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., for a total of 44 hours. (Ex. D-K; Ex. D-L at LW_Koodo002153; App'x 1.)

d. Defendants paid Plaintiff Mastranzo $364.00 on February 23, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday from 11:00 a.m. to 3:00 p.m., Tuesday through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Sunday from 5:00 p.m. to 10:00 p.m., for a total of 45 hours.  (Ex. D-K at LW_Koodo002159-60; App'x 1.)

e. Defendants paid Plaintiff Mastranzo $327.00 on July 3, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday through Thursday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 9:00 p.m., and

Friday from 11:00 a.m. to 3:00 p.m., for a total of 36 hours.  (Ex. D-K; App'x 1.)

f.  Defendants paid Plaintiff Mastranzo $475.00 on November 16, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday and Tuesday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., Wednesday from 12:30 p.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., Thursday and Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Saturday from 5:00 p.m. to 10:00 p.m., for a total of 48.5 hours.[4]  (Ex. D-K; Tr. 212:14-18 (Koo Direct), 298:14-18 (Koo Direct); App'x 1.)

g.  Defendants paid Plaintiff Mastranzo $450.00 on November 23, 2014 for working 41 hours the prior week, on Monday, Tuesday, Thursday, and Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Saturday from 5:00 p.m. to 10:00 p.m.   (Ex. D-K; Tr. 212:14-18 (Koo Direct), 298:14-18 (Koo Direct); App'x 1.)

h.  Defendants paid Plaintiff Mastranzo $450.00 on December 7, 2014 for his work the prior week.  During that week, he worked the following schedule: Monday through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Saturday from 5:00 p.m. to 10:00 p.m., for a total of 50 hours.  (Ex. D-K; Tr. 212:14-18 (Koo Direct), 298:14-18 (Koo Direct); App'x 1.)

i.  Defendants paid Plaintiff Mastranzo $450.00 on December 14, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday

---

[4]     This total and the totals contained in paragraph 126(f)-(k) reflect Defendant's Koo's testimony that she sometimes did not record Plaintiffs' weekend hours on the calendar even though they worked their normal weekend shift(s).  (Trial Tr. 212:14-18 (Koo Direct), 298:14-18 (Koo Direct).)

through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Saturday from 5:00 p.m. to 10:00 p.m., for a total of 50 hours.  (Ex. D-K; Tr. 212:14-18 (Koo Direct), 298:14-18 (Koo Direct); App'x 1.)

j.   Defendants paid Plaintiff Mastranzo $450.00 on December 21, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday and Tuesday from 11:00 a.m. to 3:00 p.m., Wednesday through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Saturday from 5:00 p.m. to 10:00 p.m., for a total of 40 hours.  (Ex. D-K; Tr. 212:14-18 (Koo Direct), 298:14-18 (Koo Direct); App'x 1.)

k.   Defendants paid Plaintiff Mastranzo $220.00 on December 29, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday and Tuesday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., Wednesday from 11:00 a.m. to 3:00 p.m., and Saturday from 5:00 p.m. to 10:00 p.m., for a total of 27 hours.  (Ex. D-K; Ex. P-3 at LW_Koodo002108; Tr. 212:14-18 (Koo Direct), 298:14-18 (Koo Direct); App'x 1.)

127.   Therefore, from the beginning of his employment until the end of 2014, excluding weeks where Plaintiff Mastranzo was known to have worked fewer or greater than 50 hours, Plaintiff Mastranzo was paid an average of $402.99 per week.  (App'x 1; Ex. D-A; Ex. D-B; Ex. D-E; Ex. D-K; Ex. D-L at LW_Koodo002150-55; Ex. D-Q; Exs. D-V1-11; Exs. D-V13-16.)

128.   Plaintiff Mastranzo occasionally performed additional work duties other than dishwashing and delivery for Koodo Sushi, such as cleaning.  These tasks were always performed within his normal work hours.  (Trial Tr. 227:5-25 (Koo Direct); 228:1-25 (Koo Direct); 289:6-25 (Koo Direct).)

29

129.    When Plaintiff Mastranzo performed additional work duties other than dishwashing and delivery, such as cleaning, Defendants paid him an extra amount that was separate from his hourly wage.  (Trial Tr. 226:1-228:17 (Koo Direct); *see, e.g.*, Ex. D-L at LW_Koodo002155.)

130.    When Plaintiff Mastranzo received a tip from a customer in connection with a delivery placed by any means other through Seamless, he received the entire amount of that tip.  (Trial Tr. 235:14–241:6 (Koo Direct); 386:2-12 (Koo Cross)).

131.    When Plaintiff Mastranzo received a tip from a customer through Seamless, Seamless retained approximately 14% of his tip and Defendants forwarded him the balance.  (Trial Tr. 239:8-25, 240:15-21 (Koo Direct), 386:2-12 (Koo Cross)).

132.    Defendants provided Plaintiff Mastranzo with a bicycle helmet to perform his work duties at Koodo Sushi.  (Trial Tr. 285:16-22 (Koo Direct).)

133.    Defendants provided Plaintiff Mastranzo with bicycle lights to perform his work duties at Koodo Sushi.  (Trial Tr. 285:16-22 (Koo Direct).)

134.    Plaintiffs' Complaint does not allege that Plaintiff Mastranzo was required to purchase anything to perform his work duties at Koodo Sushi.  Compl., Dkt. No. 1 (April 7, 2015).

135.    Plaintiff Mastranzo's recollection at trial of his work schedule, total hours he worked per week, and amount he was paid at Koodo Sushi was unclear and, as the Court commented, "less than credible."  (Trial Tr. 103:25-107:25, 115:3-9 (Mastranzo Cross); Ex. D-K.)

       a.   Plaintiff Mastranzo testified that he started working at Koodo Sushi in June 2010, but available records, including data from the Aldelo system, reflect that he

received payments from Defendants beginning February 1, 2010. (Ex. D-L at LW_Koodo2150-51; Trial Tr. 72:23-24 (Mastranzo Direct); 87:19-21 (Mastranzo Cross).)

b. Plaintiff Mastranzo testified that Defendants did not require him to record when he arrived at work or left work.  However, he conceded during cross-examination that he was in fact required to do so, but allowed another Koodo Sushi employee to fill in his entries as a "joke."  (Trial Tr. 75:23-76:6 (Mastranzo Direct), 108:1-8 (Mastranzo Cross), 113:12-115:8 (Mastranzo Cross); Ex. D-V17).)

c. Plaintiff Mastranzo testified that, during his entire employment at Koodo Sushi, he worked fifty-eight hours per week—from 11:00 a.m. to 4:00 p.m. and 5:00 p.m. to 10:30 p.m. on Monday through Friday, and 5:00 p.m. to 10:30 p.m. on Sundays.  (Trial Tr. 74:16-75:1 (Mastranzo Direct), 83:5-17 (Mastranzo Direct), 88:6-9 (Mastranzo Direct), 104:2-17 (Mastranzo Direct).)  Existing documentary evidence and other witness testimony, however, contradicted that testimony and revealed that Plaintiff Mastranzo consistently worked fewer hours than the schedule to which he testified on direct examination.   (Trial Tr. 74:16-75:1 (Mastranzo Direct), 90:21-91:6 (Mastranzo Cross), 104:3-17 (Mastranzo Cross), 288:16-291:17 (Koo Direct).)

d. Plaintiff Mastranzo testified that he was paid a weekly salary of $350 during his first year of employment, and then $400 until he stopped working at Koodo Sushi. (Trial Tr. 83:18-84:2 (Mastranzo Direct), 85:19-20 (Mastranzo Direct).)  Existing documentary evidence, including records generated from the Aldelo system and the calendar maintained by Defendant Koo in 2014, contradicts that testimony.

(Trial Tr. 83:15-84:2 (Mastranzo Direct), 103:25-107:25 (Mastranzo Cross); Ex. D-K; Ex. D-L at LW_Koodo002150-55.)

e.  When Plaintiff Mastranzo was confronted with contemporaneously created documents that he signed that contradicted his testimony regarding his wages, he refused to acknowledge the contents of the documents or provided unclear explanations.  (Trial Tr. 92:11-94:11 (Mastranzo Cross), 95:15-96:10 (Mastranzo Cross), 97:6-100:15 (Mastranzo Cross), 102:7-20 (Mastranzo Cross); Ex. D-A, Ex. D-V1.)  For example, Plaintiff Mastranzo initially said that Ms. Koo paid him $450 only once, (Trial Tr. 103:8-12 (Mastranzo Cross)), but when confronted with additional documents reflecting his wages, he admitted that he was regularly paid at least $450 per week in 2014.  (Trial Tr. 103:8-12 (Mastranzo Cross), 107:23-25 (Mastranzo Cross); Ex D-A; Ex. D-K; Ex. D-L at LW_Koodo002150-002155, Ex. D-V1.)

f.  Plaintiff Mastranzo testified that he was required to perform tasks other than dishwashing and delivery at Koodo Sushi during times when the restaurant was not open, and that he was not compensated for completing those tasks.  (Trial Tr. 84:1-2 (Mastranzo Direct), 85:24-86:1 (Mastranzo Direct).)  Plaintiff Mastranzo later admitted, however, that Defendant Koo paid him extra money in addition to his wages for completing extra work duties.  (Trial Tr. 107:23-25 (Mastranzo Cross).)   In addition, other consistent testimony demonstrates that Plaintiff Mastranzo performed those duties during his normal work hours while Koodo Sushi was open.  (Trial Tr. 183:20-24 (Koo Direct), 185:11-186:1 (Koo Direct), 186:22-188:12 (Koo Direct), 227:5-25 (Koo Direct), 228:1-25 (Koo Direct),

289:6-25 (Koo Direct), 308:4-13 (Zhou Direct), 320:20-321:2 (Zhong Direct), 321:13-15 (Zhong Direct), 321:20-22 (Zhong Direct).)

g.   Plaintiff Mastranzo testified that he was required to purchase a $25 bicycle helmet and two $10 bicycle lights to perform his work duties at Koodo Sushi.  (Trial Tr. 86:2-25 (Mastranzo Direct).)  In fact, he was not required to purchase those items because Defendant Koo provided them to him.   (Trial Tr. 285:16-22 (Koo Direct).)

h.   Plaintiff Mastranzo testified that he does not speak English, but demonstrated on two occasions during his testimony that he understood spoken English.  (Trial Tr. 72:9-14 (Mastranzo Direct); 90:10-16 (Mastranzo Cross), 100:16-23 (Mastranzo Cross).)

