**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| ISRAEL GAMERO, NORBERTO MASTRANZO AND OSCAR SANCHEZ, individually and on behalf of others similarly situated, |
|                 Plaintiffs, |
|      -against- |
| KOODO SUSHI CORP. (d/b/a KOODO SUSHI), RAYMOND KOO and MICHELLE KOO, |
|                 Defendants. |

15 Civ. 2697 (KPF) (SN)

**DEFENDANT MICHELLE KOO AND KOODO SUSHI CORP.'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................3

    I.     MS. KOO'S OPERATION OF KOODO SUSHI AND EMPLOYMENT
        OF PLAINTIFFS ........................................................................................4
        A.    Koodo Sushi's Operations ..............................................................4
        B.    Ms. Koo's Compensation of Employees ........................................5
              1.    FLSA and NYLL Requirements ........................................5
              2.    Ms. Koo's Wage Calculations ..........................................7
        C.    Ms. Koo's Hours and Wages Records .............................................7
        D.    Plaintiffs' Employment at Koodo Sushi ......................................10
              1.    Plaintiff Sanchez ..............................................................10
              2.    Plaintiff Mastranzo ..........................................................11
              3.    Plaintiff Gamero ...............................................................12
    II.    PLAINTIFFS' CASE IN CHIEF AND ITS SHORTCOMINGS..........................14
        A.    Plaintiff Sanchez ..........................................................................14
        B.    Plaintiff Mastranzo ......................................................................17
        C.    Plaintiff Gamero ..........................................................................20

ARGUMENT ..........................................................................................................22

    I.     PLAINTIFFS FAILED TO ESTABLISH THAT THEY WERE
        UNDERPAID ...........................................................................................22
        A.    Legal Standard .............................................................................22
        B.    Plaintiffs Were Not Credible and No Just and Reasonable
            Inferences Can Be Drawn from Their Testimony.....................................23
        C.    Defendants' Evidence Negated Any Just and Reasonable Inference
            That Can Be Drawn from Plaintiffs' Testimony And Demonstrated
            That Plaintiffs Were Paid More Than Was Legally Required.................26
              1.    Plaintiffs Worked Fewer Hours Than They Claimed ...................27
              2.    Plaintiffs Were Compensated More Than They Were Owed ........28
    II.    MS. KOO DID NOT WITHHOLD PLAINTIFFS' TIPS .....................................32
    III.   PLAINTIFFS WERE NOT REQUIRED TO PURCHASE TOOLS TO
        PERFORM THEIR JOB DUTIES................................................................35
    IV.   PLAINTIFFS MASTRANZO AND SANCHEZ DO NOT HAVE
        STANDING TO BRING A CLAIM PURSUANT TO NYLL § 195(1)..............38
    V.    PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES .............40
        A.    Ms. Koo Acted in Good Faith at All Times..............................................40
        B.    Double Liquidated Damages Are Not Available under the FLSA
            and NYLL ...................................................................................43

CONCLUSION.......................................................................................................45

# TABLE OF AUTHORITIES

Page

**CASES**

*Adami v. Cardo Windows, Inc.*,
No. 12-CV-2804, 2015 WL 1471844 (D.N.J. Mar. 31, 2015)................................24

*Allende v. PS Brother Gourmet, Inc.*,
No. 11 Civ. 5427, 2013 WL 11327098 (S.D.N.Y. Feb. 1, 2013) ....................35, 36

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946)..............................................................21, 22, 23

*Awan v. Durrani*,
No. 14-CV-4562, 2015 WL 4000139 (E.D.N.Y. July 1, 2015)......................21, 22

*Barfield v. N.Y. City Health & Hosps. Corp.*,
537 F.3d 132 (2d Cir. 2008)..................................................................42

*Berrios v. Nicholas Zito Racing Stable, Inc.*,
849 F. Supp. 2d 372 (E.D.N.Y. 2012) ............................................22, 26, 29

*Burns v. Blackhawk Mgmt. Corp.*,
494 F. Supp. 2d 427 (S.D. Miss. 2007)..................................................43

*Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*,
No. CIV-13-0971, 2015 WL 7873813 (D.N.M. Oct. 20, 2015) ....................23, 25

*Cabrera v. Dream Team Tavern. Corp.*,
No. 12-cv-6323, 2016 WL 6208245 (E.D.N.Y. Apr. 29, 2016)........................42

*Canelas v. A'Mangiare Inc.*,
No. 13 CV 3630, 2015 WL 2330476 (S.D.N.Y. May 14, 2015)........................41

*Chao v. Vidtape, Inc.*,
196 F. Supp. 2d 281 (E.D.N.Y. 2002) ..................................................43

*Coulibaly v. Millennium Super Car Wash, Inc.*,
No. 12-CV-04760, 2013 WL 6021668 (E.D.N.Y.Nov. 13, 2013)........................24

*Daniels v. 1710 Realty LLC*,
No. 10-CV-0022, 2011 WL 3648245 (E.D.N.Y. Aug. 17, 2011), *aff'd*, 497 F.
App'x 137 (2d Cir. 2012) ..................................................................23

*Edwards v. City of New York*,
No. 08 Civ. 3134, 2011 WL 3837130 (S.D.N.Y. Aug. 29, 2011) ........................42

*Eschmann v. White Plains Crane Service, Inc.*,
   No. 11–CV–5881, 2014 WL 1224247 (S.D.N.Y. Mar. 24, 2014)..........................................43

*Galeana v. Lemongrass on Broadway Corp.*,
   120 F. Supp. 3d 306 (S.D.N.Y. 2014)..............................................................................41, 42

*Gonsalez v. Marin*,
   No. 12 CV 1157, 2014 WL 2514704 (E.D.N.Y Apr. 25, 2014)........................................41

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2d Cir. 2003)..............................................................................................23

*Guan Ming Lin v. Benihana Nat'l Corp.*,
   755 F. Supp. 2d 504 (S.D.N.Y. 2010)............................................................................37

*Guan Ming Lin v. Benihana Nat'l Corp.*,
   No. 10 Civ. 1335, 2012 WL 7620734 (S.D.N.Y. Oct. 23, 2012) ..................................40, 41

*Hart v. RCI Hosp. Holdings, Inc.*,
   90 F. Supp. 3d 250  (S.D.N.Y. 2015)..............................................................................23

*Hengjin Sun v. China 1221, Inc.*,
   No. 12-cv-7135, 2016 WL 1587242 (S.D.N.Y. Apr. 19, 2016) ....................................45

*Herman v. Collis Foods, Inc.*,
   176 F.3d 912 (6th Cir. 1999) ..........................................................................................34

*Hernandez v. Jrpac Inc.*,
   No. 14-cv-4176, 2016 WL 3248493 (S.D.N.Y. June 9, 2016) ..................................37, 39, 45

*Hernandez v. NJK Contractors, Inc.*,
   No. 09-CV-4812, 2015 WL 1966355 (E.D.N.Y. May 1, 2015) ....................................26

*Hodgson v. A. W. Crossley, Inc.*,
   365 F. Supp. 1131 (S.D.N.Y. 1973)................................................................................26

*Holaway v. Stratasys, Inc.*,
   771 F.3d 1057 (8th Cir. 2014) ........................................................................................23

*Hosking v. New World Mortg., Inc.*,
   570 F. App'x 28 (2d Cir. 2014) ......................................................................................21

*Inclan v. N.Y. Hosp. Grp., Inc.*,
   95 F.Supp.3d 490 (S.D.N.Y. 2015)..............................................................................44, 45

*Jemine v. Dennis*,
   901 F. Supp. 2d 365 (E.D.N.Y. 2012) ............................................................................26

*Kernes v. Glob. Structures, LLC*,
  No. 15-cv-00659, 2016 WL 880199 (S.D.N.Y. Mar. 1, 2016)..............................45

*Kone v. Joy Constr. Corp.*,
  No. 15-CV-1328, 2016 WL 866349 (S.D.N.Y. Mar. 3, 2016)..........................40, 41

*Kuebel v. Black & Decker Inc.*,
  643 F.3d 352, 362-63 (2d Cir. 2011) ....................................................................23

*Liang Huo v. Go Sushi Go 9th Ave.*,
  No. 13 Civ. 6573, 2014 WL 1413532 (S.D.N.Y. Apr. 10, 2014)..........................37

*Ling Nan Zheng v. Liberty Apparel Co.*,
  No. 99 Civ. 9033 (RJS), 2009 WL 1383488 (S.D.N.Y. May 18, 2009)................45

*Maciel v. City of Los Angeles*,
  569 F. Supp. 2d 1038 (C.D. Cal. 2008) ................................................................25

*McGlone v. Contract Callers, Inc.*,
  49 F. Supp. 3d 364 (S.D.N.Y. 2014).....................................................................22

*Mendez v. Findings of Fact & Conclusions of Law Int'l Food House Inc.*,
  No. 13-CV-2651, 2014 WL 4276418 (S.D.N.Y. Aug. 28, 2014)..........................27

*Montellano-Espana v. Cooking Light Inc.*,
  No. 14-CV-1433, 2016 WL 4147143 (E.D.N.Y. Aug. 4, 2016)......................38, 39

*Moon v. Kwon*,
  248 F. Supp. 2d 201 (S.D.N.Y. 2002)....................................................................27

*Myers v. Copper Cellar Corp.*,
  192 F.3d 546 (6th Cir. 1999) ...................................................................34, 35, 36

*Ni v. Bat-Yam Food Servs. Inc.*,
  No. 13-cv-07274, 2016 WL 369681 (S.D.N.Y. Jan. 27, 2016) .............................45

*Oti v. Green Oaks SCC, LLC*,
  No. 13-CV-816-A, 2015 WL 329216 (N.D. Tex. Jan. 23, 2015) ..........................25

*Park v. Seoul Broad. Sys. Co.*,
  No. 05 CV 8956, 2008 WL 619034 (S.D.N.Y. Mar. 6, 2008)...............................26

*Perkins v. Bronx Lebanon Hosp. Ctr.*,
  No. 14 Civ. 1681, 2016 WL 6462117 (S.D.N.Y. Oct. 31, 2016) ..........................28

*Ramos v. Telgian Corp.*,
  No. 14-CV-3422, 2016 WL 1306531 (E.D.N.Y. Mar. 31, 2016)..........................43

*Reich v. N.Y. City Transit Auth.*,
    45 F.3d 646 (2d Cir. 1995)......................................................................................28

*Reich v. S. New England Telecomms. Corp.*,
    121 F.3d 58 (2d Cir. 1997)............................................................................. *passim*

*Santana v. Brown*,
    No. 14 Civ. 4279, 2015 WL 4865311 (S.D.N.Y. Aug. 12, 2015) ..........................44

*Seever v. Carrols Corp.*,
    528 F.Supp.2d 159 (W.D.N.Y. 2007) ...................................................................22

*Severino v. 436 W. L.L.C.*,
    No. 13-CV-3096, 2015 WL 12559893 (S.D.N.Y. Mar. 19, 2015) .........................40

*Winans v. Starbucks Corp.*,
    796 F. Supp. 2d 515 (S.D.N.Y. 2011) ...................................................................34

*Young v. Cooper Cameron Corp.*,
    586 F.3d 201 (2d Cir. 2009)............................................................................42, 43

*Yu G. Ke v. Saigon Grill, Inc.*,
    595 F. Supp. 2d 240 (S.D.N.Y. 2008)...................................................................45

*Yuquilema v. Manhattan's Hero Corp.*,
    No. 13-cv-461, 2014 WL 4207106 (S.D.N.Y. Aug. 26, 2014).........................40, 41

*Zhen Ming Chen v. New Fresco Tortilla Taco LLC*,
    No. 15 Civ. 2158, 2015 WL 5710320 (S.D.N.Y. Sept. 25, 2015)....................36, 37

## STATUTES

29 U.S.C. § 203(m) ........................................................................................5, 30, 32, 34

29 U.S.C. § 206..................................................................................................4, 29, 32

29 U.S.C. § 207(a)(1).................................................................................................5, 29

29 U.S.C. § 255(a) .........................................................................................................42

29 U.S.C. § 260..............................................................................................................41

N.Y. Sess. Laws ch. 564, § 3 ........................................................................................40

NYLL § 162....................................................................................................................27

NYLL § 195....................................................................................................................26

NYLL § 195(1)(a)........................................................................................................40, 41

NYLL § 195(3)..................................................................................................................41

NYLL § 196-d.............................................................................................................34, 36

NYLL § 198(1-b)...............................................................................................................40

NYLL § 198-b.....................................................................................................................37

## RULES AND REGULATIONS

29 C.F.R. § 516..................................................................................................................26

29 C.F.R. § 516.1...............................................................................................................26

29 C.F.R. § 531.35.............................................................................................................37

29 C.F.R. § 785.19(a).....................................................................................6, 27, 30, 32

12 N.Y.C.R.R. § 137-1.2 (2009)...........................................................4, 5, 29, 32

12 N.Y.C.R.R. § 137-1.7 (2009).......................................................................5, 30

12 N.Y.C.R.R. § 137-1.9 (2009)................................................................6, 30, 32

12 N.Y.C.R.R. § 137-3.3 (2009)................................................................5, 30, 32

12 N.Y.C.R.R. § 146-1.2 (2015)...........................................................4, 5, 29, 32

12 N.Y.C.R.R. § 146-1.3(2015)..................................................................5, 30, 32

12 N.Y.C.R.R. § 146-1.4 (2017)..........................................................................5, 29

12 N.Y.C.R.R. § 146-1.6(a) (2015) ......................................................................5, 30

12 N.Y.C.R.R. § 146-1.9 (2015)................................................................6, 30, 32

12 N.Y.C.R.R. § 146-3.3 (2015)................................................................5, 30, 32

12 N.Y.C.R.R. § 146-2.20 ...........................................................................35, 36

## PRELIMINARY STATEMENT

The Defendants in this case – Michelle Koo, and the small restaurant, Koodo Sushi, that she has owned and operated for fourteen years – are a far cry from the exploitative employers that the Fair Labor Standards Act ("FLSA") and its state counterpart, the New York Labor Law ("NYLL"), were enacted to target.   Indeed, three days of trial proved that Ms. Koo managed her restaurant – a restaurant that was initially opened, in part, to provide jobs to its initial employees – in a way that ensured that all of its employees were paid a legally sufficient wage.  Despite their attempts to assert otherwise, the evidence reflects that Plaintiffs made more, and in some cases far more, than the law required.