Oscar Sanchez

136.   Plaintiff Sanchez was hired by Koodo Sushi in or around August 2009,[5] and his employment by Koodo Sushi ended in or around February 2015.  (Trial Tr. 16:12-15 (Sanchez Direct), 38:4-6 (Sanchez Cross), 39:3-6 (Sanchez Cross), 245:8-10 (Koo Direct); Ex. D-O; Ex. D-L at LW_Koodo002143.)

137.   For the first month of Plaintiff Sanchez's employment at Koodo Sushi, he was employed as a dishwasher during the Lunch Shift and as a delivery person during the Dinner Shift.  (Trial Tr. 22:8-12 (Sanchez Direct), 245:8-21 (Koo Direct); Ex. D-O.)

138.   During the month he worked as a dishwasher and delivery person, Plaintiff Sanchez's default schedule was as follows:  11:00 a.m. to 3:00 p.m. and from 5:00 p.m. to 10:00

---

[5]     The Aldelo system and the initial work schedule Defendant Koo provided to Plaintiff Sanchez show that Defendants first paid Plaintiff Sanchez on August 24, 2009 for work the prior week beginning on Tuesday, August 18, 2009.  (Ex. D-O; Ex. D-L at LW_Koodo002143.)

p.m. on Monday through Friday, and from 5:00 p.m. to 10:00 p.m. on either Saturday or Sunday. (Trial Tr. 25:17-22 (Sanchez Direct), 250:2-18 (Koo Direct); Ex. D-O.)

139.    When Plaintiff Sanchez began working at Koodo Sushi, Defendant Koo explained his general work schedule, hourly wage, and job duties, and wrote down the same for him.  (Ex. D-O; Trial Tr. 17:20-18:12 (Sanchez Direct), 249:6-253:14 (Koo Direct).)  A Spanish-speaking friend of Plaintiff Sanchez translated the same information for him into Spanish and provided Plaintiff Sanchez with the information on a piece of paper.  Plaintiff Sanchez took that paper home with him.  (Trial Tr. 17:13-18:4 (Sanchez Direct), 253:5-14 (Koo Direct).)

140.    When Plaintiff Sanchez worked as a dishwasher, he was paid $7.25 per hour. (Ex. D-O; Trial Tr. 251:23-25, 252:1-7 (Koo Direct).)

141.    When Plaintiff Sanchez worked as a delivery person, he was paid $5.00 per hour, pursuant to Defendant Koo's determination that minimum wage, less applicable credits, was slightly less than $5 at the time (as calculated in paragraph 142-43 below).  (Trial Tr. 190:20-191:5 (Koo Direct), 252:1-2 (Koo Direct).)

142.    Defendant Koo calculated the minimum amount she owed Plaintiff Sanchez for work as a delivery person to be less than $5.00 per hour by applying applicable credits to his wages as follows:

  a.  When Plaintiff Sanchez worked as a delivery person, Defendants applied a tip credit against his hourly wage.  (Trial Tr. 191:4-12 (Koo Direct), 252:4-6 (Koo Direct).)

  b.  Defendants applied a meal credit against Plaintiff Sanchez's wages for each free meal they provided to Plaintiff Sanchez.   (Trial Tr. 191:17-19 (Koo Direct), 192:3-17 (Koo Direct), 192:22-193:4 (Koo Direct); Ex. D-O.)

34

    c.    Plaintiff Sanchez's half hour meal breaks were non-working time for which he did not need to be compensated.  (Trial Tr. 192:12-193:4 (Koo Direct).)

143.    Even though Defendant Koo calculated the minimum amount she owed Plaintiff Sanchez for work as a delivery person to be less than $5.00 per hour, she always paid employees more than her minimum wage calculations so that she would have a "cushion."  (Trial Tr. 276:2-18 (Koo Direct).)

144.    Approximately one month after Plaintiff Sanchez started working for Koodo Sushi, Defendant Koo offered him the opportunity to learn how to prepare sushi because she thought he was a hard worker and the more skilled position would provide him a better future. (Trial Tr. 245:14-21 (Koo Direct).)

145.    Beginning approximately one month after he started working for Koodo Sushi and through the remainder of his employment at Koodo Sushi, Plaintiff Sanchez worked at the sushi bar, first as a trainee and then as a sushi helper.  (Trial Tr. 257:2-4, 258:1-4; Trial Tr. 40:6-8 (Sanchez Direct); Trial Tr. 304:17-19, 305:5-10 (Zhou Direct).)

146.    When he worked at the sushi bar, Plaintiff Sanchez's initial default schedule was as follows:  11:00 a.m. to 3:00 p.m. and from 5:00 p.m. to 10:00 p.m. on Monday through Friday, and from 5:00 p.m. to 10:00 p.m. on Saturday or Sunday.  (Trial Tr. 25:17-26:9 (Sanchez Direct), 259:16-20 (Koo Direct), 305:11-17 (Zhou Direct).)

147.    Plaintiff Sanchez's work schedule changed during holidays.  (Trial Tr. 194:17-25 (Koo Direct).)

148.    When Plaintiff Sanchez worked at the sushi bar, he was paid at least the hourly minimum wage as required under the NYLL.  (Trial Tr. 245:25-246:2 (Koo Direct).)

149.    During the time Plaintiff Sanchez worked at the sushi bar, his hourly wage

increased over time, eventually reaching at least $9.00 per hour.  (Trial Tr. 261:20-262:6 (Koo Direct), 396:19-23 (Koo Cross).)

150.    Plaintiff Sanchez's daughter, who was born in 2012, has suffered from medical issues since her birth that have required her to live in a number of hospitals, including one in the Bronx, NY.  The hours Plaintiff Sanchez was able to work for Koodo Sushi were affected by his need to care for his daughter  (Trial Tr. 55:24-60:10 (Sanchez Cross), 262:10-11 (Koo Direct), 306:2-25 (Zhou Direct), 307:1-4 (Zhou Direct), Tr. 345:18-19 (Lin Direct).)

151.    On some occasions, Plaintiff Sanchez was unable to work during either the Lunch Shift or the Dinner Shift because he had to care for his daughter, including bringing her to doctor appointments and visiting her in the hospital.  (Trial Tr. 51:21-52:4 (Sanchez Cross), 57:4-18 (Sanchez Cross), 58:16-60:8 (Sanchez Cross), 266:14-25 (Koo Direct), 306:24-307:3 (Zhou Direct).)

152.    After Plaintiff Sanchez's daughter was born in 2012, his scheduled working hours continued to begin at 11:00 a.m., but with Defendant Koo's permission, he did not arrive at Koodo Sushi each day until at least 12:00 p.m.  (Trial Tr. 262:10-15 (Koo Direct), 305:18-306:1 (Zhou Direct).)

153.    At least as early as November 2014, Plaintiff Sanchez's work schedule was formally changed to begin at 12:00 p.m.  (Ex. D-K at LW_Koodo002170; Trial Tr. 262:15-25 (Koo Direct), 263:1-9 (Koo Direct).)

154.    At least as early as December 2014, Plaintiff Sanchez stopped working weekends. (Trial Tr. 26:24-27:5 (Sanchez Direct), 212:23-213:1 (Koo Direct), 215:5-6 (Koo Direct); Ex. D-K at LW_Koodo002171.)

155.    Beginning in or around November or December 2014, Plaintiff Sanchez no longer

worked multiple shifts per day for Koodo Sushi.  From that point forward, he generally worked at Koodo Sushi four or five days per week from 12:00 p.m. to 3:00 p.m.  (*See, e.g.*, Ex. D-K at LW_Koodo002170-71; Trial Tr. 25:12-16 (Sanchez Direct).)

156.   Plaintiff Sanchez did not begin work before 11:00 a.m.  (Trial Tr. 306:6-22 (Zhou Direct), 321:1-4 (Zhong Direct), 339:1-3 (Lin Direct).)

157.   After his schedule was changed to allow him to begin work at 12:00 p.m., Plaintiff Sanchez did not begin work before 12:00 p.m.  (Trial Tr. 263:12-15 (Koo Direct), 306:6-22 (Zhou Direct).)

158.   Throughout this time period, when he worked the Lunch Shift, Plaintiff Sanchez often arrived at Koodo Sushi later than his scheduled time to begin work.  (Trial Tr. 263:4-21 (Koo Direct), 306:24-307:3 (Zhou Direct).)

159.   When he worked the Dinner Shift, Plaintiff Sanchez did not work later than 10:00 p.m.  (Trial Tr. 185:11-186:1 (Koo Direct), 307:7-24 (Zhou Direct), 321:20-322:10 (Zhong Direct), 340:1-16 (Lin Direct).)

160.   Plaintiff Sanchez did not perform work for Koodo Sushi while the restaurant was closed during the Midday Break.  (Trial Tr. 186:22-188:12 (Koo Direct), 307:25-308:20 (Zhou Direct), 346:11-15 (Lin Direct), 321:9-15 (Zhong Direct).)

161.   Defendants provided Plaintiff Sanchez with one meal free of charge during each shift he worked at Koodo Sushi.  (Trial Tr. 192:6-8 (Koo Direct), 192:22-193:4 (Koo Direct), 308:25-309:10 (Zhou Direct).)