To set forth a meaningful claim under the FLSA and NYLL, Plaintiffs must present enough credible evidence to allow the Court to draw a just and reasonable inference of their wages and hours.  They have failed even in this modest endeavor. Plaintiffs' case relies entirely on their testimony, testimony that cross-examination revealed to be implausible, internally inconsistent, and wildly at odds with the documentation submitted into evidence.

By contrast, Ms. Koo proffered credible and thorough evidence that was more than sufficient to negate the Plaintiffs' testimony.  At trial, she introduced comprehensive evidence – primarily drawn from an electronic payroll database – to provide a nearly complete picture of the wages she paid to Plaintiffs throughout the period of their employment.  Documentary evidence of each Plaintiff's schedule was supported by Ms. Koo's testimony as well as the credible testimony of Plaintiffs' co-workers exposed Plaintiffs' claims about their hours, including their insistence that they were hard at work at times when their co-workers credibly stated that no one was present or working, were simply not true.  Taken together, Ms. Koo's evidence showed that Plaintiffs' testimony consistently exaggerated their hours and understated their pay.

Further, Ms. Koo presented enough evidence to conclude that Plaintiffs were paid well above minimum wage.  She credibly testified that she was aware of and accounted for overtime, "spread of hours" pay, and the meal breaks as well as tip and meal credits to which a restaurant owner is entitled.  This is amply supported by the wages and hours evidence Ms. Koo introduced, and the application of the appropriate statutory requirements to that evidence.  From this it is evident Plaintiffs were fully compensated for their work.

Plaintiffs also assert various other minor claims under the FLSA and NYLL; as explained below, they are largely without merit.  Plaintiffs claim that they are entitled to tips withheld by a third party vendor; these claims fail as a matter of law.  They request compensation for certain equipment costs, but failed to demonstrate that the purchase of that equipment was requested by Ms. Koo or otherwise necessary to their work, or that the purchases cut so deeply into their wages as to effectively lower them below the legal minimum.  They bring claims for violation of technical notice requirements under New York law – but on at least two of those claims, Plaintiffs are not even eligible for relief.

Finally, Plaintiffs utterly failed to adduce evidence at trial sufficient to demonstrate that any violations, had they occurred, were done willfully or evinced a lack of good faith.  On the contrary, the evidence proffered by Ms. Koo showed that she made good faith efforts to maintain compliance with all relevant requirements.  Therefore, even if the Court were to find violations of the FLSA or NYLL, Plaintiffs are not entitled to recover liquidated damages under either statute.

Accordingly, Ms. Koo and Koodo Sushi respectfully request that the Court rule in their favor on all claims.

## STATEMENT OF FACTS

Defendant Michelle Koo is the sole proprietor of Koodo Sushi, a Japanese restaurant in New York City.  Defs.' Proposed Findings of Fact & Conclusions of Law ("DPFF") ¶ 2.  Ms. Koo opened Koodo Sushi in 2002, in part as a way to provide jobs to former co-workers who had been laid off after the September 11 attacks from the downtown hotel at which she worked. DPFF ¶ 3.  Ms. Koo had no prior experience operating a restaurant or any other small business. DPFF ¶ 3.

The three Plaintiffs in this case worked for Ms. Koo, in different roles, between 2009 and 2015.  Together, they brought suit against Ms. Koo and Koodo Sushi, each alleging their pay was below what was legally required.

At trial, Plaintiffs relied solely on testimonial evidence to establish their affirmative case. Each Plaintiff vaguely—and robotically—testified that he was not paid by the hour, but instead was paid a uniform salary per week or per shift, regardless of the number of hours he actually worked.  Each Plaintiff also inflated the number of his work hours by suggesting that he started work before the restaurant opened at 11:00 a.m., finished work after the restaurant closed at 10:00 p.m., or worked during the two-hour break between the lunch and dinner hours.  Cross-examination revealed, however, that Plaintiffs' pay in fact varied with the number of hours they worked, and that Plaintiffs' supposed memories of their hours worked were completely unreliable.  By contrast, Ms. Koo's and other defense witness' testimony, as well as documentary evidence, demonstrate that Ms. Koo calculated Plaintiffs' wages on an hourly basis, and accounted for the requirements of the FLSA and NYLL.

As explained further below, setting aside Plaintiffs' incredible testimony, and crediting the testimony and documents presented by Defendants, the record demonstrates that Ms. Koo paid the Plaintiffs more than the minimum they were owed under the FLSA and NYLL.

Plaintiffs' claims, which are premised on exaggerated estimates of their work hours and deflated estimates of their wages, are without merit.

## I.      MS. KOO'S OPERATION OF KOODO SUSHI AND EMPLOYMENT OF PLAINTIFFS

### A.      Koodo Sushi's Operations

From 2009 until the date this case was filed, Koodo Sushi was open to the public on weekdays from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and on weekends from 5:00 p.m. to 10:00 p.m.  DPFF ¶ 10.   Koodo Sushi employees worked only during the hours the restaurant was open.   DPFF ¶¶ 80-81, 102, 109-11, 138, 146, 155-57, 159.   Throughout Plaintiffs' employment, the first person to arrive at Koodo Sushi was either Ms. Koo or Ruyi Wu (a former employee), who was responsible for opening the restaurant when Ms. Koo was not present.  DPFF ¶ 23.  Ms. Koo or Ms. Wu also closed the restaurant in the evening promptly at 10:00 p.m.  DPFF ¶ 23.

During lunch hours, most of Koodo Sushi's business was derived from customers who came to dine at the restaurant.  DPFF ¶ 11.  Customers typically did not start trickling in for lunch until shortly after noon, and lunch service was generally complete by approximately 2:00 p.m.  DPFF ¶ 16.  Hence, employees had time after they arrived at 11:00 am to take care of the tasks needed to prepare for the day, and time to take half-hour lunch breaks after 2:00 p.m., before Koodo Sushi closed at 3:00 p.m.  DPFF ¶¶ 17, 156, 176, 184(b).  Employees did not work while Koodo Sushi was closed from 3:00 p.m. to 5:00 p.m.  DPFF ¶¶ 13-15, 109, 160.  During that time, the lights at Koodo Sushi were turned off, and employees slept inside the restaurant, left the premises, or otherwise did not work.  DPFF ¶ 15.

During dinner hours, most of Koodo Sushi's business came from delivery orders (for office workers) as opposed to dine-in customers.  DPFF ¶ 12.  The restaurant stopped accepting

dinner delivery orders at 9:50 p.m., but the restaurant was generally busy with dinner orders only

between 7:00 p.m. and 8:00 p.m.  DPFF ¶¶ 12, 16.  Thus, employees had time between 8:00 p.m.

and 9:00 p.m. to take half-hour dinner breaks, and to close down their work areas before leaving

the restaurant by 10:00 p.m.  DPFF ¶ 18.  Koodo Sushi employees' meal breaks were timed to

occur after the restaurant's busy periods had ended.  DPFF ¶¶ 17-18  On the rare occasion,

however, when a delivery order was received during a meal break, Yazhong Zhang, the only full-

time delivery worker during the relevant period, handled the delivery.  DPFF ¶¶ 20-21.

### B.    Ms. Koo's Compensation of Employees

#### 1.    FLSA and NYLL Requirements

Under the FLSA and the NYLL, a restaurant like Koodo Sushi must account for a

number of requirements when determining how much to compensate its employees.  As an initial

matter, the restaurant must pay its employees at least the applicable minimum hourly wage.  29

U.S.C. § 206; 12 NYCRR § 146-1.2 (2015); 12 NYCRR § 137-1.2 (2009)  During the time

periods relevant to this case, the hourly minimum wage under the NYLL (which was equal to or

greater than the federal minimum wage under the FLSA) was $7.25 from July 24, 2009 until the

end of 2013, $8.00 during 2014, and $8.75 in 2015.  12 NYCRR § 146-1.2 (2015); 12 NYCRR §

137-1.2 (2009).

Next there is overtime.  For each hour an employee works in excess of 40 hours in a

given week, the restaurant must pay the employee one and one-half times the employee's hourly

rate of pay.  29 U.S.C. § 207(a)(1); 12 NYCRR § 146-1.4

A further issue is "spread of hours" pay.  For any day on which an employee's workday

begins more than ten hours before it ends, the employee must compensated with pay equal to an

additional hour at the minimum wage.  12 NYCRR § 146-1.6(a) (2015); 12 NYCRR § 137-1.7

(2009).  For example, if an employee starts work at 9:00 a.m. and ends work at 9:00 p.m., but

only works nine hours within that twelve-hour time frame (with three hours spent on break), the employee must nonetheless be paid for eight hours of work.

Certain credits, which may be applied against an employee's wages, are also available. Tipped employees, such as delivery workers, may have a tip credit applied against their hourly wage. 29 U.S.C. § 203(m); 12 NYCRR §§ 146-1.3, 3.3 (2015); 12 NYCRR § 137-3.3 (2009). In other words, rather than being required to be paid at minimum wage, they may be paid at minimum wage minus a certain statutorily designated amount per hour, to reflect the additional compensation they receive from tips. During the time periods relevant to this case, the applicable tip credit was $1.60 until the end of 2013, $1.75 in 2014, and $1.90 in 2015. 12 NYCRR § 146-3.3 (2015); 12 NYCRR § 137-3.3 (2009).

Another type of credit a restaurant may deduct from an employee's wages is the value of meals provided to the employee. The permissible value of such meal credits during the relevant time frame varied between $2.50 and $3.10 per meal, *i.e.*, between $5.00 and $6.00 per day for an employee who worked during through two meal shifts.[1] 2 NYCRR § 146-1.9 (2015); 12 NYCRR § 137-1.9 (2009). In addition, the time employees take for meal breaks is non-compensable. 29 C.F.R. § 785.19(a); *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 63 (2d Cir. 1997).

---

[1]     Until December 31, 2013, the meal credit applicable to all three Plaintiffs' was $2.50. DPFF ¶¶ 222-26. In 2014, the applicable meal credit was $2.50 for days on which Plaintiff Mastranzo (weekends) and Plaintiff Gamero (all work days) performed only delivery work, and $2.75 for days on which Plaintiff Mastranzo (weekdays) and Plaintiff Sanchez (all work days) performed jobs other than delivery. DPFF ¶¶ 222-26. In 2015, the applicable meal credit was $2.50 for days on which Plaintiff Mastranzo (weekends) and Plaintiff Gamero (all work days) performed only delivery work, and $3.10 for days on which Plaintiff Mastranzo (weekdays) and Plaintiff Sanchez (all work days) performed jobs other than delivery. DPFF ¶¶ 222-26.