162.   After Plaintiff Sanchez began working at the sushi bar, Defendants continued to apply a meal credit against Plaintiff Sanchez's wages for each free meal they provided to Plaintiff Sanchez.  (Trial Tr. 191:17-19 (Koo Direct), 192:3-17 (Koo Direct), 192:22-193:4 (Koo

37

Direct); Ex. D-O.)

163.   On days that he worked for Koodo Sushi at some point during the Lunch Shift, Plaintiff Sanchez took a half-hour lunch break.  (Trial Tr. 179:17-23 (Koo Direct), 308:21-309:19 (Zhou Direct).)

164.   Plaintiff Sanchez did not work during his lunch break.  (Trial Tr. 309:4-19 (Zhou Direct).)

165.   On days that he worked for Koodo Sushi during the Dinner Shift, Plaintiff Sanchez took a half-hour dinner break.  (Trial Tr. 181:12-182:3 (Koo Direct), 308:21-309:18 (Zhou Direct).)

166.   Plaintiff Sanchez did not work during his dinner break.  (Trial Tr. 181:12-182:3 (Koo Direct), 309:4-19 (Zhou Direct).)

167.   For the first month of his employment at Koodo Sushi, for four weeks, which excludes weeks when Plaintiff Sanchez is known to have worked fewer than or greater than 50 hours (for example, during the holiday season or where the number of hours he worked is noted in Aldelo or trial exhibits), he was paid an average of $342.00 per week.  (App'x 1; Ex. D-L at LW_Koodo002143-49; Ex. D-O.)

168.   The amount Defendants paid Plaintiff Sanchez per week sometimes varied because Defendants paid him an hourly wage.  (Trial Tr. 61:6-62:6 (Sanchez Cross), 67:1-4 (Sanchez Cross), 68:2-20 (Sanchez Cross), 189:18-23 (Koo Direct), 225:18-24 (Koo Direct).)

169.   During Plaintiff Sanchez's first month of employment at Koodo Sushi, based on available documents, Plaintiff Sanchez's number of hours worked, schedule of hours worked, and corresponding hourly wages are known for the following weeks:

   a.   Defendants paid Plaintiff Sanchez $255.00 on August 24, 2009 for his work the

prior week.  During that week, he worked the following schedule:  Tuesday from 5:00 p.m. to 10:00 p.m., Wednesday  through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m. and Saturday from 5:00 p.m. to 10:00 p.m., for a total of 37 hours.  (Ex. D-L at LW_Koodo002143; Ex. D-O; Trial Tr. 250:1-251-12 (Koo Direct); App'x 1.)

b.   Defendants paid Plaintiff Sanchez $350.00 on August 31, 2009 for his work the prior week.   During that week, he worked the following schedule:  Monday through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Saturday from 5:00 p.m. to 10:00 p.m., for a total of 50 hours.  (Ex. D-L at LW_Koodo002143; Ex. D-O; App'x 1.)

170.    Beginning approximately one month after the start of his employment, when he began working at the sushi bar, until December 31, 2013, for 204 weeks, which excludes weeks when Plaintiff Sanchez is known to have worked fewer than or greater than 50 hours (for example, during the holiday season, or where the number of hours he worked is noted in Aldelo or trial exhibits), he was paid an average of $454.03 per week.  (App'x 1; Ex. D-E; Ex. D-L at LW_Koodo002143-49; Exs. D-V17-18.)

171.    From January 1, 2014 to December 31, 2014, for 38 weeks, which excludes weeks when Plaintiff Sanchez is known to have worked fewer than or greater than 50 hours, such as where the number of hours he worked is noted in Aldelo or trial exhibits, he was paid an average of $539.81 per week.  (App'x 1; Ex. D-K; Ex. D-L at LW_Koodo002143-49.)

172.    From January 1, 2014 to December 31, 2014, based on available documents, Plaintiff Sanchez's number of hours worked, schedule of hours worked, and corresponding hourly wages are known for the following weeks:

a. Defendants paid Plaintiff Sanchez $400.00 on January 5, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., Tuesday from 12:00 p.m. to 3:00 p.m., Wednesday and Thursday from 12:00 p.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Friday from 12:00 p.m. to 3:00 p.m., for a total of 31 hours. (Ex. D-K; App'x 1.)

b. Defendants paid Plaintiff Sanchez $556.65 on January 10, 2014 for his work the prior week.   During that week, he worked the following schedule:  Monday through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Saturday from 5:00 p.m. to 10:00 p.m., for a total of 50 hours  (Ex. D-K; Ex. D-L at LW_Koodo002145; App'x 1.)

c. Defendants paid Plaintiff Sanchez $400.00 on January 19, 2014 for his work the prior week.   During that week, he worked the following schedule:  Monday through Thursday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Friday from 12:00 p.m. to 3:00 p.m., for a total of 39 hours.  (Ex. D-K; App'x 1.)

d. Defendants paid Plaintiff Sanchez $415.00 on January 26, 2014 for his work the prior week.   During that week, he worked the following schedule:  Tuesday through Friday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Saturday from 5:00 p.m. to 10:00 p.m., for a total of 41 hours.  (Ex. D-K; App'x 1.)

e. Defendants paid Plaintiff Sanchez $550.00 on February 2, 2014 for his work the prior week.   During that week, he worked the following schedule:  Monday through Thursday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and

Friday from 1:00 p.m. to 3:00 p.m., for a total of 38 hours.  (Ex. D-K; App'x 1.)

f.  Defendants paid Plaintiff Sanchez $550.00 on November 9, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Tuesday through Friday from 12:00 p.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., for a total of 41 hours. (Ex. D-K; App'x 1.)

g.  Defendants paid Plaintiff Sanchez $550.00 on November 16, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., Tuesday and Wednesday from 12:00 p.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., Thursday from 7:00 p.m. to 10:00 p.m., and Friday from 12:00 p.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., for a total of 36 hours.  (Ex. D-K; App'x 1.)

h.  Defendants paid Plaintiff Sanchez $550.00 on November 23, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., Tuesday from 12:00 p.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., Wednesday from 1:00 p.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Thursday and Friday from 12:00 p.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., for a total of 40 hours.  (Ex. D-K; App'x 1.)

i.  Defendants paid Plaintiff Sanchez $550.00 on December 7, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday through Friday from 12:00 p.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., for a total of 40 hours.  (Ex. D-K; App'x 1.)

41

j.   Defendants paid Plaintiff Sanchez $350.00 on December 14, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday and Tuesday from 12:00 p.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Wednesday through Friday from 12:00 p.m. to 3:00 p.m., for a total of 25 hours. (Ex. D-K; App'x 1.)

k.   Defendants paid Plaintiff Sanchez $350.00 on December 21, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday and Tuesday from 12:00 p.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and Wednesday through Friday from 12:00 p.m. to 3:00 p.m., for a total of 25 hours. (Ex. D-K; App'x 1.)

l.   Defendants paid Plaintiff Sanchez $150.00 on December 28, 2014 for his work the prior week.  During that week, he worked the following schedule:  Monday, Tuesday, Wednesday, and Friday from 12:00 p.m. to 3:00 p.m., for a total of 12 hours.  (Ex. D-K; App'x 1.)

173.   Therefore, from the beginning of his employment until the end of 2014, excluding weeks when Plaintiff Sanchez is known to have worked fewer than or greater than 50 hours, Plaintiff Sanchez was paid an average of $465.46 per week.  (App'x 1; Ex. D-E; Ex. D-K; Ex. D-L at LW_Koodo002143-49; Ex. D-O; Exs. D-V17-18.)

174.   Plaintiff Sanchez occasionally performed additional work duties other than sushi preparation.  These tasks were always performed within his normal work hours.  (Trial Tr. 225:10-25 (Koo Direct); Trial Tr. 246:21-248:22 (Koo Direct).)

175.   When Plaintiff Sanchez performed additional work duties other than sushi preparation, Defendants paid him an extra amount that was separate from his hourly wage.

(Trial Tr. 225:10-25 (Koo Direct); Ex. D-L at LW_Koodo002143.)

176.    During the first month of his employment, Plaintiff Sanchez was sometimes required to prepare rice.  He was not required to arrive before 11:00 a.m. to complete this task which required him to be present at a rice maker for one and one-half minutes.  (Trial Tr. 246:21-247:4-25 (Koo Direct), 248:20-22 (Koo Direct).)

177.    If Plaintiff Sanchez received a tip from a customer in connection with a delivery placed by any means other than through Seamless, he received the entire amount of that tip.  (Trial Tr. 235:14–241:6 (Koo Direct); 386:2-12 (Koo Cross)).

178.    When Plaintiff Sanchez received a tip from a customer through Seamless, Seamless retained approximately 14% of his tip and Defendants forwarded him the balance.  (Trial Tr. 239:8-25 (Koo Direct), 240:15-21 (Koo Direct).)

179.    Defendants provided Plaintiff Sanchez with paper chef hats to perform his work duties at Koodo Sushi.  (Ex. D-T; Trial Tr. 268:2-269:21 (Koo Direct), 310:2-12 (Zhou Direct).)

180.    Defendants provided Plaintiff Sanchez with knives to perform his work duties at Koodo Sushi.  (Trial Tr. 269:23-270:11 (Koo Direct), 310:13-19 (Zhou Direct), 314:21-24 (Zhou Redirect).)

181.    Although Plaintiff Sanchez purchased a knife during his employment at Koodo Sushi, he did so because he wanted to own a sushi knife of his own.  Defendants did not require Plaintiff Sanchez to purchase a knife to perform his work duties at Koodo Sushi.  (Trial Tr. 269:23-24 (Koo Direct), 270:2-4 (Koo Direct), 270:17-22 (Koo Direct), 310:13-19 (Zhou Direct), 314:10-24 (Zhou Cross & Redirect).)

182.    Defendants did not require Plaintiff Sanchez to wear an apron to perform his work duties at Koodo Sushi.  (Trial Tr. 267:8-18 (Koo Direct), 309:20-310:1 (Zhou Direct).)