## 2.  Ms. Koo's Wage Calculations

To determine employee wages, including those of Plaintiffs', Ms. Koo performed hourly wage calculations that accounted for the just-described FLSA and NYLL requirements.  Thus, to calculate Plaintiffs' wages, Ms. Koo accounted for:   (i) the applicable minimum wage; (ii) overtime pay of one and one-half an employee's hourly wage for hours worked in excess of forty in a given week; (iii) a "spread of hours" payment of one additional hour of at least the minimum wage for any day in which the time between the beginning and end of an employee's workday exceeded ten hours; (iv) meal breaks provided to employees; and (v) a tip credit and meal credit, where applicable.[2]  DPFF ¶¶ 26, 28-30, 86-87, 114, 140-42, 190, 195, 220, 227, 230. In fact, Ms. Koo ultimately paid Plaintiffs more than the minimum amounts they were due. Indeed, when Ms. Koo calculated the minimum Plaintiffs' were owed, she paid them more so that she created a "cushion" for herself.  DPFF ¶¶ 88, 115, 143.

### C.      Ms. Koo's Hours and Wages Records

Ms. Koo maintained a number of different types of records evidencing the hours worked by and wages paid to Plaintiffs, as well as tips paid to the Plaintiffs for Seamless delivery orders. *First,* from 2009 until early 2014, Ms. Koo recorded cash wage payments to employees, including Plaintiffs, on a weekly basis in a computer program called Aldelo.  DPFF ¶ 36.  When Ms. Koo paid an employee, as an acknowledgment of payment, she required the employee to sign a thermographic slip of paper printed from Aldelo that showed the amount the employee was paid.   DPFF ¶ 37.  Although most of those signed acknowledgments, which Ms. Koo maintained, have faded and are now illegible, the information that Defendant Koo entered into Aldelo was electronically preserved by the program.  DPFF ¶¶ 37-38.  All of the information is

---

[2] Ms. Koo visited Internet websites annually in an effort to stay up to date as best she could regarding labor law rules and regulations, including the minimum wage.  DPFF ¶ 27.

contained in an Aldelo-generated "Pay Out Details Report," which reflects wage payments to Plaintiffs, as well as the dates on which they were paid for work the preceding week.  DPFF ¶¶ 38, 40-46.  In certain instances, the report also contains information about the numbers of hours or days worked in a week.  DPFF ¶¶ 48, 50.

*Second*, from late 2008 until early 2013, Ms. Koo required Koodo Sushi employees, including Plaintiffs, to sign a paper reflecting when they arrived at work and when they left work.  DPFF ¶ 72.  Ms. Koo prepared this sign-in sheet each week, and posted the sheet for the current week on the wall at Koodo Sushi.  DPFF ¶ 72.  She stopped using the sign in sheets, however, because employees were not complying with her request that employees sign them when they arrived at and when they left work.  DPFF ¶ 73.  Plaintiff Mastranzo was among the employees whose behavior led Ms. Koo to cease using the sign-in sheets.  He testified that, on several occasions, one his co-workers signed his name on these sign-in sheets, such that the hours recorded on it were inaccurate.  DPFF ¶ 104.  Plaintiff Mastranzo characterized this behavior as a "joke."  DPFF ¶ 104.

*Third*, in December 2013 or January 2014, Ms. Koo began to keep a calendar at Koodo Sushi that was used to record the hours worked by and wages paid to employees other than delivery workers, including Plaintiff Mastranzo and Plaintiff Sanchez.  DPFF ¶¶ 52-53.  Plaintiff Mastranzo and Plaintiff Sanchez were required to sign the calendar each week at the time when Ms. Koo paid them.  DPFF ¶ 53.  When Ms. Koo recorded Plaintiff Mastranzo's or Plaintiff Sanchez's hours worked or wages paid, she marked the calendar with their names as "Rob" or "Oska," respectively.  DPFF ¶¶ 54-56.  For March 2014 through October 2014, however, Ms. Koo used it to record only instances where an employee's work schedule varied from the employee's normal schedule.  DPFF ¶ 59.

*Fourth*, beginning in late 2013, Ms. Koo recorded wage payments to Plaintiff Gamero, who performed exclusively delivery work, on Seamless Report delivery sheets.   DPFF ¶ 61. Entries on the sheets that applied to Plaintiff Gamero were designated with the letter "I" (for Gamero's first name, "Israel").   DPFF ¶ 61.   Ms. Koo circled the amounts she paid to Plaintiff Gamero on the dates reflected on the delivery sheets.   DPFF ¶ 64.   Because Gamero sometimes fulfilled delivery orders from Delivery.com as well, the markings on the sheets sometimes reflected Plaintiff Gamero's wage payments and tips from both Seamless and Delivery.com delivery orders (in which case, Ms. Koo circled two numbers).   DPFF ¶ 64.   Those numbers are easily distinguishable, as Plaintiff Gamero's wage payments were always a multiple of $5.00, DPFF ¶ 64, due to the calculations described in Section I.3 of the Statement of Facts, below.   Ms. Koo also recorded tips paid from Seamless and Delivery.com orders to other Koodo Sushi employees, including Plaintiff Mastranzo and Plaintiff Sanchez, using the same method.   DPFF ¶ 64.   Finally, the delivery sheets sometimes reflected the particular days Plaintiff Gamero worked and/or number of hours he worked the preceding week.

*Fifth*, for a period of time, including in 2010, Ms. Koo recorded the hours worked and wages paid to delivery workers on daily login sheets.   DPFF ¶ 67.   Ms. Koo recorded payments to and hours worked by Plaintiff Mastranzo under the heading "Rob" or "Rob (K)," and the same information for Plaintiff Sanchez under the heading "Oska."   DPFF ¶¶ 68-69.   When Ms. Koo paid an employee's wages and recorded the payment on a delivery log in sheet, the employee was required to sign near the recording of the payment.   DPFF ¶ 71.   Ms. Koo sometimes marked the schedule under an employee's name with "N/A," which meant the employee did not work the specified shift.   DPFF ¶ 70.

D.      **Plaintiffs' Employment at Koodo Sushi**

1.  **Plaintiff Sanchez**

Ms. Koo hired Plaintiff Sanchez on or around August 18, 2009 to work as a dishwasher during lunch and delivery person during dinner.  DPFF ¶¶ 136-37.  Plaintiff Sanchez performed those jobs for approximately one month.  DPFF ¶ 137.  At that time, Ms. Koo offered Plaintiff Sanchez the opportunity to learn how to prepare sushi because she thought he was a hard worker and the more skilled position would provide him a better future.  DPFF ¶ 144.  Plaintiff Sanchez worked at the sushi bar, first as a trainee and then as a sushi helper, until the end of his employment in or around February 2015.  DPFF ¶ 145.  When Ms. Koo hired Plaintiff Sanchez she explained to him his general work schedule, hourly wage, and job duties, and provided him with a written record of that information.  DPFF ¶ 139.

When Plaintiff Sanchez worked as a dishwasher and delivery person, and when he first switched to work at the sushi bar, he generally had a fifty hour workweek—from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m. on weekdays, and 5:00 p.m. to 10:00 p.m. on Saturday or Sunday.  DPFF ¶ 138.  After Plaintiff Sanchez's daughter was born in 2012, his work hours were affected by his need to care for her.  DPFF ¶¶ 150-51.  Eventually, at least as early as November 2014, Ms. Koo formally changed Plaintiff Sanchez's schedule to reflect his 12:00 p.m. start time.  DPFF ¶ 153.  By at least December 2014, Plaintiff Sanchez stopped working weekends, and worked only one shift per day on weekdays—from 12:00 p.m. to 3:00 p.m.  DPFF ¶¶ 154-55.  Like other Koodo Sushi employees, Ms. Koo provided Plaintiff Sanchez with a meal for each shift he worked, and he took uninterrupted half-hour lunch and dinner breaks.  DPFF ¶¶ 161, 163-66.

Ms. Koo paid Plaintiff Sanchez in excess of the minimum wages he was owed.  For his work at the sushi bar, Ms. Koo paid him at least the hourly minimum wage, and as much as

$9.00.  DPFF ¶ 149.  Documents that Plaintiff Sanchez signed acknowledging his wages show that the wages he received varied sometimes from week to week—reflecting that he was paid an hourly wage.  DPFF ¶¶ 172, 184(e).  Specifically, Plaintiff Sanchez was required to sign thermographic slips of paper printed from Aldelo, and the calendar Ms. Koo kept at Koodo Sushi.  DPFF ¶ 184(f).  Plaintiff Sanchez also acknowledged on cross-examination that the amount Ms. Koo paid him changed in accordance with the number of hours he worked.  DPFF ¶ 184(e).

### 2.  Plaintiff Mastranzo

Ms. Koo hired Plaintiff Mastranzo in or around the end of January 2010.  DPFF ¶ 99.  He worked as a dishwasher during Koodo Sushi's lunch hours and as a delivery person during its dinner hours until the end of his employment in or around February 2015.  DPFF ¶¶ 107, 112. When Ms. Koo hired Plaintiff Mastranzo she explained to him his general work schedule, hourly wage, and job duties, and provided him with a written record of that information.  DPFF ¶ 101. Plaintiff Mastranzo occasionally performed work duties other than dishwashing and delivery, such as cleaning,  but he performed those duties during his normal work hours.  DPFF ¶ 128. For performing those tasks, Ms. Koo paid him an extra amount separate from his hourly wages. DPFF ¶ 129.

Although it sometimes varied, such as during the holiday season, Plaintiff Mastranzo generally worked a fifty hour workweek—from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m. on weekdays, and 5:00 p.m. to 10:00 p.m. on Saturday or Sunday.  DPFF ¶¶ 102-03. Plaintiff Mastranzo never worked outside of those hours.  DPFF ¶¶ 105, 110-11.  Ms. Koo provided Plaintiff Mastranzo with a meal each shift he worked, and he took uninterrupted half hour lunch and dinner breaks.  DPFF ¶¶ 116-21.

Ms. Koo paid Plaintiff Mastranzo in excess of the minimum wages he was owed.  Like other delivery workers, Ms. Koo paid Plaintiff Mastranzo $5.00 per hour for work as a delivery person,[3] and for dishwashing work, she paid him the hourly minimum wage for non-tipped work.  DPFF ¶¶ 108, 114-15.  Documents that Plaintiff Mastranzo signed acknowledging his wages show that the compensation he received sometimes varied from week to week—reflecting that he was paid an hourly wage.  DPFF ¶¶ 126, 135(d)-(e).  Specifically, Plaintiff Mastranzo was required to sign the thermographic papers printed from Aldelo, the calendar Ms. Koo kept at Koodo Sushi, and the delivery person login sheets.  DPFF ¶¶ 37, 53, 71, 135(e).

### 3.  Plaintiff Gamero

Finally, Plaintiff Gamero was hired in or around December 2012.  DPFF ¶ 74.  Apart from a period of approximately one year when he voluntarily left Koodo Sushi, Plaintiff Gamero worked exclusively as a delivery person until the end of his employment in or around April 2015.  DPFF ¶ 75.  He performed only delivery work, and engaged in no non-tipped duties during that time.  DPFF ¶ 76.  When he began working at Koodo Sushi, Ms. Koo explained to Plaintiff Gamero, and recorded in writing, his job duties, general work hours, and hourly wage.  DPFF ¶ 78.

As Ms. Koo testified, and documents signed by Plaintiff Gamero confirm, his work schedule varied from week to week, with Gamero generally working between two and four hours per day.  DPFF ¶ 79.  Most frequently, Plaintiff Gamero worked from 6:00 p.m. to 8:00 p.m. or 10:00 p.m.  DPFF ¶ 80.  He sometimes worked from 11:00 a.m. to 2:00 p.m., although he did not work more than one shift in the same day.  DPFF ¶ 81.  Ms. Koo also provided Plaintiff Gamero

---

[3] Ms. Koo calculated the hourly rate owed to a delivery person, after applying credits for tips, meals, and meal breaks, to be below $5.00.  DPFF ¶ 114(a)-(c).  Thus, she paid delivery workers more  than what she determined to be required.

with a meal for each shift he worked, and Plaintiff Gamero took a half hour uninterrupted meal break on all days on which he worked between 8:00 p.m. and 9:00 p.m.  DPFF ¶¶ 82-84.