183.    Defendants did not require Plaintiff Sanchez to wear a sushi robe to perform his work duties at Koodo Sushi.  (Trial Tr. 267:8-268:1 (Koo Direct), 309:20-24 (Zhou Direct).)

184.    Plaintiff Sanchez's recollection at trial of his work schedule, the total hours he worked per week at Koodo Sushi, and the amounts Defendants paid him was unclear and not credible.  (Ex. D-A; Ex. D-G; Ex. D-K at LW_Koodo002157, 59, 61, 70-71; Trial Tr. 41:9-20 (Sanchez Cross), 46:18-49:18 (Sanchez Cross), 60:20-63:20 (Sanchez Cross), 64:18-68:4 (Sanchez Cross).)

> a.   Plaintiff Sanchez testified that he worked fifty-two and one-half hours a week for the first month of his employment—from 10:30 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m. on Mondays through Fridays, and on Saturday or Sunday from 5:00 p.m. to 10:00 p.m. (Trial Tr. 18:22-19:1 (Sanchez Direct), 20:19-25 (Sanchez Direct), 25:17-22 (Sanchez Direct).)   After that first month, beginning when he worked at the sushi bar, until December 2014, Plaintiff Sanchez testified that he worked fifty hours per week every week—from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m. on Mondays through Fridays, and on Saturday or Sunday from 5:00 p.m. to 10:00 p.m.   (Trial Tr. 24:23-25:1 (Sanchez Direct), 25:17-22 (Sanchez Direct).)   From December 2014 until February 2015, Plaintiff Sanchez said he worked 20 hours every week—on weekdays from 11:00 a.m. to 3:00 p.m. (Trial Tr. 26:24-27:4 (Sanchez Direct).) Existing documentary evidence and consistent testimony, however, demonstrate that he often worked fewer hours than the schedule to which he testified on direct examination.  (Trial Tr. 44:23-60:8 (Sanchez Cross), 262:10-15 (Koo Direct), 263:1-21 (Koo Direct), 266:14-25 (Koo Direct), 305:18-306:1 (Zhou Direct), 306:6-307:3 (Zhou Direct), 321:1-4 (Zhong

Direct), 339:1-3 (Lin Direct); Ex. D-K at LW_Koodo002170-71.)

b.  Plaintiff Sanchez's explanation that he had to arrive at 10:30 a.m. during the first month of his employment to prepare rice was not credible because that was a task that was not necessary to begin until at least 11:00 a.m. because customers rarely placed orders earlier than when the busy lunch period began shortly after noon, and those who did were served rice prepared the prior day.  (Trial Tr. 179:11-20 (Koo Direct), 248:5-19 (Koo Direct).)  In addition, his suggestion that Defendant Koo provided him with a key to Koodo Sushi shortly after he began working there so that he could open the restaurant at 10:30 a.m. was also facially implausible and contradicted by Ms. Koo's more plausible testimony that only employees she knew well and had worked for her for a substantial period of time were entrusted with keys.  (Trial Tr. 20:13-18 (Sanchez Direct), 41:9-20 (Sanchez Cross), 255:15-257:1 (Koo Direct).)

c.  Plaintiff Sanchez testified that he worked past 3:00 p.m. once in a while to take out the garbage or practice preparing sushi.  (Trial Tr. 31:18-32:14 (Sanchez Direct).)  Other consistent evidence, however, demonstrates that Plaintiff Sanchez did not work between 3:00 p.m. and 5:00 p.m.  (Trial Tr. 186:22-188:12 (Koo Direct), 307:25-308:20 (Zhou Direct), 346:11-15 (Lin Direct), 321:9-15 (Zhong Direct).)

d.  Plaintiff Sanchez testified that he was paid a weekly salary of $350 from 2009 to August 2011, $375 from August 2011 until sometime in 2012, $500 from 2012 until December 2014, and $300 from December 2014 to February 2015.  (Trial Tr. 27:14-29:13 (Sanchez Direct).).  Existing documentary evidence contradict

Plaintiff Sanchez's testimony regarding the amount Defendants paid him; the existing records show that he was consistently paid more than the amounts to which he testified on direct examination.  (Trial Tr. 60:20-63:20 (Sanchez Cross), 64:18-68:4 (Sanchez Cross); Ex. D-A; Ex. D-G.)

e.   When confronted with contemporaneously created documents that he admitted to having signed, which showed Defendant Koo paid him more than he had testified, Plaintiff Sanchez admitted that the records were accurate, and that the amount he was paid was based on the number of hours he worked.  (Trial Tr. 61:6-62:6 (Sanchez Cross), 67:1-4 (Sanchez Cross), 68:2-20 (Sanchez Cross); Ex. D-A; Ex. D-G; Ex. D-L at LW_Koodo002143-49).   Indeed, Defendant Koo paid Plaintiff Sanchez an hourly wage.  (Trial Tr. 189:18-23 (Koo Direct), 225:18-24 (Koo Direct; Ex. D-O).

f.   For example, when he was confronted with a document he had signed showing he was paid $450 for a week in 2010—when he claimed he was paid $350 per week—Plaintiff Sanchez testified that Defendant Koo paid him more when he worked more hours.  (Ex. D-A; Trial Tr. 65:4-68:20 (Sanchez Cross).)  Likewise, when presented with a copy of a thermographic paper printed from Aldelo that he signed showing he was paid $550.00 on September 12, 2013—during a period when he said he was paid $500 per week—Plaintiff Sanchez said he signed the document to confirm how much he was paid.  (Ex. D-G; Trial Tr. 62:13-62:20 (Sanchez Cross).)

g.   Plaintiff Sanchez testified that, to perform his work duties at Koodo Sushi, he was required to purchase two chef's hats totaling $20, two aprons for $20 each, a robe

46

for $25 or $30, and a knife for $350.  (Trial Tr. 32:18-35:6 (Sanchez Direct).)

Consistent credible testimony, however, revealed that Defendant Koo provided

Plaintiff Sanchez with chef's hats and knives, and did not require him to wear an

apron.  (Trial Tr. 267:8-270:11 (Koo Direct), 270:17-22 (Koo Direct), 309:20-

310:19 (Zhou Direct), 314:10-24 (Zhou Cross & Redirect); Ex. D-T.)  In addition,

Mr. Sanchez testified on direct examination that he did not need a second apron.

(Trial Tr. 33:14-17 (Sanchez Direct).)

### Defendants' Proposed Conclusions of Law

#### Burdens of Proof

185.    An employee who sues for unpaid minimum wages or overtime compensation has

the burden of proving that the employer did not compensate him for completed work.

*Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003).

186.    Where an employer has not preserved records of employee wages, hours and

employment conditions, to carry its burden of proof, an employee must prove that he has in fact

performed work for which he was improperly compensated and produce sufficient evidence to

show the amount and extent of that work as a matter of "just and reasonable inference."

*Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003).  To satisfy this burden of proof,

an employee may rely solely on his recollection, but he may not speculate.  *Park v. Seoul Broad.*

*Sys. Co.*, No. 05-cv-8956 (BSJ) (DFE), 2008 WL 619034, at *7 (S.D.N.Y. Mar. 6, 2008).

187.    If an employee meets its initial burden to produce sufficient evidence to show the

amount and extent of that work as a matter of just and reasonable inference, the burden then

shifts to the employer to produce either evidence of the precise amount of work performed *or*

evidence to negative the reasonableness of the inference to be drawn from the employee's

evidence. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 (1946); *see also Cardona v. Maramont Corp.*, 43 Misc. 3d 1230(A) at *20, 993 N.Y.S.2d 643 (Sup. Ct. 2014) (citing *Gelco Builders Inc. v. Holtzman,* 168 A.D.2d 232 (1st Dep't 1990)).

188.    Plaintiff Gamero, Plaintiff Mastranzo, and Plaintiff Sanchez have failed to prove that they were in fact improperly compensated or produce sufficient evidence to show the amount and extent of their work as a matter of just and reasonable inference, and have thus failed to meet their initial burden.  Plaintiff Gamero's, Plaintiff Mastranzo's, and Plaintiff Sanchez's recollection of the hours they worked were unclear, inconsistent, and not credible.  Their testimony was not based simply on their recollections, which were exaggerated, but also on speculation.

189.    Even if Plaintiff Gamero, Plaintiff Mastranzo, and Plaintiff Sanchez had met their initial burden, Defendants have produced evidence of the actual amount hours of work performed and evidence sufficient to negative the reasonableness of any inference to be drawn from Plaintiffs' evidence.

<u>Minimum Wage</u>

190.    The FLSA and NYLL require that workers receive a minimum hourly wage for each hour worked. 29 U.S.C. § 206; N.Y. Lab. Law. § 652; 12 NYCRR § 146-1.1.

191.    The minimum wage under the FLSA was $7.25 beginning on July 24, 2009.  29 U.S.C. § 206(a)(1).

192.    The minimum wage under the NYLL was $7.25 per hour on and after July 24, 2009; $7.25 per hour on and after January 1, 2011; $8.00 per hour on and after December 31, 2013; and $8.75 per hour on and after December 31, 2014.  12 NYCRR § 146-1.2 (2015); 12 NYCRR § 137-1.2 (2009).

193.    Throughout the Relevant Period, Defendants paid Plaintiff Gamero, Plaintiff Mastranzo, and Plaintiff Sanchez at least the hourly minimum wage.

194.    Plaintiffs are not entitled to relief under the First or Third Cause of Action in their Complaint.

<u>Tip Credit</u>

195.    Under the FLSA, an employer may take a tip credit against the minimum wage paid to a tipped employee.  29 U.S.C. § 203(m).

196.    Under the FLSA, a tipped employee is an employee who regularly and customarily receives at least $30 in tips per month.  29 U.S.C. § 203(m); 29 C.F.R. § 531.56(a).