Ms. Koo paid Plaintiff Gamero in excess of the minimum he was owed.  As noted, Ms. Koo determined that the hourly rate owed to a delivery worker to be below $5.00.  DPFF ¶¶ 86-88.  She did this by starting with the NYLL minimum wage, applying the permissible tip credit, prorating the permissible value of a meal credit for each meal she provided, and accounting for half-hour non-working meal breaks on days Plaintiff Gamero worked during the employee meal break period from 8:00 p.m. to 9:00 p.m. (*i.e.*, the days he worked three or four hours during his typically evening shift).  DPFF ¶ 87.  In addition, Plaintiff Gamero never worked more than forty hours in a week, and therefore was never entitled to overtime pay.  DPFF ¶ 85.  He was also not entitled to spread of hours pay because the interval between the beginning and end of his workday never exceeded ten hours.  DPFF ¶¶ 79-81, 233.  Nevertheless, Ms. Koo paid Plaintiff Gamero $5.00 per hour—*i.e.*, above what was required.  DPFF ¶ 88.  The sufficiency of this $5.00 per hour wage is illustrated by the following formulas and applying it to a two-hour, three-hour, or four-hour shift during any period of his employment:

> Two Hour Shift: (Hours)*(Min. Wage – Tip Credit) – (Meal Credit)*(# of Meals) / (2 Hours)

> Three Hour Shift:  (Hours)*(Min. Wage – Tip Credit) – (Meal Credit)*(# of Meals) / (2.5 Hours)[4]

> Four Hour Shift:  (Hours)*(Min. Wage – Tip Credit) – (Meal Credit)*(# of Meals) / (3.5 Hours)[5]

DPFF ¶¶ 248-50.  The formula for each shift duration works out to the same wage per hour regardless of the time period of his employment, because each time the statutory minimum wage

---

[4]     Accounts for a half-hour non-working meal break.

[5]     Accounts for a half-hour non-working meal break.

was increased, the applicable tip credit was increased by the same amount.  For example, for a four hour shift, the formulas can be applied as follows:[6]

<u>Start of Employment to December 31, 2013</u>

(3.5 Hours)\*($7.25 − $1.60) − ($2.50) \* (1)        /        3.5 Hours        = $4.94

\*\*\*\*

<u>January 31, 2014 to December 31, 2014</u>

(3.5 Hours)\*($8.00 − $2.35) − ($2.50) \* (1)        /        3.5 Hours        = $4.94

\*\*\*\*

<u>January 1, 2015 to End of Employment</u>

(3.5 Hours)\*($8.75 − $3.10) − ($2.50) \* (1)        /        3.5 Hours        = $4.94

## II.        PLAINTIFFS' CASE IN CHIEF AND ITS SHORTCOMINGS

Plaintiffs made certain claims in their direct testimony that conflict with the facts set forth above.  These claims, however, were shown to be unreliable based on their cross examinations and contemporaneous documentary evidence.  In an apparent effort to demonstrate that they were underpaid, Plaintiffs exaggerated their work hours and underestimated the wages Ms. Koo paid them.

### A.        Plaintiff Sanchez

Plaintiff Sanchez correctly testified that, beginning when he worked at the sushi bar until December 2014, he generally worked fifty hours per week every week—from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m. on weekdays, and on Saturday or Sunday from 5:00 p.m. to 10:00 p.m.  DPFF ¶¶ 146, 184(a).  From December 2014 until February 2015, Plaintiff Sanchez said he worked twenty hours every week—on weekdays from 11:00 a.m. to 3:00 p.m.  DPFF ¶ 184(a).  Plaintiff Sanchez, however, underrepresented the wages he was paid.  He testified that he was paid a weekly salary of $350 from 2009 to August 2011, $375 from August 2011 until

---

[6]        The same calculations work out to $4.40 for a two-hour shift and $4.65 for a three hour shift.  DPFF ¶¶ 249-50.

sometime in 2012, $500 from 2012 until December 2014, and $300 from December 2014 to February 2015.  DPFF ¶ 184(d).

As an initial matter, even crediting Plaintiff Sanchez's testimony, Ms. Koo paid him more than the minimum he was owed.  Assuming he worked fifty hours per week every week he worked at the sushi bar until December 2014 (as he testified), and accounting for the minimum wage, overtime pay, spread of hours pay, meal credits, and the eleven 30 minute meal breaks totaling 5.5 hours per week, Plaintiff Sanchez was owed $347.69 per week until the end of 2013 (when the minimum wage was $7.25), and $383.75 per week in 2014 (when the minimum wage was $8.00),[7] using the following formula:

| | |
|---|---|
| (Regular Hours)*(Min. Wage) | + |
| (Overtime Hours)*(Min. Wage*1.5) | + |
| (Days Spread of Hours Greater than 10)*(Min.Wage) | – |
| (Meal Credit) * (# of Meals) | |
| Total Minimum Pay For Week | |

DPFF ¶¶ 260, 263, 265.  For each of those time frames that calculation works out as follows:

<u>Until December 31, 2013</u>

| | |
|---|---|
| (40 Hours)*($7.25) | + |
| (4.5 Hours)*($7.25*1.5) | + |
| (5 Days)*($7.25) | – |
| ($2.50)*(11) | |
| $347.69 | |

****

<u>2014</u>

| | |
|---|---|
| (40 Hours)*($8.00) | + |
| (4.5 Hours)*($8.00*1.5) | + |

---

[7]     The permissible meal credit applicable to Plaintiff Sanchez also increased on December 31, 2013 from $2.50 to $2.75.  DPFF ¶¶ 222, 226.

(5 Days)*($8.00)                                    –
($2.75)*(11)
$383.75

DPFF ¶¶ 263, 265.  Based on his own testimony, Plaintiff Sanchez alleged that he was paid *more*

than those amounts—$350 and then $375 each week until 2012, and then $500 each week until

2014, until he stopped working fifty hour work weeks.  DPFF ¶¶ 184(d).

During December 2014, and January to February 2015, the minimum hourly wage was

$8.00 and $8.75, respectively.  Based on the amount Plaintiff Sanchez claimed he was paid per

week during those months—$300 for 20 hours of work per week—he was paid $15.00 per hour.

Again, even based on his own testimony, the suggestion that he was underpaid is simply not true.

Moreover, Plaintiff Sanchez's concessions on cross-examination and Ms. Koo's records

discredited his testimony and revealed that he understated the amount he was paid.[8]  For

example, when he was confronted with a document he had signed showing that Ms. Koo had

paid him $450 for a week in 2010—when he claimed he was paid $350 per week—Plaintiff

Sanchez admitted that he signed the document to acknowledge the payment.  DPFF ¶ 184(d).

Likewise, when presented with a copy of a thermographic paper printed from Aldelo that he

---

[8]     Plaintiff Sanchez also inflated the number of hours he worked during the first month and
at least the last three months of his employment.  He provided the incredible explanation that,
during the first month, he arrived at Koodo Sushi 30 minutes early to prepare rice, but that task
was not necessary for him to begin until at least 11:00 a.m. because customers rarely arrived
before noon, and those who did were served rice prepared the prior day.  DPFF ¶ 184(b).  His
suggestion that Ms. Koo provided him with a key to Koodo Sushi shortly after he began working
there so that he could open the restaurant at 10:30 a.m. was also facially implausible and
contradicted by Ms. Koo's more plausible testimony that only employees she knew well and had
worked for her for a substantial period of time were entrusted with keys.  DPFF ¶ 184(b).  The
consistent and credible testimony of other witnesses, as well as documents maintained by Ms.
Koo, further refute the notion that Plaintiff Sanchez worked when Koodo Sushi was not open.
DPFF ¶ 184(b).  During at least the final three months of his employment, Ms. Koo's and other
defense witness' corroborative testimony demonstrates that he started work at noon, not 11:00
am.  DPFF ¶¶ 153, 157.

signed showing he was paid $550.00 on September 12, 2013—a period when he said he was paid $500 per week—Plaintiff Sanchez said he signed the document to confirm how much he was paid.  DPFF ¶ 184(f).  Moreover, Ms. Koo's records, including Aldelo and the calendar, demonstrate that from the time he began working at the sushi bar until the end of 2013 he was paid an average of $454.03 each week, and in 2014 he was paid an average of $539.81 each week.  DPFF ¶¶ 170-71.  In addition, for fourteen weeks where existing records submitted to the court show both the numbers of hours Plaintiff Sanchez worked and the amount he was paid in a given week, the amount he was paid varied with the number of hours he worked, but was always more than the minimum he was owed using the formulas above.  DPFF ¶¶ 262, 267.

Accordingly, it is clear that Plaintiff Sanchez's memory of the wages Ms. Koo paid him is unreliable.  In the face of contemporaneous documentary evidence that disproves his claims, his testimony can be afforded no credit.

### B.      Plaintiff Mastranzo

Plaintiff Mastranzo substantially exaggerated the number of hours he worked each week. He testified on direct examination that during his entire employment at Koodo Sushi he consistently worked fifty-eight hours per week—from 11:00 a.m. to 4:00 p.m. and 5:00 p.m. to 10:30 p.m. on weekdays, and 5:00 p.m. to 10:30 p.m. on Sundays.  DPFF ¶ 135(c).  He also inaccurately suggested that he was sometimes required to perform tasks apart from his dishwashing and delivery duties outside of the hours Koodo Sushi was open.  DPFF ¶ 135(f). Plaintiff Mastranzo also underestimated the amount Ms. Koo paid him.  He claimed that he was paid a weekly salary of $350 during his first year of employment, and then $400 until he stopped working at Koodo Sushi.  DPFF ¶ 135(d)-(e).

Plaintiff Mastranzo's generalized direct testimony was, as the Court itself commented, "less than credible."  DPFF ¶ 135.  The consistent and credible testimony of other witnesses, as

well as documents maintained by Ms. Koo, refute the notion that Plaintiff Mastranzo worked when Koodo Sushi was not open.  DPFF ¶ 135(f).  He did not work between 3:00 p.m. and 4:00 p.m., as established by Ms. Koo and other witnesses who testified that employees did not work while the restaurant was closed between 3:00 p.m. and 5:00 p.m.  Likewise, Plaintiff Mastranzo's suggestion that he worked until 10:30 p.m. was discredited by consistent testimony that employees did not work after 10:00 p.m.  DPFF ¶ 110.  Ms. Koo's calendar, which Plaintiff Mastanzo signed when he was paid and reflects his work hours, corroborates the testimony he did not work outside of 11:00 a.m. to 3:00 pm. and 5:00 p.m. to 10:00 p.m.  DPFF ¶¶ 53, 135(d).

Based on his actual general fifty hour workweek, Plaintiff Mastranzo was paid more than the minimum he was owed.  Accounting for the minimum wage, overtime pay, spread of hours pay, meal credits, eleven 30 minute meal breaks totaling 5.5 hours, and applying a tip credit for the weekend day he performed only delivery work, he was owed $340.49 from the beginning of his employment until December 31, 2013, and $373.43 in 2014 using the following formulas:

<u>Until December 31, 2013</u>

| (Regular Hours)*(Min. Wage) | + |
| (Delivery Only Day Hours)*(Min. Wage – Tip Credit) | + |
| (Overtime Hours)*(Min. Wage*1.5) | + |
| (Days Spread of Hours Greater than 10)*(Min.Wage) | − |
| (Meal Credit)*(# of Meals) | |

Total Minimum Pay For Week

****

| (35.5 Hours)*($7.25) | + |
| (4.5 Hours)*($7.25 – $1.60) | + |
| (4.5 Hours)*($7.25*1.5) | + |
| (5 Days)*($7.25) | − |
| ($2.50)*(11) | |

$340.49

****

2014

| | |
|---|---|
| (Regular Hours)*(Min. Wage) | + |
| (Delivery Only Day Hours)*(Min. Wage – Tip Credit) | + |
| (Overtime Hours)*(Min. Wage*1.5) | + |
| (Days Spread of Hours Greater than 10)*(Min.Wage) | − |
| (Dishwasher Meal Credit)*(Dishwasher # of Meals)[9] | − |
| (Delivery Meal Credit)*(Delivery # of Meals) | |
| Total Minimum Pay For Week | |
| *** | |
| (35.5 Hours)*($8.00) | + |
| (4.5 Hours)*($8.00 – $2.35) | + |
| (4.5 Hours)*($8.00*1.5) | + |
| (5 Days)*($8.00) | − |
| ($2.75)*(10) | − |
| ($2.50)*(1) | |
| $373.43 | |

DPFF ¶¶ 252, 255.  Ms. Koo' records, including Aldelo and her calendar, demonstrate that he was paid more than those amounts.  Specifically, from the beginning of his employment until the end of 2013 Plaintiff Mastranzo was paid an average of $400.56 each week, and in 2014 he was paid an average of $413.69 each week.  DPFF ¶¶ 122, 125, 253, 256.  Moreover, for fourteen weeks where existing records submitted to the Court show both the numbers of hours Plaintiff Mastranzo worked and the amount he was paid in a given week, the amount he was paid varied in accordance with the number of hours he worked, but was always more than the minimum he was owed using the formulas above.  DPFF ¶¶ 124, 126.