197.    Under the NYLL, an employer may take a tip credit toward the minimum hourly rate if a service employee or food service employee receives enough tips such that the total of tips received plus wages equals or exceeds the minimum wage, and the employee has been notified of the tip credit.  12 NYCRR § 146-1.3.

198.    To take a tip credit under the NYLL, the requirement that an employee be notified is satisfied if the employee understands that he is being paid pursuant to a tip credit minimum wage.  *Carvente-Avila v. Chaya Mushkah Rest. Corp.*, 12-cv-5359 (KBF), 2016 WL 3221141, at *1 (S.D.N.Y. Mar. 1, 2016) (quoting Mar. 4, 2015 NYDOL Letter Re: 12 NYCRR §§ 145–1.3 & 146–2.2); *see also Franco v. Jubilee First Avenue Corp.*, 14-cv-7729 (SN), 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016).

199.    Under the NYLL, a delivery person is a service employee provided that he customarily receives tips at the rate of $1.60 on and after January 1, 2007; $1.75 on and after December 31, 2013; and $1.90 on and after December 31, 2014.  12 NYCRR § 146-3.3 (2015); 12 NYCRR § 137-3.3 (2009).

200.    An employee is classified as a service employee or non-service employee on a weekly basis, but an employee may not be classified as a service employee on any day in which he has been assigned to work at an occupation in which tips are not customarily received for 2 hours or more or for more than 20 percent of his shift, whichever is less.  12 NYCRR § 146-3.3(c) (2015); *see also* 12 NYCRR § 137-3.3(c) (2009).

201.    Plaintiff Gamero performed only tipped delivery work for Koodo Sushi.  Thus, he was a service employee during his entire employment at Koodo Sushi.

202.    Based on his typical 50 hour per week schedule, Plaintiff Mastranzo performed 30 hours of tipped delivery work, and 20 hours of non-tipped work per week.  Thus, on a weekly basis, Plaintiff Mastranzo was a service employee.

203.    Based on his typical 50 hour per week schedule, from Monday through Friday, Plaintiff Mastranzo worked as a dishwasher (a non-tipped occupation) from 11:00 a.m. to 3:00 p.m.  Thus, on those days, Plaintiff Mastranzo was a non-service employee, and Defendants were not entitled to deduct a tip credit from his wages.

204.    Based on his typical 50 hour per week schedule, when Plaintiff Mastranzo worked on Saturday or Sunday, he worked only as a delivery person.  Thus, on those days, Plaintiff Mastranzo was a service employee, and Defendants were entitled to deduct a tip credit from his wages.

205.    During the first month of his employment at Koodo Sushi, based on his typical 50 hour per week schedule, Plaintiff Sanchez performed 30 hours of tipped delivery work, and 20 hours of non-tipped work per week.  Thus, on a weekly basis, Plaintiff Sanchez was a service employee.

206.    During the first month of his employment at Koodo Sushi, based on his typical 50

50

hour per week schedule, from Monday through Friday, Plaintiff Sanchez worked as a dishwasher (a non-tipped occupation) from 11:00 a.m. to 3:00 p.m.  Thus, on those days, Plaintiff Sanchez was a non-service employee, and Defendants were not entitled to deduct a tip credit from his wages.

207.    During the first month of his employment at Koodo Sushi, based on his typical 50 hour per week schedule, when Plaintiff Sanchez worked on Saturday or Sunday, he worked only as a delivery person.  Thus, on those days, Plaintiff Sanchez was a service employee, and Defendants were entitled to deduct a tip credit from his wages.

208.    After the first of his month employment at Koodo Sushi, when Plaintiff Sanchez worked at the sushi bar, he was a non-service employee.

209.    Defendant Koo explained to Plaintiff Gamero, Plaintiff Mastranzo, and Plaintiff Sanchez how their wages were calculated, including that a tip credit would be applied.

210.    When Plaintiff Gamero, Plaintiff Mastranzo, and Plaintiff Sanchez worked as delivery workers, the total of tips received plus wages equaled or exceeded the minimum wage.

211.    Defendants were permitted to apply a tip credit against Plaintiff Gamero's hourly wages.

212.    Defendants were permitted to apply a tip credit against Plaintiff Mastranzo's hourly wages on days when he performed delivery work, but not dishwashing work.

213.    Defendants were permitted to apply a tip credit against Plaintiff Sanchez's hourly wages on days when he performed delivery work, but not dishwashing or sushi preparation work.

<u>Tips</u>

214.    Under the FLSA an employee is entitled to all tips the employee receives.  *See* 29 U.S.C. § 203(m).

215.    Under the NYLL, an employer may not demand, accept, or retain, directly or indirectly, any part of an employee's gratuities or any charge purported to be a gratuity.  N.Y. Lab. Law § 196–d; 12 NYCRR § 146-2.18.

216.    The purpose of the FLSA and NYLL's tip withholding provisions is to prohibit an employer from enriching itself with an employee's tips.  *See Winans v. Starbucks Corp.*, 796 F. Supp. 2d 515, 518 (S.D.N.Y. 2011); *see also Myers v. Copper Cellar Corp.*, 192 F.3d 546, 555 (6th Cir. 1999).

217.    Employers are not required to reimburse an employee for amounts that a third party deducts from the employee's tips.  *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 553-54 (6th Cir. 1999).

218.    Defendants did not demand, accept, or retain, directly or indirectly, any part of Plaintiff Gamero's, Plaintiff Mastranzo's or Plaintiff Sanchez's tips, and were not required to reimburse Plaintiff Gamero, Mastranzo, or Sanchez for any amounts deducted from their tips by third party Internet food delivery service sites like Seamless.

219.    Plaintiffs are not entitled to relief under the Ninth Cause of Action in their Complaint.

<u>Meal Credit</u>

220.    Under the FLSA and NYLL, meals provided by an employer to an employee may be considered part of wages paid to the employee.  29 U.S.C. § 203(m); 12 NYCRR § 146-1.9 (2015).

221.    Under the FLSA, the reasonable cost of a meal may be applied against an employee's wages.  29 U.S.C. § 203(m); 29 C.F.R. § 531.3(a).

222.    Under the NYLL, meals furnished by an employer to an employee may be

52

deducted from an eligible employee's wages at a value of up to $2.10 per meal on and after July 24, 2009, for food service workers receiving a cash wage of at least $4.65 per hour, and $2.50 per meal on and after July 24, 2009, for all other workers; $2.50 per meal for all workers, on and after January 1, 2011; $2.75 per meal for non-service employees, on and after December 31, 2013; and $3.10 per meal for non-service employees, on and after December 31, 2014.   12 NYCRR § 146-1.9 (2015); 12 NYCRR § 137-1.9 (2009).

223.    Plaintiff Gamero was a service employee.  Therefore, Defendants were permitted to apply a $2.50 meal credit against Plaintiff Gamero's wages.

224.    Based on his typical 50 hour per week schedule, Plaintiff Mastranzo was a non-service employee on Monday through Friday (when he worked as both a dishwasher and delivery person), and a service employee on Saturday and Sunday (when he worked as only a delivery person).  Thus:

   a.   From the beginning of his employment until December 31, 2013, Defendants were permitted to apply a $2.50 meal credit against Plaintiff Mastranzo's wages.

   b.   From January 1, 2014 to December 1, 2014, Defendants were permitted to apply a $2.75 meal credit against Plaintiff Mastranzo's wages on Monday through Friday (when he performed dishwashing and delivery work); and a $2.50 meal credit against Plaintiff Mastranzo's wages on Saturday and Sunday (when he performed only delivery work).

   c.   From January 1, 2015 to end of his employment, Defendants were permitted to apply a $3.10 meal credit against Plaintiff Mastranzo's wages on Monday through Friday (when he performed dishwashing and delivery work); and a $2.50 meal credit against Plaintiff Mastranzo's wages on Saturday and Sunday (when he

53

performed only delivery work).

225.    During the first month of his employment at Koodo Sushi, Plaintiff Sanchez was a non-service employee on Monday through Friday (when he worked as both a dishwasher and delivery person), and a service employee on Saturday and Sunday (when he worked as only a delivery person).  Thus, Defendants were permitted to apply a $2.50 meal credit against Plaintiff Sanchez's wages during that month.

226.    After the first month of his employment at Koodo Sushi, when Plaintiff Sanchez worked at the sushi bar, he was a non-service employee.  Thus:

      a.    Until December 31, 2013, Defendants were permitted to apply a $2.50 meal credit against Plaintiff Sanchez's wages.

      b.    From January 1, 2014 to December 1, 2014, Defendants were permitted to apply a $2.75 meal credit against Plaintiff Sanchez's wages.

      c.    From January 1, 2015 to end of his employment, Defendants were permitted to apply a $3.10 meal credit against Plaintiff Sanchez's wages.

<u>Meal Break</u>

227.    Under the FLSA and NYLL, bona fide employee meal breaks are not compensable working time.  29 C.F.R. § 785.19(a); *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 63 (2d Cir. 1997); NYDOL Re: NYLL § 162 (April 19, 2007) *available at* https://labor.ny.gov/legal/counsel/pdf/Meal%20Periods%20(Sec.%20162)/RO-07-0034%20Meal%20Periods.pdf.

228.    Plaintiff Gamero, Plaintiff Mastranzo, and Plaintiff Sanchez took bona fide half-hour meal breaks each shift they worked.

229.    Defendants were not required to compensate Plaintiff Gamero, Plaintiff

Mastranzo, or Plaintiff Sanchez for their half-hour meal breaks.

<u>Spread of Hours</u>

230.    Under the NYLL, on each day on which an employee's "spread of hours" exceeds 10, the employee is entitled to receive one additional hour of pay at the basic minimum hourly rate.  12 NYCRR § 146-1.6(a) (2015); 12 NYCRR § 137-1.7 (2009).