Moreover, Plaintiff Mastranzo continued contradicted himself during cross-examination regarding his wages.  For example, in response to the Court's questioning, Plaintiff Mastranzo

---

[9]     The permissible meal credit applicable to Plaintiff Mastranzo increased on December 31, 2013 from $2.50 to $2.75 on days when he performed both dishwashing and delivery work, but remained $2.50 when he performed only delivery work.  DPFF ¶¶ 222, 224.

said he could recall only one occasion when Ms. Koo paid him $450.  DPFF ¶ 135(e).  When confronted with additional documents reflecting his wages, however, he eventually conceded that he was regularly paid at least $450 per week in 2014.  DPFF ¶ 135(e).

In light of the various inconsistencies, Plaintiff Mastranzo's testimony cannot be credited.

### C.   Plaintiff Gamero

Plaintiff Gamero also mischaracterized and underestimated the wages Ms. Koo paid him. DPFF ¶ 98(a).  His testimony that he was paid $15 per shift irrespective of how many hours he worked during a shift is unsupported.  DPFF ¶ 98(a).  In reality, as Ms. Koo testified, Plaintiff Gamero was paid $5.00 per hour.  DPFF ¶¶ 86-87, 89, 98(a).  In fact, when confronted with a document bearing his signature that demonstrated he was paid $5.00 per hour, Plaintiff Gamero conceded that Ms. Koo had paid him that hourly rate.  Specifically, he agreed that, on July 31, 2014, Ms. Koo paid him $5.00 per hour for 18 hours of work for a total of $90.00.  DPFF ¶ 89(h).  Likewise, existing records submitted at trial, including Seamless Report delivery sheets, showing the number of hours Plaintiff Gamero worked and the wages he was paid for an additional fourteen weeks, all corroborate that Ms. Koo paid Plaintiff Gamero $5.00 per hour. DPFF ¶ 89.

Plaintiff Gamero also wildly inflated the number of hours he worked at Koodo Sushi. DPFF ¶ 98(d).  He testified that from November 2011 to November 2013, he had a fifty hour work week—on weekdays from 11:00 a.m. to 3:00 p.m. and 5:00 p.m. to 10:00 p.m., and on Sundays from 5:00 p.m. to 10:00 p.m.  DPFF ¶ 98(d).  (Plaintiff Gamero, however, contradicted himself when he later testified that he spent the hour between 2:30 p.m. to 3:30 p.m. each weekday cutting cardboard into small pieces to place at the bottom of plastic bags for delivery orders.)  DPFF ¶ 98(g).  From November 2014 to April 2015, Plaintiff Gamero claimed that he

worked sixteen hours per week every week—from 11:00 a.m. to 3:00 p.m. on Mondays, Wednesday, Thursdays, and Fridays.  DPFF ¶ 98(d).

Plaintiff Gamero's suggestion that he worked a fifty hour (or longer) schedule from 2011 to 2013, is contradicted by credible testimony and documentary evidence.  In fact, the work schedule Ms. Koo recorded for Plaintiff Gamero when he began working at Koodo Sushi demonstrates that he would work only from 6:00 p.m. to either 8:00 p.m. or 10:00 p.m.  DPFF ¶ 78.  That schedule is corroborated by Ms. Koo's credible testimony that those were his typical work hours at that time.  Likewise, Plaintiff Gamero's allegation that he worked between 3:00 p.m. and 3:30 p..m. was not credible.  As previously noted, Koodo Sushi employees did not work between 3:00 p.m. and 5:00 p.m.  Moreover, Plaintiff Gamero's testimony that during that time he cut cardboard every day was contradicted by his own direct testimony that he only did so sometimes and his implausible revelation that it took him an hour to cut sixty to seventy small pieces.  DPFF ¶ 98(g).

Plaintiff Gamero undermined his credibility in other ways as well.  After admitting that he signed the Seamless Report delivery sheets bearing his signature, as well as his hours worked and wages, Plaintiff Gamero refused to admit that he had seen the number of work hours they reflected at the time that he signed them—insisting in one case that he did not look at a number immediately next to his signature.  DPFF ¶ 98(e).  Ultimately, Plaintiff Gamero admitted that he could not recall the number of hours he worked.[10]  DPFF ¶ 98(c).  His testimony on the whole was simply too unreliable to credit his allegations.

---

[10]    Plaintiff Gamero also could not recall the time periods during which he worked at Koodo Sushi.  Specifically, when confronted with documents that he signed suggesting he had worked for the restaurant during the months of May 2014 through August 2014 (during the year he claimed to have been away), Plaintiff Gamero could not explain the discrepancy and conceded that his memory of the time periods during which he worked at Koodo Sushi must be incorrect.

## ARGUMENT

I.   **PLAINTIFFS FAILED TO ESTABLISH THAT THEY WERE UNDERPAID**

### A.   Legal Standard

Where a plaintiff alleges hour and wage violations pursuant to the FLSA and NYLL, and the employer does not maintain complete records of hours and wages, the employee must prove that he or she in fact performed work for which the employee was improperly compensated and produce sufficient, credible evidence showing the amount and extent of the uncompensated work as a matter of just and reasonable inference. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 32 (2d Cir. 2014). The determination of whether or not a plaintiff has met that burden lies within the discretion of the court. *Id.*

If and when an employee has offered sufficiently credible evidence to permit a "just and reasonable inference" of hours worked and wages earned, "the burden shifts to the employer 'to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 69 (2d Cir. 1997) (citing *Anderson*, 328 U.S. at 687-88 (1946)); *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 371 (S.D.N.Y. 2014). In making this determination, a court will look at the evidence presented by the plaintiff and weigh it against the credibility and specificity of that provided by the employer. If the employer's evidence is consistent and contradicts that of the plaintiff, a court may find the employer has negated any reasonable inference that existed in favor of the plaintiff. *See, e.g.,*

---

DPFF ¶¶ 98(c). He repeatedly responded to questions with the phrases: "I don't remember," "I'm not certain," and "I don't know," but later admitted the accuracy of the documents. DPFF ¶¶ 98(c).

*Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 384 (E.D.N.Y. 2012) (testimony of hours worked by employer's witnesses corroborated each other and, when taken with employer's payroll evidence, negated the reasonableness of the plaintiffs' contrary assertions).

### B. Plaintiffs Were Not Credible and No Just and Reasonable Inferences Can Be Drawn from Their Testimony

Plaintiffs assert that their wages fell short of what was legally required for the hours that they worked. Plaintiffs, however, have not offered sufficient evidence from which the Court can draw a "just and reasonable inference" of their wages and hours worked.[11]

For a factfinder to draw a "just and reasonable inference," Plaintiffs must offer more than bare assertions of their hours and wages; rather, their evidence must be specific enough from which to draw concrete conclusions. *See Daniels*, 497 F. App'x 137, 139 (2d Cir. 2012) (recognizing that when a plaintiff's testimony is "too vague to be credible," he or she has failed to meet the *Anderson* burden); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88-89 (2d Cir. 2003) (holding that testifying to hours a plaintiff "usually worked" is speculative and insufficient evidence upon which to draw a just and reasonable inference); *see also Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1060 (8th Cir. 2014) (finding that the plaintiff's vague testimony was not specific enough to credibly support his estimates of hours worked and he therefore failed to meet

---

[11] Because Plaintiffs first intentionally falsified the sign-in sheets Ms. Koo used to keep track of employee hours, and then stopped filling out the sign-in sheets entirely, they should not be permitted to take advantage of the *Anderson* burden shifting for at least years 2009 to 2013, when Ms. Koo used the sign in sheets. *See* DPFF ¶¶ 72-73, 104; *see also Seever v. Carrols Corp.*, 528 F.Supp.2d 159, 170 (W.D.N.Y. 2007) ("There is no support for plaintiff's position that the *Anderson* burden of proof should be applied where the time record 'deficiencies' alleged by the employee are admittedly and voluntarily self-created."). Plaintiffs have not adduced any evidence to suggest that Ms. Koo discouraged them from recording their hours, and therefore they should instead be required to establish their hours worked and compensation with specificity. *See Hart v. RCI Hosp. Holdings, Inc.*, 90 F.Supp.3d 250, 269-70 (S.D.N.Y. 2015). Plaintiffs' vague testimony does not meet this standard, and the Court should therefore find in Ms. Koo's favor on their wage and hour claims.

his burden under *Anderson*).   In addition, Plaintiffs must offer evidence that is neither inconsistent nor contradicted by more trustworthy evidence.   *See, e.g.*, *Daniels v. 1710 Realty LLC*, No. 10-CV-0022, 2011 WL 3648245, at *5 (E.D.N.Y. Aug. 17, 2011), *aff'd*, 497 F. App'x 137 (2d Cir. 2012) (finding plaintiff did not meet his burden under *Anderson* in part because his testimony was contradicted by "[other witness'] testimony, which [the court] find[s] credible"); *Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, No. CIV-13-0971, 2015 WL 7873813, at *15-16 (D.N.M. Oct. 20, 2015) (finding that the plaintiff's conflicting and inconsistent testimony regarding overtime hours worked was insufficient from which to draw a just and reasonable inference).

Plaintiffs' testimony regarding their wages, hours, job duties and other circumstances of employment was internally inconsistent and contradicted by other credible witness testimony and documentary evidence.   It was also impermissibly vague.   At the same time, the record revealed their generalized assertions to be inaccurate.   Plaintiffs could not provide plausible explanations for their discredited testimony, and in some cases they admitted that their memories were not reliable

During their direct examinations, each Plaintiff inflated the number of hours he worked and understated the amount of wages he was paid.   Their testimony did not withstand cross examination, during which Plaintiffs were confronted with contemporaneously created documents they had signed that contradicted their testimony.   For example, Mastranzo exaggerated his hours by claiming that he worked every weekday and Sunday until 10:30 p.m., DPFF ¶ 135(c),  an assertion refuted by certifications of his hours bearing his signature.[12]  *See*

---

[12] This testimony was also contradicted by credible testimony from other witnesses that Koodo Sushi closed at 10:00 p.m. and all employees left at or before that time.  *See* DPFF ¶¶ 110-11, 159.

DPFF ¶ 135(e); *see also Adami v. Cardo Windows, Inc.*, No. 12-CV-2804, 2015 WL 1471844, at *9 (D.N.J. Mar. 31, 2015) (refusing to credit plaintiffs' claims because documents in the record contradicted their blanket assertions, which could not provide basis to meaningfully estimate the number of hours they worked).

Plaintiffs attempted to reconcile the differences between their testimony and the documents, but they were unable to provide any plausible explanation for the discrepancies, further evidencing their lack of credibility. Plaintiff Sanchez, for example, admitted that he regularly signed the calendar that listed his hours worked and wages for the week. DPFF ¶ 184(e). But when the calendar contradicted his earlier testimony, Sanchez refused to admit that he had seen the schedule clearly written on the calendar, instead insisting that he signed a blank entry DPFF ¶ 184(a); *see also Coulibaly v. Milennium Super Car Wash, Inc.*, No. 12-CV-04760, 2013 WL 6021668, at *8 (E.D.N.Y. Nov. 13, 2013) (refusing to credit implausible and contradictory witness testimony in a FLSA case).

In several instances, Plaintiffs conceded that their direct testimony about their hours and wages was false, that they could not remember key details, and that Ms. Koo's records were accurate and more reliable than their recollections. For example, Plaintiff Gamero conceded that he was uncertain of the time period that he worked at Koodo Sushi and the number of hours he worked per week. DPFF ¶ 98(c); *see also Bustillos*, 2015 WL 7873813, at *15-16 (finding that plaintiff failed to meet make out a prima facie case because she "conceded that she had no sense how much uncompensated time she worked" and admitted that she did not know "the period of time for which she seeks compensation"). Gamero also admitted that he was paid an hourly wage (not on a per-shift basis), and that Ms. Koo's records were accurate and more reliable than his memory. DPFF ¶ 98(c). *See, e.g., Oti v. Green Oaks SCC, LLC*, No. 13-CV-816-A, 2015

WL 329216, at *3 (N.D. Tex. Jan. 23, 2015) (holding that an employee fails to meet her burden to establish the amount and extent of uncompensated work where her testimony about overtime hours was an "admitted guess"); *Maciel v. City of Los Angeles*, 569 F. Supp. 2d 1038, 1046, 1048 (C.D. Cal. 2008) (finding the plaintiff not credible, partly because the plaintiff admitted, contrary to previous testimony, that he did in fact receive certain breaks).

Each Plaintiffs' testimony suffered from numerous deficiencies, all of which cast doubt on the veracity of their claims. Because Plaintiffs were not credible, the Court should discount the entirety of their testimony and find that they failed to establish the amount and extent of any purportedly uncompensated work by a just and reasonable inference.