231.    The "spread of hours" is the length of the interval between the beginning and end of an employee's workday.  12 NYCRR § 146-1.6 (2015); 12 NYCRR § 137-3.11 (2009).

232.    For any day on which the length of the interval between the beginning and end of Plaintiff Mastranzo's or Plaintiff Sanchez's workday exceeded 10 hours, Defendants paid them for an additional hour of pay of at least the minimum hourly wage.

233.    Plaintiff Gamero was not entitled to a payment for the "spread of hours" because the length of the interval between the beginning and end of his workday never exceeded 10 hours.

234.    Plaintiffs are not entitled to relief under the Fifth Cause of Action in their Complaint.

<u>Overtime</u>

235.    The FLSA and NYLL require that non-exempt workers be paid at a rate of at least one and one-half their regular rate of pay for each hour worked in excess of 40 hours in a given workweek.  29 U.S.C. § 207(a)(1); 12 NYCRR § 146-1.4.

236.    Overtime pay under the FLSA is calculated by applying a multiplier of one and one-half to an employee's "regular rate" of pay.  29 C.F.R. § 778.107; 29 U.S.C. § 207(a)(1).

237.    "Regular rate" means the hourly rate actually paid for normal, non-overtime work.  *Scott v. City of New York*, 592 F. Supp. 2d 475, 482 (S.D.N.Y. 2008).

238.     Under the NYLL, where an employer takes a tip credit toward an employee's basic minimum hourly rate, the overtime rate shall be the employee's regular rate of pay before subtracting any tip credit, multiplied by one and one-half, minus the tip credit.  12 NYCRR 146-1.4.

239.     The rebuttable presumption that a weekly salary covers 40 hours does not apply because Defendants paid Plaintiffs hourly wages.  *See Moon v. Kwon*, 248 F. Supp. 2d 201, 207-08 (S.D.N.Y. 2002).

240.     Plaintiff Gamero did not work any hours for which he was entitled to be paid at one and one-half times his regular hourly rate because he never worked in excess of 40 hours in a workweek.  Therefore, Plaintiff Gamero was never entitled to receive overtime pay.

241.     Plaintiff Gamero is not entitled to relief under the Second and Fourth Causes of Action in Plaintiffs' Complaint.

242.     For each hour Plaintiff Sanchez worked in excess of 40 hours in a workweek after his first month of employment, Defendants paid him at a rate of one and one-half times his regular hourly rate.

243.     Plaintiff Sanchez received the full overtime pay to which he was entitled after the first month of his employment, and is not entitled to relief under the Second and Fourth Causes of Action in Plaintiffs' Complaint.

244.     For each hour Plaintiff Mastranzo worked in excess of 40 hours in a workweek, and for each hour that Plaintiff Sanchez worked in excess of 40 hours per workweek during the first month of his employment, Plaintiff Mastranzo and Plaintiff Sanchez were paid one and one-half times the rate they were paid in their role as delivery workers.

245.     Plaintiffs Mastranzo and Plaintiffs Sanchez are not entitled to relief under the

Second and Fourth Causes of Action in their Complaint because they were compensated in excess of what was required by law, as demonstrated below.

Lowest Permissible Wages

246.    Even were the Court to find that Defendants' records do not demonstrate with certainty that Defendants calculated Plaintiffs' wages in the exact formulaic manner prescribed by statute, the evidence demonstrates that Defendants paid each of their employees minimum wage and availed themselves of the applicable credits.

247.    Based on that evidence and the evidence from the Aldelo system and Defendants' calendar demonstrating the amount that Plaintiffs were paid each week, Plaintiffs were paid in excess of the amount that was required by law, as set forth below.

A.    Plaintiff Gamero

248.    When Plaintiff Gamero performed two hours of delivery work in a day at Koodo Sushi, accounting for a meal credit and tip credit, he was due a minimum of $4.40 per hour as shown using the following formula:

(Hours)*(Min. Wage – Tip Credit) – (Meal Credit)*(# of Meals)     /     2 Hours
****
Start of Employment to December 31, 2013
(2 Hours)*($7.25 – $1.60) – ($2.50) * (1)     /     2 Hours     = $4.40
****
January 31, 2014 to December 31, 2014
(2 Hours)*($8.00 – $2.35) – ($2.50) * (1)     /     2 Hours     = $4.40
****
January 1, 2015 to End of Employment
(2 Hours)*($8.75 – $3.10) – ($2.50) * (1)     /     2 Hours     = $4.40

249.    When Plaintiff Gamero performed three hours of delivery work in day at Koodo Sushi, accounting for a half-hour meal break, meal credit, and tip credit, he was due a minimum of $4.65 per hour as shown using the following formula:

| (Hours)*(Min. Wage − Tip Credit) − (Meal Credit)*(# of Meals) | / | 2.5 Hours | |
|---|---|---|---|
| **** | | | |
| Start of Employment to December 31, 2013 | | | |
| (2.5 Hours)*($7.25 − $1.60) − ($2.50) * (1) | / | 2.5 Hours | = $4.65 |
| **** | | | |
| January 31, 2014 to December 31, 2014 | | | |
| (2.5 Hours)*($8.00 − $2.35) − ($2.50) * (1) | / | 2.5 Hours | = $4.65 |
| **** | | | |
| January 1, 2015 to End of Employment | | | |
| (2.5 Hours)*($8.75 − $3.10) − ($2.50) * (1) | / | 2.5 Hours | = $4.65 |

250. When Plaintiff Gamero performed four hours of delivery work in day at Koodo Sushi, accounting for a half-hour meal break, meal credit, and tip credit, he was due a minimum of $4.94 per hour as shown using the following formula:

| (Hours)*(Min. Wage − Tip Credit) − (Meal Credit)*(# of Meals) | / | 3.5 Hours | |
|---|---|---|---|
| **** | | | |
| Start of Employment to December 31, 2013 | | | |
| (3.5 Hours)*($7.25 − $1.60) − ($2.50) * (1) | / | 3.5 Hours | = $4.94 |
| **** | | | |
| January 31, 2014 to December 31, 2014 | | | |
| (3.5 Hours)*($8.00 − $2.35) − ($2.50) * (1) | / | 3.5 Hours | = $4.94 |
| **** | | | |
| January 1, 2015 to End of Employment | | | |
| (3.5 Hours)*($8.75 − $3.10) − ($2.50) * (1) | / | 3.5 Hours | = $4.94 |

251. At all times during his employment by Koodo Sushi, applying applicable credits to his wage rate, Plaintiff Gamero was paid $5.00 per hour, which was more than the legally required rate.

B.   Plaintiff Mastranzo

252. From the beginning of his employment until December 31, 2013, based on his general 50 hour weekly work schedule, accounting for the minimum wage, overtime pay, spread of hours pay, meal credits, 11 half-hour meal breaks totaling five and one-half hours, and applying a tip credit for the weekend day he performed only delivery work, Plaintiff Mastranzo

was due a minimum of $340.49 per week as shown using the following formula:

| | |
|---|---|
| (Regular Hours)*(Min. Wage) | + |
| (Delivery Only Day Hours)*(Min. Wage – Tip Credit) | + |
| (Overtime Hours)*(Min. Wage*1.5) | + |
| (Days Spread of Hours Greater than 10)*(Min. Wage) | – |
| (Meal Credit)*(# of Meals) | |
| Total Minimum Pay For Week | |
| **** | |
| (35.5 Hours)*($7.25) | + |
| (4.5 Hours)*( $7.25 – $1.60) | + |
| (4.5 Hours)*($7.25*1.5) | + |
| (5 Days)*($7.25) | – |
| ($2.50)*(11) | |
| $340.49 | |

253.    From the beginning of his employment until December 31, 2013, Defendants paid Plaintiff Mastranzo an average of $400.56 per week.  *See supra* ¶ 122.  Plaintiff Mastranzo's compensation exceeded what he was legally due for that time period.

254.    For certain weeks from the beginning of Plaintiff Mastranzo's employment until December 31, 2013, records exist that are sufficient to demonstrate Plaintiff Mastranzo's schedule, total hours worked, and wages paid.  Based on those records, and applying the formula above in paragraph 252, the minimum Plaintiff Mastranzo was owed for those weeks, and the amount he was paid, are as follows:

a.    On August 16, 2010, when Defendants paid Plaintiff Mastranzo $450.00 for 50 hours of cleaning work the prior week, Plaintiff Mastranzo was due a minimum of $347.69.

b.    On August 23, 2010, when Defendants paid Plaintiff Mastranzo $450.00 for 50 hours of cleaning work the prior week, Plaintiff Mastranzo was due a minimum of $347.69.

c.  On November 1, 2010, when Defendants paid Plaintiff Mastranzo $450.00 for working 50 hours the prior week, Plaintiff Mastranzo was due a minimum of $340.49.

255.   From January 1, 2014 to December 31, 2014, based on his general 50 hour weekly work schedule, accounting for the minimum wage, overtime pay, spread of hours pay, meal credits, 11 half-hour meal breaks totaling five and one-half hours, and applying a tip credit for days on which he performed only delivery work, Plaintiff Mastranzo was due a minimum of $373.43 per week as shown using the following formula:

(Regular Hours)*(Min. Wage)                                          +
(Delivery Only Day Hours)*(Min. Wage – Tip Credit)                   +
(Overtime Hours)*(Min. Wage*1.5)                                     +
(Days Spread of Hours Greater than 10)*(Min. Wage)                   –
(Non-Service Worker Meal Credit)*(Non-Service Worker # of Meals)     –
(Service Worker Meal Credit)*(Service Worker # of Meals)          _____
Total Minimum Pay For Week
***
(35.5 Hours)*($8.00)                                                 +
(4.5 Hours)*($8.00 – $2.35)                                          +
(4.5 Hours)*($8.00*1.5)                                              +
(5 Days)*($8.00)                                                     –
($2.75)*(10)                                                         –
($2.50)*(1)                                                       _____
$373.43

256.   From January 1, 2014 to December 31, 2014, Defendants paid Plaintiff Mastranzo an average of $413.69 per week.  *See supra* ¶ 125.  Plaintiff Mastranzo's compensation exceeded what he was legally due for that time period.