### C. Defendants' Evidence Negated Any Just and Reasonable Inference That Can Be Drawn from Plaintiffs' Testimony And Demonstrated That Plaintiffs Were Paid More Than Was Legally Required

Even if a just and reasonable inference could be drawn from Plaintiffs' testimony, Ms. Koo met her burden by negating the reasonableness of that inference and establishing that Plaintiffs were paid in excess of what the law required.

An employer can negate a reasonable inference drawn from a plaintiff's testimony by offering consistent and more credible evidence that contradicts the plaintiff. *See, e.g.*, *Berrios*, 849 F. Supp. 2d at 384. Ms. Koo and other witnesses provided consistent testimony, which was corroborated by documentary evidence[13] that provided a more credible account of the Plaintiffs

---

[13] Both the FLSA and NYLL require employers to maintain and keep records of their employees' hours and wages, *see generally* 29 C.F.R. § 516; NYLL § 195, but neither statute defines "records." The FLSA specifically notes that "[n]o particular order or form of records is prescribed by the regulations," 29 C.F.R. § 516.1, and courts have construed both statutes liberally, permitting reliance upon a wide variety of employment records. *See e.g.*, *Hodgson v. A. W. Crossley, Inc.*, 365 F. Supp. 1131, 1134 (S.D.N.Y. 1973) (accepting any "form of informal record by which a small business might elect to keep track of such facts as time signed in and out, hours worked or individual earnings"). Ms. Koo's records are identical or similar to those

hours worked and wages paid.  In fact, that testimony and evidence demonstrated that Ms. Koo paid Plaintiffs more than they were owed.

### 1.  Plaintiffs Worked Fewer Hours Than They Claimed

Ms. Koo presented reliable documentary evidence and credible, consistent testimony from several witnesses establishing Plaintiffs' work hours based on:  Koodo Sushi's operating hours; when employees arrived to begin work and left at the end of the day; employees' uninterrupted meal breaks; and the fact that employees did not work between 3:00 p.m. and 5:00 p.m. when the restaurant was closed.  Plaintiffs' work schedules were memorialized in Ms. Koo's documents, including on handwritten schedules she provided to Plaintiffs, the calendar she kept at Koodo Sushi, Seamless Report delivery sheets, and notations in Aldelo.  Plaintiffs often signed these records to certify their accuracy.  *See Coulibaly*, 2013 WL 6021668, at *7 ("Where a plaintiff's testimony is found to be inconsistent with corresponding facts submitted to the court or is otherwise not credible, the court must resolve the inconsistencies in favor of the defendant.").

Each Plaintiff worked fewer hours than he claimed for at least a portion of his employment.  Indeed, consistent witness testimony and Ms. Koo's records demonstrated that Plaintiffs Mastranzo generally worked fifty hours per week.  DPFF ¶ 102.  Likewise, Plaintiff Sanchez generally maintained a fifty hour work schedule, until late 2014, when he began working one shift per day from noon until 3:00 p.m. and stopped working weekends.  DPFF ¶¶ 146, 153.  Plaintiff Gamero generally worked two to four hours per day.  DPFF ¶ 79.  The evidence also demonstrated that Plaintiffs did not begin work before 11:00 a.m., during the 3:00 p.m. to 5:00 p.m. break, or past 10:00 p.m.  *See Mendez v. Findings of Fact & Conclusions of*

that have been deemed "records" by other courts, and, at any rate, are sufficiently reliable to be probative of Plaintiffs' hours, wages, and conditions of employment.

*Law Int'l Food House Inc.*, No. 13-cv-2651 (JPO), 2014 WL 4276418, at \*5 (S.D.N.Y. Aug. 28, 2014) (finding the employer's witnesses to be more credible than plaintiffs' based on the witnesses' demeanor and the substance and consistency of their testimony). Finally, it also established that Plaintiffs took a thirty-minute meal break per shift,[14] that Plaintiffs' did not work during their meal breaks, and that any interruptions were infrequent and insubstantial; therefore, Plaintiffs were not entitled to compensation for that time..[15] *See* DPFF ¶¶ 19-21, 83-84, 121.

### 2.   Plaintiffs Were Compensated More Than They Were Owed

Ms. Koo's evidence not only negates the fundamental inference that Plaintiffs wish the Court to draw—that their wages fell short of that required by law—it establishes that they were in fact paid more than they were owed. Indeed, based on contemporaneously created records of wage payments in Aldelo, the calendar maintained by Ms. Koo, signed Seamless delivery sheets, as well as credible testimony, it is clear that Ms. Koo paid each Plaintiff hourly wages[16] that exceeded the minimum amount they were owed.

---

[14] Ms. Koo was entitled to deduct meal breaks from Plaintiffs' compensable working time pursuant to both the FLSA and NYLL. 29 C.F.R. § 785.19(a); *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58 (2d Cir. 1997); NYDOL Re: NYLL § 162 (April 19, 2007). An employee is not required to be compensated unless during that time he or she "performs activities predominantly for the benefit of the employer.'" *Perkins v. Bronx Lebanon Hosp. Ctr.*, 2016 WL 6462117, \*4 (Francis IV, M.J.) (S.D.N.Y. Oct. 31, 2016) (citing *Reich*, 121 F.3d at 64). A break does not become compensable work time, even if interrupted by work duties, provided the interruptions, "[c]onsidered in the aggregate . . . [were] neither substantial, nor regularly occurring." *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 652 (2d Cir. 1995).

[15] None of the Plaintiffs presented contrary evidence regarding the half-hour meal breaks provided by Ms. Koo.

[16] To the extent that the Plaintiffs seek to claim—as Sanchez and Mastranzo alleged—that Ms. Koo paid them a fixed weekly salary, this was conclusively disproven at trial. They each admitted on cross-examination that their pay varied from week to week depending on the number of hours they worked during that week. DPFF ¶¶ 98(f), 135(e), 168. Moreover, the data recorded in Aldelo plainly demonstrates that Plaintiffs' pay varied week-to-week in proportion to their hours. For example, Sanchez was paid $320 for the week ending March 13, 2011, when Aldelo reflects that he worked only three and one-half days, but was paid $500 the following

Accounting for the minimum required wage payments and applicable credits, Plaintiff Mastranzo's and Plaintiff Sanchez's average weekly pay exceed the minimum they were owed. Specifically, based on Mastranzo's and Sanchez's general 50 hour work weeks, the wages they were owed should be calculated in the following way:

- Applying the applicable minimum wage, 29 U.S.C. § 206; 12 NYCRR § 146-1.2 (2015); 12 NYCRR § 137-1.2 (2009);

- Multiplying the minimum wage by one and one-half times for each hour worked in excess of 40 hours in a given week, 29 U.S.C. § 207(a)(1); 12 NYCRR § 146-1.4;

- Adding, as "spread of hours" pay, an extra hour's pay at the minimum wage for each workday that started more than ten hours before it ended, 12 NYCRR § 146-1.6(a) (2015); 12 NYCRR § 137-1.7 (2009);

- Deducting a tip credit for days on which they performed only delivery work, 29 U.S.C. § 203(m); 12 NYCRR §§ 146-1.3, 3.3 (2015); 12 NYCRR § 137-3.3 (2009);

- Deducting a meal credit for each meal Ms. Koo provided to them, 29 U.S.C. § 203(m); 12 NYCRR § 146-1.9 (2015); 12 NYCRR § 137-1.9 (2009); and

- Accounting for Plaintiffs' half-hour non-working meal break, 29 C.F.R. § 785.19(a); *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 63 (2d Cir. 1997).

Taking into account these factors, the minimum compensation[17] owed to Mastranzo and Sanchez compared to the average wages they were paid are as follows:

---

week, when he worked a full schedule.  DPFF, App'x. A at 2.  Mastranzo's pay varied similarly; for example, he was paid $400 or $375 every week in December 2012, but was paid only $250 and $275 for the weeks covering Christmas and New Year's Day, respectively.  DPFF App'x. A at 9.  Therefore, Plaintiffs are not entitled to take advantage of the presumption that their salary only covered 40 hours, as they allege in their complaint.  *Cf. Moon v. Kwon*, 248 F. Supp. 2d 201, 207-208 (S.D.N.Y. 2002).  In fact, the record demonstrates that, in addition to being paid an hourly rate, plaintiffs were compensated for overtime hours at one and one-half times that rate.

[17] The steps of the applicable calculations are set forth in paragraphs 252, 255, 260, 263, and 265 of Defendants' Proposed Findings of Fact and Conclusions of Law.

**Plaintiff Mastranzo**

| Date Range | Minimum Owed | Average Wage |
|---|---|---|
| Beginning of Employment – December 31, 2013 (185 Weeks)[18] | $340.49[19] | $400.56[20] |
| January 1, 2014 – December 31, 2014 (42 Weeks) | $373.43[21] | $413.69[22] |

**Plaintiff Sanchez**

| Date Range | Minimum Owed | Average Wage |
|---|---|---|
| First Month of Employment (4 Weeks) | $340.49[23] | $342.00[24] |
| One Month into Employment– December 31, 2013 (204 Weeks) | $347.69[25] | $454.03[26] |
| January 1, 2014 – December 31, 2014 (38 Weeks) | $383.75[27] | $539.81[28] |

From the beginning of his employment until the end of 2014, Plaintiff Mastranzo was owed an average of at least $346.58 per week, but received an average of $402.99 per week.   DPFF

---

[18] These averages were calculated based on Ms. Koo's records, and exclude weeks when records reflect that Mastranzo or Sanchez worked fewer or greater hours than their normal schedules of 50 hours (for example, during the holiday season) or where the number of hours they each worked is noted in Aldelo or other trial exhibits.  The employment records on which the averages are based are cited in paragraphs 122, 125, 167, 170-71 of Defendants' Proposed Findings of Fact and Conclusions of Law and can also be found in the Appendix thereto.

[19] DPFF ¶ 252.

[20] DPFF ¶ 122.

[21] DPFF ¶ 255.

[22] DPFF ¶ 125.

[23] DPFF ¶ 260.

[24] DPFF ¶ 167.

[25] DPFF ¶ 263.

[26] DPFF ¶ 170.

[27] DPFF ¶ 265.

[28] DPFF ¶ 171.

¶¶ 127.  Thus, Ms. Koo paid Plaintiff Mastranzo an average of $56.41 more per week than he was owed.  Likewise, Plaintiff Sanchez was owed an average of at least $353.42 per week from the beginning of his employment until the end of 2014, but received an average of $465.46 per week.  DPFF ¶ 173.  Accordingly, Ms. Koo paid Plaintiff Sanchez, on average, $112.04 more per week than he was owed.  DPFF ¶ 268.

No credible evidence submitted at trial provides a basis to find that Plaintiffs' work hours or compensation appreciably differed in the weeks for which records are lacking.  Accordingly, the Court should find that these averages represent the wages that Mastranzo and Sanchez were actually paid, which were above what they were legally entitled.  Likewise, in the weeks for which Mastranzo's or Sanchez's hours worked and wages paid are recorded on existing documents submitted to the Court, they were paid more than the minimum they were owed.  *See* DPFF ¶¶ 258-59, 268-69.

Plaintiff Gamero was also paid in excess of the amount he was owed.  Specifically, based on testimony and documentary evidence that he worked between two and four hours per day, DPFF ¶ 78-81, the hourly amount that Gamero was owed may be calculated as follows:[29]

- Applying the minimum wage, 29 U.S.C. § 206; 12 NYCRR § 146-1.2 (2015); 12 NYCRR § 137-1.2 (2009);

- Accounting for a tip credit, 29 U.S.C. § 203(m); 12 NYCRR §§ 146-1.3, 3.3 (2015); 12 NYCRR § 137-3.3 (2009);

- Prorating the permissible value of a meal credit for each meal Defendants provided to him, 29 U.S.C. § 203(m); 12 NYCRR § 146-1.9 (2015); 12 NYCRR § 137-1.9 (2009); and

---

[29] To the extent Plaintiffs argue that Plaintiff Gamero performed non-tipped, non-delivery tasks, that claim was refuted at trial.  DPFF ¶¶ 76-77.  Because he did not spend time performing such duties, Ms. Koo was entitled to apply a tip credit to Plaintiff Gamero's hourly wage.  12 NYCRR §§ 146-3.3 (explaining that a tip credit may not be applied on any day when a delivery worker performs non-tipped work for two hours or more or 20 percent of his or her shift).

- Accounting for his half-hour non-working meal breaks on days he worked at least three hours.  29 C.F.R. § 785.19(a); *Reich*, 121 F.3d at 63 (2d Cir. 1997).

Taking into account these factors, the minimum compensation owed to Gamero compared to his hourly wage is as follows:

**Plaintiff Gamero**

| Hours Worked | Minimum Hourly Pay | Hourly Pay |
|:---:|:---:|:---:|
| 2 | $4.40[30] | $5.00 |
| 3 | $4.65[31] | $5.00 |
| 4 | $4.94[32] | $5.00 |

Therefore, the evidence demonstrates that Gamero, like Mastranzo and Sanchez, was paid more than legally required.