257.   For certain weeks from January 1, 2014 to December 31, 2014, records exist that are sufficient to demonstrate Plaintiff Mastranzo's schedule, total hours worked, and wages paid. Based on those records, and applying the formula above in paragraph 255, the minimum Plaintiff

Mastranzo was owed for those weeks, and the amount he was paid, are as follows:

a.  On January 5, 2014, when Defendants paid Plaintiff Mastranzo $300.00 for working 25 hours the prior week, Plaintiff Mastranzo was due a minimum of $179.50.

b.  On January 13, 2014, when Defendants paid Plaintiff Mastranzo $400.00 for working 44 hours the prior week, Plaintiff Mastranzo was due a minimum of $316.50.

c.  On February 2, 2014, when Defendants paid Plaintiff Mastranzo $400.00 for working 44 hours the prior week, Plaintiff Mastranzo was due a minimum of $316.50.

d.  On February 23, 2014 when Defendants paid Plaintiff Mastranzo $364.00 for working 45 hours the prior week, Plaintiff Mastranzo was due a minimum of $313.00.

e.  On July 3, 2014, when Defendants paid Plaintiff Mastranzo $327.00 for working 36 hours the prior week, Plaintiff Mastranzo was due a minimum of $259.25.

f.  On November 16, 2014, when Defendants paid Plaintiff Mastranzo $475.00 for working 48.5 hours the prior week, Plaintiff Mastranzo was due a minimum of $347.43.

g.  On November 23, 2014, when Defendants paid Plaintiff Mastranzo $450.00 for working 41 hours the prior week, Plaintiff Mastranzo was due a minimum of $288.93.

h.  On December 7, 2014, when Defendants paid Plaintiff Mastranzo $450.00 for working 50 hours the prior week, Plaintiff Mastranzo was due a minimum of

$373.43.

      i.    On December 14, 2014, when Defendants paid Plaintiff Mastranzo $450.00 for working 50 hours the prior week, Plaintiff Mastranzo was due a minimum of $373.43.

      j.    On December 21, 2014, when Defendants paid Plaintiff Mastranzo $450.00 for working 40 hours the prior week, Plaintiff Mastranzo was due a minimum of $280.93.

      k.    On December 29, 2014, when Defendants paid Plaintiff Mastranzo $220.00 for working 27 hours the prior week, Plaintiff Mastranzo was due a minimum of $205.18.

258.    From the beginning of his employment until the end of 2014, excluding weeks when Plaintiff Mastranzo is known to have worked fewer than or greater than 50 hours, Plaintiff Mastranzo was paid an average of $402.99 per week.  *See supra* ¶ 127.  For the same weeks, Plaintiff Mastranzo was owed an average of at least $346.58 per week.  Thus, Defendants paid Plaintiff Mastranzo an average of $56.41 more per week than he was owed.

259.    At all other times during his employment, Defendants calculated Plaintiff Mastranzo's hourly wages such that he was paid at least as much as was legally required.

      C.    <u>Plaintiff Sanchez</u>

260.    For the first month of his employment at Koodo Sushi, based on his general 50 hour weekly work schedule, accounting for the minimum wage, overtime pay, spread of hours pay, meal credits, 11 half-hour meal breaks totaling five and one-half hours, and applying a tip credit for days on which he performed only delivery work, Plaintiff Sanchez was due a minimum of $340.49 per week as shown using the following formula:

      (Regular Hours)*(Min. Wage)                        +

| | |
|---|---|
| (Delivery Only Day Hours)*(Min. Wage – Tip Credit) | + |
| (Overtime Hours)*(Min. Wage*1.5) | + |
| (Days Spread of Hours Greater than 10)*(Min. Wage) | – |
| (Meal Credit)*(# of Meals) | |
| Total Minimum Pay For Week | |
| **** | |
| (35.5 Hours)*($7.25) | + |
| (4.5 Hours)*( $7.25 – $1.60) | + |
| (4.5 Hours)*($7.25*1.5) | + |
| (5 Days)*($7.25) | – |
| ($2.50)*(11) | |
| $340.49 | |

261.   For the first month of his employment Defendants paid Plaintiff Sanchez an average of $342.00.  *See supra* ¶ 167.  Plaintiff Sanchez's compensation exceeded what he was legally due for that time period.

262.   For certain weeks during Plaintiff Sanchez's first month of employment, records exist that are sufficient to demonstrate Plaintiff Sanchez's schedule, total hours worked, and wages paid.  Based on those records, and applying the formula above in paragraph 260, the minimum Plaintiff Sanchez was owed for those weeks, and the amount he was paid, are as follows:

    a.   On August 24, 2009, when Defendants paid Plaintiff Sanchez $255.00 for working 37 hours the prior week, Plaintiff Sanchez was due a minimum of $225.00.

    b.   On August 31, 2009, when Defendants paid Plaintiff Sanchez $350.00 for working 50 hours the prior week, Plaintiff Sanchez was due a minimum of $340.49.

263.   From one month after the beginning of his employment until December 31, 2013, in weeks for which he worked a 50 hour weekly work schedule, accounting for the minimum

wage, overtime pay, spread of hours pay, meal credits, and 11 half-hour meal breaks totaling five and one-half hours, Plaintiff Sanchez was due a minimum of $347.69 per week as shown using the following formula:

| | |
|---|---|
| (Regular Hours)*(Min. Wage) | + |
| (Overtime Hours)*(Min. Wage*1.5) | + |
| (Days Spread of Hours Greater than 10)*(Min. Wage) | – |
| (Meal Credit)*(# of Meals) | |

Total Minimum Pay For Week
****

| | |
|---|---|
| (40 Hours)*($7.25) | + |
| (4.5 Hours)*($7.25*1.5) | + |
| (5 Days)*($7.25) | – |
| ($2.50)*(11) | |

$347.69

264.   From one month after the beginning of his employment until December 31, 2013, Defendants paid Plaintiff Sanchez an average of $454.03.  *See supra* ¶ 170.  Plaintiff Sanchez's compensation exceeded what he was legally due for that time period.

265.   From January 1, 2014 to December 31, 2014, assuming a 50 hour weekly work schedule, accounting for the minimum wage, overtime pay, spread of hours pay, meal credits, and 11 half-hour meal breaks totaling five and one-half hours, Plaintiff Sanchez was due a minimum of $385.75 per week as shown using the following formula:

| | |
|---|---|
| (Regular Hours)*(Min. Wage) | + |
| (Overtime Hours)*(Min. Wage*1.5) | + |
| (Days Spread of Hours Greater than 10)*(Min. Wage) | – |
| (Non-Service Employee Meal Credit)*(# of Meals) | |

Total Minimum Pay For Week
****

| | |
|---|---|
| (40 Hours)*($8.00) | + |
| (4.5 Hours)*($8.00*1.5) | + |
| (5 Days)*($8.00) | – |
| ($2.75)*(11) | |

$383.75

266.     From January 1, 2014 to December 31, 2014, Defendants paid Plaintiff Sanchez an average of $539.81.  *See supra* ¶ 171.  Plaintiff Sanchez's compensation exceeded what he was legally due for that time period.

267.     For certain weeks from January 1, 2014 to December 31, 2014, records exist that are sufficient to demonstrate Plaintiff Sanchez's schedule, total hours worked, and wages paid. Based on those records, and applying the formula above in paragraph 265, the minimum Plaintiff Sanchez was owed for those weeks, and the amount he was paid, are as follows:

     a.  On January 5, 2014, when Defendants paid Plaintiff Sanchez $400.00 for working 31 hours the prior week, Plaintiff Sanchez was due a minimum of $215.50.

     b.  On January 10, 2014, when Defendants paid Plaintiff Sanchez $556.65 for working 50 hours the prior week, Plaintiff Sanchez was due a minimum of $383.75.

     c.  On January 19, 2014, when Defendants paid Plaintiff Sanchez $400.00 for working 39 hours the prior week, Plaintiff Sanchez was due a minimum of $283.25.

     d.  On January 26, 2014, when Defendants paid Plaintiff Sanchez $415.00 for working 41 hours the prior week, Plaintiff Sanchez was due a minimum of $299.25.

     e.  On February 2, 2014, when Defendants paid Plaintiff Sanchez $550.00 for working 38 hours the prior week, Plaintiff Sanchez was due a minimum of $275.25.

     f.  On November 9, 2014, when Defendants paid Plaintiff Sanchez $550.00 for working 41 hours the prior week, Plaintiff Sanchez was due a minimum of

$268.50.

g.  On November 16, 2014, when Defendants paid Plaintiff Sanchez $550.00 for working 36 hours the prior week, Plaintiff Sanchez was due a minimum of $232.25.

h.  On November 23, 2014, when Defendants paid Plaintiff Sanchez $550.00 for working 40 hours the prior week, Plaintiff Sanchez was due a minimum of $260.50.

i.  On December 7, 2014, when Defendants paid Plaintiff Sanchez $550.00 for working 40 hours the prior week, Plaintiff Sanchez was due a minimum of $252.50.

j.  On December 14, 2014, when Defendants paid Plaintiff Sanchez $350.00 for working 25 hours the prior week, Plaintiff Sanchez was due a minimum of $152.75.

k.  On December 21, 2014, when Defendants paid Plaintiff Sanchez $350.00 for working 25 hours the prior week, Plaintiff Sanchez was due a minimum of $152.75.

l.  On December 28, 2014, when Defendants paid Plaintiff Sanchez $150.00 for working 12 hours the prior week, Plaintiff Sanchez was due a minimum of $69.00.