Accordingly, Ms. Koo negated any reasonable inference that could be drawn from Plaintiffs' submissions, *see Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 384 (E.D.N.Y. 2012); *Coulibaly*, 2013 WL 6021668, at *7, and established that Plaintiffs were paid in excess of what the law required.  Thus, the Court should rule in Ms. Koo's favor on Plaintiffs' first through fifth causes of action.

## II.    MS. KOO DID NOT WITHHOLD PLAINTIFFS' TIPS

Customers regularly provided tips to Plaintiffs when they made deliveries on behalf of Koodo Sushi.  DPFF ¶ 32.  It was undisputed that when such tips were paid in cash, by credit card for an order accepted over the phone, or through Delivery.com,  Plaintiffs received the full value of those tips.  DPFF ¶¶ 33, 92, 130, 177.  When customers placed orders through Seamless however, Seamless deducted a fee of approximately 14% from to the entire order, including the tip.  When Seamless remitted the money owed to Koodo Sushi, Seamless forwarded

---

[30] DPFF ¶ 248.

[31] DPFF ¶ 249.

[32] DPFF ¶ 250.

approximately 86% of the tips customers had provided on those orders. DPFF ¶¶ 34, 65, 93, 131, 178. Accordingly, Ms. Koo provided Plaintiffs with cash equivalent to 86% of Seamless tips—*i.e.*, the full value she received from Seamless. DPFF ¶¶ 34, 65, 93, 131, 178. Ms. Koo and Koodo Sushi never received the other 14%.

The FLSA requires that "tips received by such employee [must] have been retained by the employee[.]" 29 U.S.C. § 203(m). Similarly, the NYLL provides that an employer may not "demand or accept . . . or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196-d. These laws serve to ensure that employers cannot profit by siphoning tips that customers intended to direct to their employees. *See, e.g.*, *Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (6th Cir. 1999) (noting, generally "the FLSA's policy of preventing employers from exploiting section 203(m) deductions for profit."); *Winans v. Starbucks Corp.*, 796 F. Supp. 2d 515, 518 (S.D.N.Y. 2011) ("Nor can employers retain '*for themselves* any portion of the employees' tips.'") (emphasis in original) (internal citations omitted). That is not, however, what has occurred here. Plaintiffs essentially ask the Court to hold that restaurant owners must reimburse, from their own revenue, money that has been withheld by a third party (here, Seamless). The FLSA and NYLL do not call for this.

The issue of third-party deductions from tips has most frequently arisen in the context of credit card fees. In that context the Sixth Circuit held that "it is clear that as a matter of law, an employer may subtract a sum from an employee's charged gratuity which reasonably compensates it for its outlays sustained in clearing that tip[.]" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 553 (6th Cir. 1999). Although the factual scenario before the Court dealt specifically with credit card fees, the Court's holding was broadly applicable to all situations in which the employer would have to bridge the gap between a third party and its employees from

its own funds:  "Whereas Congress intended that . . . a tipped employee must be permitted to retain *all* of his or her gratuities as a prerequisite to the employer's invocation of the statutory tip credit . . . Congress patently did *not* intend that the tipped employee should ever receive *more* than that amount."  *Myers*, 192 F.3d at 553 (emphasis in original).  The court found that "[n]othing in the FLSA evidenced a Congressional intent to compel employers to contribute anything to any customer's tip, including any funds required to 'cash out' a charged tip for the benefit of the employee."  *Id.* at 554.  This same rationale is enshrined in the NYLL regulations, which explicitly provide that "an employer is not required to pay the employee's pro-rated share of the service charge taken by the credit card company for the processing of the tip."  *See* 12 N.Y.C.R.R. § 146-2.20.

The same reasoning plainly applies to fees deducted by online delivery services, although no controlling case law directly addresses this scenario.  The only authority in this district to the contrary is a single unpublished opinion, *Allende v. PS Brother Gourmet, Inc.*, No. 11-cv-5427 (AJN), 2013 WL 11327098 (S.D.N.Y. Feb. 1, 2013).  In *Allende*, the court limited the holding of *Myers* to apply only to credit card fees.  It reasoned that allowing deductions based on the service fees was contrary to *Myers* and N.Y.C.R.R. § 16-2.20 because those fees exceeded the amount necessary to convert tips paid by credit cards to cash.  *Id.* at *6.  Defendants respectfully submit that *Allende* was wrongly decided.  As explained above, although *Myers* dealt with credit cards fees, its reasoning was grounded in the unfairness of forcing employers to reimburse employees for deductions made by third parties.  *Myers*, 192 F.3d at 553 ("Nothing in the FLSA evidenced a Congressional intent to compel employers to contribute anything to any customer's tip[.]").  There is no principled distinction between the money deducted by credit card companies as the price of converting those payments to cash and the money deducted by delivery services to

34

facilitate the processing and remittance of the same gratuities.  *Allende* does not explain what such a distinction could be.

Nor does the existence of an explicit regulatory exception pertaining to credit card fees in N.Y.C.R.R. § 146-2.20 (and the lack of a corresponding regulation explicitly dealing with online delivery services) dictate a contrary result.  The plain text of NYLL § 196-d bars employers from "retain[ing]" gratuities.  That the section 146-2.20 interprets the statute as it relates to a specific factual scenario (credit card fees), does not exclude the application of its reasoning to all other situations, especially when doing so would contradict the plain text of the statute itself.  That is particularly true in the context of recent innovations, such as online food delivery services.  To hold otherwise would  force the employer to "liquidat[e] employee tips at its own expense." *Myers*, 192 F.3d at 554.

For these reasons, this Court should find that Ms. Koo did not "retain" the portion of tips that Seamless withheld, and that she is not liable to them for the difference.  As such, Plaintiffs' ninth cause of action should be dismissed.

### III.     PLAINTIFFS WERE NOT REQUIRED TO PURCHASE TOOLS TO PERFORM THEIR JOB DUTIES

Plaintiffs are not entitled to recover the costs of "tools of the trade" they claim they were required to purchase in connection with their employment at Koodo Sushi.  Gamero claims that he bought two bicycles, Mastranzo claims that he purchased bicycle safety equipment, and Sanchez claims that he bought chef's clothing and a sushi knife.

An employer is liable for the costs of tools of the trade used by an employee only when the employee is *required* to purchase tools that will be used for the performance of the employer's particular work, and the cost of said tools purchased by the employee reduces his wage below the minimum required under the FLSA or NYLL.  *See Chen v. New Fresco Tortilla*

*Taco LLC*, 2015 WL 5710320, *4 (S.D.N.Y. Sept. 25, 2015) (explaining that the FLSA and NYLL prohibit an employer from "requiring employees to purchase the tools of their trade" if the purchase cuts into the minimum wage the employer is due under the labor laws); 29 C.F.R. § 531.35; NYLL § 198-b.  In other words, there is no liability to the employer for requiring an employee to purchase a tool for work if the cost of the tool does not reduce the employee's earnings below the minimum wage.  *See Lin v. Benihana Nat'l Corp.*, 755 F.Supp.2d 504, 511-12 (S.D.N.Y. 2010).  To determine whether the required purchase impermissibly reduced the employee's wage, the cost of the tool is amortized over the course of the employee's employment.  *See Chen*, 2015 WL 5710320, at *5.

Plaintiff Gamero testified that he purchased two bicycles, at a cost of $150 and $200 respectively, to work at Koodo Sushi.  DPFF ¶ 98(h).  As Ms. Koo testified, however, Gamero already owned a bicycle when she hired him, rendering any further purchase unnecessary.  DPFF ¶ 94.  Nor did he explain why a *second* bicycle would be necessary.  *See Jrpac*, 2016 WL 3248493, at *33 (declining to consider the cost of a second bicycle purchased by a deliveryman because he did not explain why he purchased more than one).  In fact, Gamero did not suggest that Ms. Koo instructed him to purchase a bicycle or even explain why a single bicycle was necessary to effect deliveries for Koodo Sushi.  *See Huo v. Go Sushi Go 9th Ave.*, 2014 WL 1413532, at *4 (S.D.N.Y. Apr. 10, 2014) (declining to find liability for bicycle where plaintiff's allegations about its necessity were "conclusory and inadequate").  Accordingly, Plaintiff Gamero cannot recover for the costs of either bicycle.[33]

---

[33] Plaintiff Gamero also alleged in his complaint that he was required to purchase a helmet and/or lights, but presented no evidence at trial to that effect. As Ms. Koo explained, she provided employees with bicycle helmets and lights.  DPFF ¶¶ 96, 132-133.

Plaintiff Mastranzo testified that he purchased a helmet for $25 and two bicycle lights worth $10 each to perform his job duties at Koodo Sushi.  DPFF ¶ 135(g).  Ms. Koo credibly explained, however, that she provided helmets and bicycle lights free of charge to employees. DPFF ¶¶ 96, 132-133.  Moreover, Mastranzo failed to present evidence that Ms. Koo instructed him to purchase bicycle equipment.  Finally, the negligible cost of the items did not reduce Mastranzo's wages below minimum wage.  When amortized over the 261 weeks of his employment, the alleged $45 cost of the bicycle equipment reduced his wages by an average of approximately $0.17 per week.  DPFF ¶ 289.  As established in section I.C, Plaintiff Mastranzo's wages exceeded the minimum he was owed by an average of between $56.41 per week from the beginning of his employment until the end of 2014.  *See* DPFF ¶ 258.[34]  Thus, Mastranzo's tools of the trade claims must fail.

Plaintiff Sanchez testified that he purchased two chef hats for a total of $20, two aprons for a total of $20, and two chef robes for $25 or $30 each.  DPFF ¶ 184(g).  However, Ms. Koo proffered credible evidence that she provided employees, including Sanchez, with paper hats, including an exemplar of the hat itself.  *See* DPFF ¶ 179.  Ms. Koo's and other corroborating testimony established that she provided employees, including Sanchez, with a Koodo Sushi logo t-shirt, and did not require him or any other sushi preparer to wear an apron or a chef robe. DPFF ¶¶ 182-183.

---

[34] Mastranzo failed to allege that he purchased a helmet or bicycle lights in the Complaint, casting further doubt on the credibility of this assertion, which was first raised at trial.  *See* Compl. ¶¶ 59-78; *see also Montellano-Espana v. Cooking Light Inc.*, 2016 WL 4147143, at *3 (E.D.N.Y. Aug. 4, 2016) (finding the plaintiff's testimony on tip deduction not credible because he first raised the claim on direct examination and did not allege it in his complaint).

Sanchez was also not required to purchase a sushi knife.[35]  Both Ms. Koo and the head sushi chef, Joe Zhou, consistently testified that it was not necessary for Plaintiff Sanchez to purchase his own knife, and that many knives were available to be used.  DPFF ¶¶ 180-181. Although Defendant Koo testified that she "convinced" Sanchez to buy a new knife due to the spiritual connection between a sushi chef and his knife, her testimony demonstrates that Sanchez was not required to purchase the knife but did so for aesthetic reasons.  DPFF ¶¶ 180-181; *Hernandez v. Jrpac Inc.*, No. 14-cv-4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (finding that raincoat was not compensable because "it was primarily for [plaintiff's] benefit and not defendants").

Finally, Plaintiff Sanchez's claim for compensation for "tools of the trade" fails because the total alleged cost of those items (between $435 and $440) did not reduce his wages below minimum wage or his overtime wage.  Amortized over the course of Sanchez's 284 weeks of employment, those purchases reduced his weekly wages by an average of no more than $1.55. DPFF ¶ 294.  As established in Section I.C.2., from the beginning of his employment until the end of 2014, Ms. Koo paid Plaintiff Sanchez an average of $112.04 per week in excess of the minimum he was owed.  *See* DPFF ¶¶ 268, 294.

For all of the above reasons, Plaintiffs' eighth cause of action must fail.