268.  From the beginning of his employment until the end of 2014, excluding weeks when Plaintiff Sanchez is known to have worked fewer than or greater than 50 hours, Plaintiff Sanchez was paid an average of $465.46 per week.  *See supra* ¶ 173.  For the same weeks, Plaintiff Sanchez was owed an average of at least $353.42 per week.  Thus, Defendants paid Plaintiff Sanchez an average of $112.04 more per week than he was owed.

269.   Plaintiff Sanchez was paid a greater amount each week than was legally required.

Statute of Limitations

270.   The statute of limitations under the FLSA is two years, or three in the case of a willful violation.  29 U.S.C. § 255.

271.   For an FLSA violation to be willful, an employer must know or show reckless disregard for the fact that its conduct violates the FLSA.  *Edwards v. City of New York*, No. 08-cv-3134 (DLC), 2011 WL 3837130, at *5 (S.D.N.Y. Aug. 29, 2011) (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009).  Reckless disregard requires the employer's "actual knowledge of a legal requirement, and a deliberate disregard of the risk that one is in violation."  *Damassia v. Duane Reade, Inc.*, No. 04-cv-8819 (GEL), 2005 WL 1214337, at *7 n.2 (S.D.N.Y. May 20, 2005).   It is insufficient that the employer should have known its conduct violated the FLSA, *id.*, and even if an employer acts unreasonably, the conduct can be willful only if it was also reckless.  *Porter v. N.Y. Univ. School of Law.*, 392 F.3d 530, 531 (2d Cir. 2004).

272.   Defendants did not commit willful violations of the FLSA.

273.   Plaintiffs' FLSA claims based on conduct before April 7, 2013 are barred by the statute of limitations.

274.   The statute of limitations under the NYLL is six years.  N.Y. Lab. Law § 198(3).

Liquidated Damages

275.   Under the FLSA, an employer is not liable for liquidated damages where it acted in good faith and had reasonable grounds for believing its acts or omissions did not violate the FLSA.  29 U.S.C. § 260.

276.   Under the NYLL, before November 24, 2009, an employer was not liable for

liquidated damages unless an employee demonstrated that the employer's violation of the NYLL was willful.  After November 24, 2009, an employer is not liable for liquidated damages where it has a good faith basis for believing that it acted in compliance with the law when it paid its employees.  NYLL § 198(1-a); *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317-18 (S.D.N.Y. 2014).

277.   Defendants compensated Plaintiff Gamero, Plaintiff Mastranzo and Plaintiff Sanchez in good faith and with reasonable grounds for believing their acts or omissions did not violate the FLSA.

278.   Plaintiff Gamero, Plaintiff Mastranzo and Plaintiff Sanchez are not entitled to liquidated damages under the FLSA.

279.   Defendants did not commit any willful violations of the NYLL, and compensated Plaintiff Gamero, Plaintiff Mastranzo and Plaintiff Sanchez and had a good faith basis to believe that that they were in compliance with the law.

280.   Plaintiff Gamero, Plaintiff Mastranzo and Plaintiff Sanchez are not entitled to liquidated damages under the NYLL.

281.   An employee may not recover cumulative liquidated damages under both the FLSA and the NYLL for violations during the same time period because each statute serves the same purpose and has the same practical effect.  *Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135 (RJS), 2016 WL 1587242, at *3-4 (S.D.N.Y. Apr. 19, 2016).

282.   Even if Plaintiff Gamero, Plaintiff Mastranzo or Plaintiff Sanchez may recover liquidated damages under the FLSA or NYLL, they may not recover liquidated damages under both the FLSA and NYLL for conduct during the same time period..

<u>Tools of the Trade</u>

283.     Under the FLSA, an employer is not liable for the costs of tools of the trade used by an employee unless the employee was required to purchase tools of the trade that were to be used in or were specifically required for the performance of the employer's particular work, and the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid to the employee.  29 C.F.R. § 531.35.

284.     Under the NYLL, an employer is not liable for expenses of an employee, including expenses relating to tools of the trade, unless the employee incurs the expenses to carry out duties assigned by the employer and those expenses bring the employee's wage below the required minimum wage.  NYLL § 193; 12 NYCRR § 146-2.18 (2015); 12 NYCRR § 137-2.5(b) (2009); *see also Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511-12 (S.D.N.Y. 2010).

285.     To determine whether the required purchase impermissibly reduced the employee's wage, the cost of the tool is amortized over the course of the employee's employment.  *See Chen v. New Fresco Tortilla Taco LLC*, No. 15-cv-2158 (RA) (AJP), 2015 WL 5710320, at *5 (S.D.N.Y. Sept. 25, 2015).

286.     Defendants are not liable for the cost of Plaintiff Gamero's bicycles, at least one of which he owned before starting to work at Koodo Sushi, because he was not required to purchase them to perform his work duties at Koodo Sushi.

287.     Defendants are not liable to Plaintiff Gamero for the cost of a bicycle helmet or bicycle lights because Defendants provided Plaintiff Gamero with a bicycle helmet and bicycle lights at Defendants' expense.

288.     Defendants are not liable to Plaintiff Mastranzo for the cost of a bicycle helmet or bicycle lights because Defendants provided Plaintiff Mastranzo with a bicycle helmet and bicycle lights at Defendants' expense.

69

289.    Amortized over the course of Plaintiff Mastranzo's 261 weeks of employment at Koodo Sushi, the alleged $25 bicycle helmet and two $10 bicycle lights would have reduced his wages by an average of $0.17 per week.    These purported purchases would not have impermissibly reduced Plaintiff Mastranzo's wages.   Defendants paid Plaintiff Mastranzo an average of $56.41 more than the minimum he was owed per week.  *See supra* ¶ 258.   Thus, Defendants are not liable to him for the cost of those tools of the trade.

290.    Defendants are not liable to Plaintiff Sanchez for the cost of a chef's hat because Defendants provided chef's hats to employees and Plaintiff Sanchez was not required to purchase a chef's hat to perform his work duties at Koodo Sushi.

291.    Defendants are not liable to Plaintiff Sanchez for the cost of a robe because Plaintiff Sanchez was not required to purchase a robe to perform his work duties at Koodo Sushi.

292.    Defendants are not liable to Plaintiff Sanchez for the cost of an apron because Plaintiff Sanchez was not required to purchase an apron to perform his work duties at Koodo Sushi.

293.    Defendants are not liable to Plaintiff Sanchez for the cost of knives because Defendants provided knives to employees whose job duties required knives and Plaintiff Sanchez was thus not required to purchase a knife to perform his work duties at Koodo Sushi.

294.    Amortized over the course of Plaintiff Sanchez's 284 weeks of employment at Koodo Sushi, the alleged cost of between $435 and $440 for his tools of the trade, *see* Trial Tr. 32:18-35:16 (Sanchez Direct), would have reduced his weekly wages by an average of between $1.53 and $1.55.   These purported purchases would not have impermissibly reduced Plaintiff Sanchez's wages.   Defendants paid Plaintiff Sanchez an average of $112.04 more than the minimum he was owed per week.  *See supra* ¶ 268.   Thus, Defendants are not liable to him for

the cost of those tools of the trade.

295.    Plaintiffs are not entitled to relief under the Eighth Cause of Action in their Complaint.

Wage Notices

296.    From April 9, 2011 until February 27, 2015, the NYLL required employers to furnish a "wage notice" containing various information, including regarding wages and work hours, to each employee "at the time of hiring" and "on or before February first of each subsequent year of the employee's employment." [6]  NYLL § 195(1)(a) (2013); *see also Severino v. 436 W. L.L.C.*, No. 13-CV-3096 (VSB), 2015 WL 12559893, at *8 (S.D.N.Y. Mar. 19, 2015).

297.    The private right of action afforded to employees who do not receive a wage notice at the time of hiring does not extend to employees who were hired before April 9, 2011. *See Yuquilema v. Manhattan's Hero Corp.*, No. 13-cv-461 (WHP) (JLC), 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 26, 2014) (citing *Guan Ming Lin v. Benihana New York Corp.*, No. 10-cv-1335 (RA) (JCF), 2012 WL 7620734, at *2 (S.D.N.Y. Oct. 23, 2012)).

298.    There is no private right of action for failures to furnish the annual wage notice on or before February first of each subsequent year of the employee's employment.  *See* NYLL § 198(1-b); *see also Kone v. Joy Const. Corp.*, No. 15-cv-1328 (LTS), 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016); *Yuquilema v. Manhattan's Hero Corp.*, No. 13-cv-461 (WHP) (JLC), 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 26, 2014).

299.    Plaintiff Mastranzo and Plaintiff Sanchez are not entitled to recover for the failure to provide them with wage notices because their employment by Koodo Sushi commenced

---

[6]    Effective February 27, 2015, the NYLL was amended to eliminate the annual wage notice requirement.  *See* 2010 N.Y. Sess. Laws ch. 564, § 3 (McKinney); *see also Severino v. 436 W. L.L.C.*, No. 13-CV-3096 (VSB), 2015 WL 12559893, at *8 (S.D.N.Y. Mar. 19, 2015).

before April 9, 2011, and they have no private right of action for the failure to provide them with

wage notices in subsequent years.

300.    Plaintiff Mastranzo and Plaintiff Sanchez are not entitled to relief under the Sixth

Cause of Action in their Complaint.

Dated: January 13, 2017
New York, New York

LATHAM & WATKINS LLP


By /s/ Thomas J. Giblin
    Richard D. Owens
    Serrin A. Turner
    Thomas J. Giblin
    Eric L. Taffet
    M. Theodore Takougang (*pro hac vice*)
    885 Third Avenue
    New York, New York 10022-4834
    Telephone: (212) 906-1200
    Facsimile: (212) 751-4864
    Email: richard.owens@lw.com
    serrin.turner@lw.com
    thomas.giblin@lw.com
    eric.taffet@lw.com
    theodore.takougang@lw.com

    *Attorneys for Defendants Koodo Sushi*
    *Corp. and Michelle Koo*