## IV.    PLAINTIFFS MASTRANZO AND SANCHEZ DO NOT HAVE STANDING TO BRING A CLAIM PURSUANT TO NYLL § 195(1)

Ms. Koo met with each of the Plaintiffs at the time of their hiring to explain the basic aspects of their employment.  DPFF ¶¶ 78, 101, 139, 209.  Nonetheless, all three Plaintiffs assert

---

[35] Plaintiff Sanchez did not allege that his purchase of a sushi knife in the Complaint, and therefore the Court should disregard this claim as not credible.  *See* Compl. ¶ 97 ("Thus, the *total* cost of the 'tools of the trade' Plaintiff Sanchez was required to purchase [two chef hats, two robes, and two aprons] was approximately $110.00" (emphasis added)).  *See Montellano-Espana*, 2016 WL 4147143, at *3.

causes of action pursuant to the New York Wage Theft Prevention Act ("WTPA").  That statute requires employers to furnish employees with a "notice" containing certain specifically enumerated information, including the rate of pay, allowances, the regular pay day, the name of the employer, the physical address of the employer's main office, and a mailing address and telephone number for the employer.  *See*  NYLL § 195(a)(1); *see also Lin v. Benihana Nat'l Corp.*, 2012 WL 7620734, at *2 (S.D.N.Y. Oct. 23, 2012).   However, Plaintiffs Gamero and Sanchez cannot maintain a private cause of action for violation of section 195(a)(1) because they were hired before the statute became effective on April 9, 2011.

As it applied from 2011 to 2013, Section 195(a)(1) required employers to furnish this information to employees both "at the time of hiring" and  "on or before February first of each subsequent year of the employee's employment."  NYLL § 195(1)(a) (2013); *see also Severino v. 436 W. L.L.C.*, No. 13-CV-3096 (VSB), 2015 WL 12559893, at *8 (S.D.N.Y. Mar. 19, 2015).[36] Employers were liable for $50 for each week that the violation occurred or continued to occur, up to $2,500.   NYLL § 195(1)(a) (2013). Although the statute created a private right of action for employees who are not provided with notice pursuant to § 195(1)(a) "within ten business days of his or her first day of employment," it did *not* provide a corresponding cause of action for those who did not receive annual notices on or before February of each subsequent year.  *See* NYLL § 198(1-b); *see also Kone v. Joy Const. Corp.*, 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016); *Yuquilema v. Manhattan's Hero Corp.*, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 26, 2014) ("the NYLL extends this private cause of action to employees whose employer fails to

---

[36]    The requirement to provide an annual wage notice was repealed on February 27, 2015. *See* 2010 N.Y. Sess. Laws ch. 564, § 3 (McKinney); *see also Severino*, 2015 WL 12559893, at *8.

provide the initial notice at their hire, but not for subsequent failures to furnish the annual notice in following years").

Plaintiffs Sanchez and Mastranzo were hired in or around August 2009 and January 2010, respectively, both *before* the WTPA took effect on April 9, 2011. *See* DPFF ¶¶ 99, 136. Prior to that date, an employer was not required to provide wage notices to employees who began working before the effective date of the WTPA. *See Lin*, 2012 WL 7620734, at *8. As a result, the overwhelming weight of authority in this district recognizes that employees who were hired prior to April 9, 2011 do not have standing to bring a claim for a violation of this statute. *See, e.g.*, *Yuquilema*, 2014 WL 4207106, at *11 (quoting *Lin*, 2012 WL 7620734, at *7–8 (finding plaintiffs whose employment predated April 9, 2011 ineligible for recovery)); *Kone*, 2016 WL 866349, at *5 (same); *Canelas v. A'Mangiare Inc.*, 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015); *accord Gonsalez v. Marin*, 2014 WL 2514704, at *7 (E.D.N.Y Apr. 25, 2014). Thus, the Court should hold that Plaintiffs Mastranzo and Sanchez do not have standing to assert claims pursuant to § 195(1)(a) against Defendants.[37]

## V.    PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES

### A.    Ms. Koo Acted in Good Faith at All Times

To the extent they can demonstrate liability, Plaintiffs seek liquidated damages, equal to the total amount of "wages lost," pursuant to both the FLSA and the NYLL. Compl. at pp. 24-

---

[37] The Plaintiffs have also alleged that Ms. Koo did not provide with weekly wage statements as required by NYLL § 195(3), which provides for damages of $100 per week up to a maximum of $2,500. Although Ms. Koo presented each Plaintiff (and required them to sign) either a thermographic receipt or a calendar acknowledging the amount they were paid every week, DPFF ¶¶ 37, 53, Defendants do not contest that those receipts did not meet the specific requirements set forth in NYLL § 195(3). Nor do Defendants contest that Plaintiff Gamero was not provided with a wage notice containing the specific information required by NYLL § 195(1). Therefore, any finding of liability should not exceed $10,000, consisting of $2,500 to each Plaintiff for the violation of NYLL § 195(3), and an additional $2,500 to Plaintiff Gamero for the violation of NYLL § 195(1).

25.  However, they may not recover liquidated damages if the employer can show that it acted in subjective "good faith" with objectively "reasonable grounds" for believing that its acts or omissions did not violate the FLSA.  29 U.S.C. § 260; *See Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014) (explaining that the NYLL "incorporated the federal standard").  To establish subjective good faith, "an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).

Further, under the provisions of the NYLL in place at the time, liquidated damages are capped at 25% of total wages for the period prior to April 9, 2011.[38]  *See Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014).  Similarly, to obtain liquidated damages for the period prior to November 24, 2009, Plaintiff Sanchez bears the burden of demonstrating that Ms. Koo's conduct was willful.  *See Cabrera v. Dream Team Tavern. Corp.*, 2016 WL 6208245, at *2 (E.D.N.Y. Apr. 29, 2016).  To establish willfulness, an employee must establish that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  *Edwards v. City of New York*, No. 08 Civ. 3134(DLC), 2011 WL 3837130, at *5 (S.D.N.Y. Aug. 29, 2011) (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)).

The evidence proffered by Ms. Koo at trial is plainly sufficient to demonstrate good faith.  The record shows that Defendant Koo took active steps to stay abreast of, and compliant with, the labor laws.  Defendant Koo testified at trial that in 2008, before any of the Plaintiffs in this case had been hired, she met with an NYDOL representative in connection with a complaint made by an employee who claimed he had not been properly provided with her "spread of hours"

---

[38]     The statute of limitations under the FLSA is two years, or three years if the Plaintiff can prove that a violation was willful.  29 U.S.C. § 255(a).

pay.  DPFF ¶¶ 24-25.  At that meeting, the NYDOL representative explicitly informed her of the proper way to account for the required "spread of hours" payment as well as the meal and tip credits and meal breaks that she was entitled to take.  DPFF ¶ 25.  Ms. Koo testified that her compensation practices after that point explicitly relied on the instructions she had received from the NYDOL at that meeting.  DPFF ¶¶ 26, 28-30.  In addition, Ms. Koo testified credibly that she regularly visited the Department of Labor website and other relevant Internet websites to keep up-to-date on federal and state labor laws.  DPFF ¶ 27; *see, e.g., Burns v. Blackhawk Mgmt. Corp.*, 494 F. Supp. 2d 427, 436-37 (S.D. Miss. 2007) (finding that employer "formed a good faith belief" based on several employees' analysis of the applicable regulation).  Finally, Ms. Koo testified that, in calculating the wages owed to delivery employees, she believed she was paying slightly more than the plaintiffs were owed, in an attempt to build a compliance "cushion."  DPFF ¶¶ 88, 115, 143; This too is evidence of good faith.  *See Ramos v. Telgian Corp.*, No. 14-CV-3422 (PKC), 2016 WL 1306531, at *15-16 (E.D.N.Y. Mar. 31, 2016) (finding that defendant's switch to a compensation system designed to "ensure overpayment" of wages can be "reasonably construed as demonstrating a good faith belief in the lawfulness of the . . . system, rather than a willful disregard" of defendant's legal obligations).

Moreover, none of the circumstances in characteristic of a willful violation of either statute are present here.  Plaintiffs never complained that their wages were unlawful or brought any alleged violation to Ms. Koo's attention.  *See, e.g.*, *Eschmann v. White Plains Crane Service, Inc.,* No. 11–CV–5881 (KAM)(VVP), 2014 WL 1224247, at *6 (S.D.N.Y. Mar. 10, 2015) (finding an employee's complaints were "sufficient to put the employer on notice about its FLSA obligations and thus establish willfulness.").  Plaintiffs did not allege that Defendants deliberately hired them into certain positions to improperly avoid paying overtime.  *See Young v.*

*Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (affirming finding of willfulness where defendants hired plaintiff into overtime-exempt position even though he performed the duties of a non-exempt employee).  Plaintiffs did not allege they were instructed to lie about their wages or hours.  *See Chao v. Vidtape, Inc.*, 196 F.Supp.2d 281, 295-296 (S.D.N.Y. 2002) (finding willful violation where employer "told his employees to lie about their wages and hours worked").  Nor are Ms. Koo's current practices probative of willfulness during Plaintiffs' employment. *See Inclan v. New York Hospitality Group, Inc.*, 95 F.Supp.3d 490, 503 (S.D.N.Y. 2015).

In short, Ms. Koo sufficiently demonstrated at trial that she took active, good faith steps to ascertain and comply with the FSLA and NYLL.  Plaintiffs have also not proven that any violations, if they occurred, were willful.  Therefore, Plaintiffs have not established any basis for liquidated damages.

### B.   Double Liquidated Damages Are Not Available under the FLSA and NYLL

Plaintiffs' Complaint seeks liquidated damages under both the FLSA and NYLL.  *See* Compl. at pp. 24-25.  However, to the extent that Plaintiffs intend to request cumulative liquidated damages under both statutes for the same injury, they may not do so.[39]

"Plaintiffs may not recover under both the NYLL and the FLSA for the same injury." *Santana v. Brown*, No. 14-cv-4279 (LGS), 2015 WL 4865311, at *5 (S.D.N.Y. Aug. 12, 2015) (noting that a minimum wage violation of the FLSA does not entitle a plaintiff additional compensation when defendant has also violated the NYLL minimum wage requirements).  The

---

[39] Because the statute of limitations under the FLSA is two years (three years for willful violations), at most Plaintiffs could request cumulative damages for a period of two or three years.

prohibition on duplicative recovery extends to the availability of liquidated damages under the FLSA and NYLL.

Prior to amendments to the NYLL that became effective in 2009 and 2011, respectively, when liquidated damages were appropriate some courts in this district awarded such damages under both the FLSA and NYLL because they served a different purpose under each statute. *See, e.g.*, *Ling Nan Zheng v. Liberty Apparel Co.*, No. 99-cv-9033 (RJS), 2009 WL 1383488, at *1 (S.D.N.Y. May 18, 2009); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008).   Those cases relied on the fact that liquidated damages under the FLSA were compensatory, while liquidated damages under the NYLL were punitive. *See Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015).

However, this Court should follow the well-reasoned decision by Judge Sullivan in *Hengjin Sun v. China 1221, Inc.*, 2016 WL 1587242 (S.D.N.Y. Apr. 19, 2016).   There, Judge Sullivan observed the growing "'trend towards denying cumulative recovery of liquidated damages' under the FLSA and NYLL." *Id.* at *4.   Judge Sullivan cautioned that, because both forms of liquidated damages now have the same purpose and practical effect of deterring wage violations *and* compensating underpaid workers, cases prior to the NYLL amendments permitting such double recovery should not be followed. *Id.* Indeed, denial of cumulative recovery is the dominant view in this district. *See, Hernandez v. Jrpac Inc.*, No. 14-cv-4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016) (collecting cases).   To the extent that post-amendment cases award cumulative liquidated damages, they either fail to mention the amendments or inappropriately rely on pre-amendment jurisprudence and therefore should not be followed. *See, e.g.*, *Kernes v. Glob. Structures, LLC*, No. 15-cv-00659 (CM) (DF), 2016 WL

880199, at *5 (S.D.N.Y. Mar. 1, 2016); *Ni v. Bat-Yam Food Servs. Inc.*, No. 13-cv-07274 (ALC) (JCF), 2016 WL 369681, at *3 (S.D.N.Y. Jan. 27, 2016).

For the reasons set forth above, in the event that the Court finds that Defendants are liable to Plaintiffs, and further finds that Plaintiffs are entitled to liquidated damages, Defendants respectfully request that this Court hold that Plaintiffs may not recover cumulative liquidated damages under both the FLSA and the NYLL.

## **CONCLUSION**

For the reasons set forth above and in the accompanying Findings of Fact and Conclusions of Law, Defendants respectfully request the Court to rule in their favor on all claims.

Dated:  New York, New York
       January 13, 2017

                   LATHAM & WATKINS LLP

                   By  /s/ Thomas J. Giblin
                       Richard D. Owens
                       Serrin A. Turner
                       Thomas J. Giblin
                       Eric L. Taffet
                       M. Theodore Takougang (*pro hac vice*)
                       885 Third Avenue
                       New York, New York 10022-4834
                       Telephone: (212) 906-1200
                       Facsimile: (212) 751-4864
                       Email: richard.owens@lw.com
                       thomas.giblin@lw.com
                       eric.taffet@lw.com
                       theodore.takougang@lw.com

                       *Attorneys for Defendants Koodo Sushi Corp.*
                       *and Michelle Koo*