USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 7, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
:
ISRAEL GAMERO, NORBERTO :
MASTRANZO, and OSCAR SANCHEZ, :
*individually and on behalf of others similarly* :
*situated*, :
:
:
Plaintiffs, : 15 Civ. 2697 (KPF)
:
v. : OPINION AND ORDER
:
:
KOODO SUSHI CORP., *d/b/a* KOODO :
SUSHI, RAYMOND KOO, and MICHELLE :
KOO, :
:
:
Defendants. :
:
------------------------------------------------------- X

KATHERINE POLK FAILLA, District Judge:

In an Opinion and Order issued on September 28, 2017 (the "September 28 Opinion" (Dkt. #80)), the Court detailed its findings of fact and conclusions of law following a bench trial that was held to resolve Plaintiffs' wage and hour claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "FLSA"), and the New York Labor Law, §§ 190-199A, 650-665 (the "NYLL"). *See Gamero* v. *Koodo Sushi*, 272 F. Supp. 3d 481 (S.D.N.Y. 2017) ("*Gamero I*"). In brief, the Court found that each of the three Plaintiffs was entitled to some measure of unpaid wages, prejudgment interest, liquidated damages, and/or statutory penalties, but that the measure of each was far less than had been sought. Counsel for Plaintiffs now move to recover attorney's fees, as well as the costs incurred in bringing this action. For the reasons set forth in the remainder of

this Opinion, the Court awards $20,462 in attorney's fees and $5,665.06 in costs.

## BACKGROUND[1]

### A.     The Pretrial Proceedings and the Bench Trial

Plaintiffs Israel Gamero, Norberto Mastranzo, and Oscar Sanchez filed their complaint alleging federal and state labor law violations on April 7, 2015. (Dkt. #1). Defendant Michelle Koo filed a notice of appearance and an answer on May 11, 2015 (Dkt. #4, 5), and appeared *pro se* in this case for approximately one year. Defendant Koodo Sushi Corp. filed an answer on June 8, 2016 (Dkt. #47), after *pro bono* counsel entered a notice of appearance on its behalf and that of Defendant Koo.[2]

During the first fourteen months of the case, a few things occurred: An initial pretrial conference was held on July 15, 2015, and a case management plan was endorsed by the Court the following day. (Dkt. #13). The matter was referred to United States Magistrate Judge Sarah Netburn for a settlement conference, and *pro bono* counsel was appointed on a limited-purpose basis to assist Koo with that conference. (Dkt. #16-22). The matter did not settle, and the Court convened an in-person conference on February 10, 2016, to discuss

---

[1]     For convenience, the Court refers to Plaintiffs' memorandum of law in support of their fees application as "Pl. Fee Br." (Dkt. #88); the supporting declaration of Shawn Clark as "Clark Fee Decl." (Dkt. #87); and Defendants' memorandum of law in opposition to the fees application as "Def. Fee Opp." (Dkt. #89).

[2]     Defendant Raymond Koo was later dropped from the case. *See Gamero I*, 272 F. Supp. 3d at 487 n.1.

2

outstanding discovery issues, and a telephonic conference on March 18, 2016, to discuss the setting of a trial date. (Dkt. #39, 43 (transcripts)).

With the appointment of *pro bono* counsel to represent Defendants at trial, the Court held a second pretrial conference, on May 18, 2016, to set the matter down for trial. (Dkt. #37 (transcript)). Because of a variety of scheduling conflicts, an extended trial date of October 17, 2016 (Dkt. #33), was set; in the interim, discovery was reopened on a limited basis, because so little discovery had been conducted while Koo was proceeding *pro se* (Dkt. #46, 50).

Trial began on October 17, 2016, and continued for two additional days. (*See* Minute Entries for October 17, 18, 20, 2016). The parties submitted proposed findings of fact and conclusions of law on January 13, 2017 (Dkt. #75, 76), and the Court issued its findings of fact and conclusions of law on September 28, 2017 (Dkt. #80).

**B.    The September 28 Opinion**

Of potential significance to the instant motion is the Court's resolution of Plaintiffs' claims for unpaid wages. In the parties' Joint Pretrial Order (Dkt. #53), Plaintiffs provided the following detail for their damages claims:

| Plaintiff | Unpaid Wages | Liquidated Damages and Prejudgment Interest[3] | Unpaid Spread of Hours | Wage Notice Penalties | Wage Statement Penalties | Recovery of Equipment Costs | Totals |
|---|---|---|---|---|---|---|---|
| Gamero | $31,803.50 | $67,900.31 | $3,770.00 | $2,500.00 | $2,500.00 | $425.00 | $108,898.81 |
| Mastranzo | $67,446.00 | $100,612.30 | $9,012.50 | $2,500.00 | $2,500.00 | | $182,070.80 |
| Sanchez | $38,272.50 | $67,471.78 | $10,345.00 | $2,500.00 | $2,500.00 | $110.00 | $121,199.28 |
| | | | | | | | $412,168.89 |

These numbers were then revised in Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Dkt. #75-1):

| Plaintiff | Unpaid Wages | Liquidated Damages and Prejudgment Interest | Unpaid Spread of Hours | Wage Notice Penalties | Wage Statement Penalties | Recovery of Equipment Costs | Totals |
|---|---|---|---|---|---|---|---|
| Gamero | $28,310.50 | $61,590.90 | $0.00 | $2,500.00 | $2,500.00 | $350.00 | $95,251.40 |
| Mastranzo | $63,585.00 | $106,135.27 | $9,012.50 | $2,500.00 | $2,500.00 | $45.00 | $183,777.77 |
| Sanchez | $55,089.84 | $82,696.28 | $0.00 | $2,500.00 | $2,500.00 | $445.00 | $143,231.12 |
| | | | | | | | $422,260.29 |

The Court's view of the case — and, more particularly, its determination of the damages to which each Plaintiff was entitled — were considerably different. As noted throughout the September 28 Opinion, the Court was at times deeply skeptical of Plaintiffs' trial testimony. *See Gamero I*, 272 F. Supp. 3d at 488 ("But in the main, Defendants' account of Plaintiffs' hours and wages was more credible than the accounts Plaintiffs offered. Koo, in addition to evincing genuine concern for her employees' well-being, was by far the most credible witness at trial, and the Court largely accepted her testimony concerning the accuracy of the records she kept."); *id.* at 495 ("Sanchez's and Mastranzo's recollections of their working hours were not that different from

---

[3] Reflecting the uncertain case law at the time, Plaintiffs sought to aggregate liquidated damages under both the FLSA and the NYLL. Subsequent decisions from the Second Circuit make clear that plaintiffs bringing claims under these two statutes may not recover double liquidated damages. *See, e.g.*, *Rana* v. *Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct."); *Chowdhury* v. *Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016) (summary order) (same).

Koo's recollections of the same. This was not the case for Gamero. There were major gaps in Gamero's testimony, and he made many statements that were not believable. Gamero, in short, was not a credible witness."); *id.* at 496 ("In sum, Gamero presented an inconsistent — and in many times, false — account of his hours and wages."). After reviewing the trial testimony and exhibits, and after considering the proposed findings of fact and conclusions of law submitted by each side, the Court calculated Plaintiffs' damages as follows (exclusive of prejudgment interest):

| Plaintiff | Unpaid Wages (including spread of hours) | Liquidated Damages | Wage Notice Penalties | Wage Statement Penalties | Recovery of Equipment Costs | Totals |
|---|---|---|---|---|---|---|
| Gamero | $2,535.00 | $2,535.00 | $2,500.00 | $2,500.00 | $0.00 | $10,070.00 |
| Mastranzo | $3,668.07 | $2,915.04 | $0.00 | $2,500.00 | $0.00 | $9,083.11 |
| Sanchez | $2,311.58 | $972.43 | $0.00 | $2,500.00 | $0.00 | $5,784.01 |
| | | | | | | $24,937.12 |

At the conclusion of the September 28 Opinion, the Court directed the parties to meet and confer on the remaining issues of attorney's fees and costs. When those efforts failed, counsel for Plaintiffs submitted a motion to recover fees and costs along with supporting documentation (Dkt. #86-88), and Defendants filed a memorandum in opposition (Dkt. #89). The Court now proceeds to consider the motion.

**DISCUSSION**

**A.     Applicable Law**

While Plaintiffs brought claims for wage and hour violations under both the FLSA and the NYLL, they are not permitted to "receive a 'double recovery' of back wages" under both statutes. *Hernandez* v. *Jrpac Inc.*, No. 14 Civ. 4176

(PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (quoting *Gen. Tel. Co. of the Nw.* v. *EEOC*, 446 U.S. 318, 333 (1980)). For this reason, the Court's (and the parties') focus has been on the NYLL, which prescribes a higher minimum wage and a longer limitations period. *See Gamero I*, 272 F. Supp. 3d at 499 n.7 ("To be clear, Defendants violated the FLSA *and* the NYLL when they underpaid Plaintiffs. ... But as far as the quantum of damages is concerned, Plaintiffs will recover under the NYLL alone.").

The NYLL permits Plaintiffs to recover their costs and "reasonable attorney's fees." NYLL §§ 198(1-a), 663(1).[4] Determining the latter figure requires the Court to calculate the "presumptively reasonable fee," often referred to as the "lodestar." *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cty. of Albany* (*"Arbor Hill"*), 522 F.3d 182, 183, 189-90 (2d Cir. 2008); *accord Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). This amount reflects "the rate a paying client would be willing to pay ... bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

---

[4] *Cf. Cionca* v. *Interactive Realty, LLC*, No. 15 Civ. 5123 (BCM), 2016 WL 3440554, at *2 (S.D.N.Y. June 10, 2016):

> A court evaluating attorneys' fees in an FLSA settlement may use either the "lodestar" method or the "percentage of the fund" method, but should be guided in any event by factors including: "[i] counsel's time and labor; [ii] the case's magnitude and complexities; [iii] the risk of continued litigation; [iv] the quality of representation; [v] the fee's relation to the settlement; and [vi] public policy considerations." *Lopez* v. *Ploy Dee, Inc.*, 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016) (citing *Goldberger* v. *Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

6

A district court calculates the presumptively reasonable fee by multiplying the reasonable number of hours that the case requires by the reasonable hourly billing rate. *Millea*, 658 F.3d at 166. In so doing, the court must examine the particular hours expended by counsel with a view to the value of the work product to the client's case. *See Lunday* v. *City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (per curiam). The court is to exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorney's fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records. *N.Y. State Ass'n for Retarded Children, Inc.* v. *Carey* ("*Carey*"), 711 F.2d 1136, 1147-48 (2d Cir. 1983).

**B.     Calculating Reasonable Attorney's Fees**

    **1.     Determining the Reasonable Hourly Rate**

A reasonable hourly rate represents what "a reasonable, paying client would be willing to pay," and varies by both practice area and location. *Arbor Hill,* 522 F.3d at 184, 192; *see generally Perdue*, 559 U.S. at 552 ("a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case").[5] A court's determination of this rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee

---

[5]    The relevant community "is the district in which the court sits." *Farbotko* v. *Clinton Cty. of N.Y.*, 433 F.3d 204, 208 (2d Cir. 2005) (citing *Polk* v. *N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

7

applicant's counsel," and may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Townsend* v. *Benjamin Enter., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko* v. *Clinton Cty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005)).

Additionally, a court may adjust the hourly rate to account for other case-specific variables, sometimes referred to as the "*Johnson* factors," which include:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the customary fee; [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the client or the circumstances; [viii] the amount involved and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the "undesirability" of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

*Hensley* v. *Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson* v. *Ga. Highway Exp.*, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

In the instant case, Plaintiffs' attorneys seek hourly rates of $450 for partner Michael Faillace; $375 for associate Shawn Clark and former associate Raquel Gutierrez; and $350 for associate Marisol Santos. (*See* Pl. Fee Br. 3-6; Clark Fee Decl., Ex. A). The Court begins with Mr. Faillace, who has extensive experience in this area of the law. The Court has reviewed many FLSA/NYLL fees decisions from district courts in the Southern and Eastern Districts of New York, and it recognizes that there has not been perfect consistency in assessing the reasonableness of counsel's rates. However, focusing on more recent

decisions from this District, and finding none of the *Johnson* factors to counsel in favor of a higher rate, the Court concludes that a rate of $400 for Mr. Faillace is reasonable on the specific facts of this case. *See, e.g., Pineda* v. *Frisolino, Inc.*, No. 15 Civ. 3774 (GBD) (BCM), 2018 WL 3628898, at *2 (S.D.N.Y. July 30, 2018) (adopting Report and Recommendation from magistrate judge that found $400 to be a reasonable rate); *Reyes* v. *Lincoln Deli Grocery Corp.*, No. 17 Civ. 2732 (KBF), 2018 WL 2722455, at *9 (S.D.N.Y. June 5, 2018) (finding $400 to be a reasonable rate), *order clarified*, 2018 WL 3105070 (S.D.N.Y. June 25, 2018); *cf. Calle* v. *NDG Coffee Shop, Inc.*, No. 16 Civ. 7702 (RJS), 2018 WL 1779347, at *2 (S.D.N.Y. Apr. 12, 2018) (finding $450 hourly rate to be reasonable).[6]

More substantial downward adjustments are appropriate for Mr. Faillace's associates. Shawn Clark seeks $375 per hour, but, given the Court's determination of Mr. Faillace's rate, it must titrate Mr. Clark's requested rate to

---

[6] *See generally Rosales* v. *Gerasimos Enter. Inc.*, No. 16 Civ. 2278 (RA), 2018 WL 286105, at *2 (S.D.N.Y. Jan. 3, 2018):

> Turning first to Faillace's requested rate, $450 per hour is, as this Court has recently noted, on the high end of the acceptable range. *Mendoza* v. *CGY & J Corp.*, No. 15-CV-9181 (RA), 2017 WL 4685100, at *2 (S.D.N.Y. Oct. 17, 2017). Indeed, it may presently be the maximum rate for senior law firm attorneys in FLSA cases. *See Gonzalez* v. *Scalinatella, Inc.*, 112 F. Supp. 3d 5, 27 (S.D.N.Y. 2015). In the *Mendoza* case, for example, which involved a one-day bench trial and a mid-five-figure damages award, the Court reduced Faillace's hourly rate to $400. 2017 WL 4685100, at *2. Although Faillace has received his $450 rate when he has secured favorable results after complex and extensive litigation, *see Najera* v. *144 Ninth Gotham Pizza, Inc.*, 12-CV-3133 (DLC), 2017 WL 728703, at *2 (S.D.N.Y. Feb. 24, 2017), this case is not nearly so complicated, and the Court deems a reduction of Faillace's rate to $400 per hour appropriate.

account for their considerable differences in experience. Recent decisions from this District have awarded Mr. Clark an hourly rate of between $200 and $250. *See, e.g., Rosales* v. *Gerasimos Enter. Inc.*, No. 16 Civ. 2278 (RA), 2018 WL 286105, at *2 (S.D.N.Y. Jan. 3, 2018) (determining $250 rate to be reasonable for Mr. Clark, citing other decisions from the District that had found a reasonable rate to be between $200 and $250); *Salustio* v. *106 Columbia Deli Corp.*, No. 15 Civ. 6857 (GWG), 2017 WL 5714089, at *2 (S.D.N.Y. Nov. 27, 2017) (same); *Sevilla* v. *Nekasa Inc.*, No. 16 Civ. 2368 (AJP), 2017 WL 1185572, at *5 (S.D.N.Y. Mar. 30, 2017) (same, collecting cases); *but cf. Najera* v. *144 Ninth Gotham Pizza, Inc.*, No. 12 Civ. 3133 (DLC), 2017 WL 728703, at *2 (S.D.N.Y. Feb. 24, 2017) (observing that "$375 [per hour] for Shawn Clark … fall[s] on the higher end of the spectrum in this district, but [is] reasonable given the complexity of this litigation and the favorable results obtained"). The Court concurs with the analyses presented in these decisions, but raises the rate to $300 because of Mr. Clark's first-chair responsibilities at the bench trial in this matter.

By contrast, Ms. Gutierrez is entitled only to a lower rate of $250. She left the Faillace firm well before trial, and had minimal experience in wage and hour law at the time she began working on this case. (*See* Pl. Fee Br. 5-6 (reciting that Ms. Gutierrez joined the firm in February 2015 after three years at the Kings County District Attorney's Office)). *Compare Pineda*, 2018 WL 3628898, at *2 (awarding $300 per hour to Ms. Gutierrez)), *with Penafiel* v. *Rincon Ecuatoriano, Inc.*, No. 15 Civ. 112 (PAE), 2015 WL 7736551, at *3

(S.D.N.Y. Nov. 30, 2015) (concluding that the "appropriate rate for inexperienced associates [including Ms. Gutierrez] was $175 per hour"). And the Court finds similarly that Ms. Santos, who joined the Faillace firm — and the trial team — just before trial commenced, but had prior experience in wage and hour litigation, is also entitled to a $250 hourly rate. *See Pastor* v. *Alice Cleaners, Inc.*, No. 16 Civ. 7264 (JLC), 2017 WL 5625556, at *8 (S.D.N.Y. Nov. 21, 2017) ("The Court finds the $250 per hour rate billed by Santos reasonable, as she has a similar number of years of experience and the rate is consistent with other recent awards." (collecting cases)); *cf. Portillo* v. *New Ko-Sushi Japanese Rest., Inc.*, No. 16 Civ. 2429 (JMF), 2017 WL 3995602, at *1 (S.D.N.Y. Sept. 8, 2017) (finding a $200 hourly rate to be reasonable).

### 2. Determining the Hours Reasonably Expended

The next step in the Court's analysis is to determine whether the number of hours expended by each of Plaintiffs' counsel was reasonable. As noted, the Court has been admonished to "take[] account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven* v. *Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). "In so doing, 'the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" *Id.* (quoting *DiFilippo* v. *Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)); *accord Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012) ("In assessing the reasonableness of attorney's fees, a court looks to the amount of time spent as

11

reflected in contemporaneous time records, and then decides how much of that time was 'reasonably expended.' If the district court finds that some of the time was not reasonably necessary to the outcome of the litigation, it should reduce the time for which compensation is awarded accordingly." (citation omitted)).

In support of their fee application, Plaintiffs' attorneys have submitted the requisite summary of time records "specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148. The Court notes that while counsel are not required to "record in great detail how each minute of [their] time was expended," and need only "identify the general subject matter of [their] time expenditures," *Hensley*, 461 U.S. at 437 n.12, vague or "block-billed" time records may be insufficient to substantiate a party's claimed expenditure of time, *see Thai-Lao Lignite (Thailand) Co., Ltd.* v. *Gov't of Lao People's Dem. Repub.*, No. 10 Civ. 5256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (collecting cases).

The Second Circuit has recognized the authority of district courts "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'" *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (quoting *Carey*, 711 F.2d at 1146). While this Court has sometimes implemented this type of reduction, *see, e.g.*, *Pig Newton, Inc.* v. *The Boards of Directors of The Motion Picture Indus. Pension Plan*, No. 13 Civ. 7312 (KPF), 2016 WL 796840, at *7 (S.D.N.Y. Feb. 24, 2016) (imposing

12

across-the-board reduction of 15%), it prefers to consider billing entries on an individual basis, *see, e.g.*, *Echevarria* v. *Insight Medical, P.C.*, 102 F. Supp. 3d 511, 520-22 (S.D.N.Y. 2015). That is what it will do here.

After reviewing the billing records submitted by Plaintiffs' counsel, the Court has identified several entries in which the hours billed are not reasonable. They include the following:

- Precisely because Mr. Faillace has such extensive experience in filing and prosecuting wage and hour complaints, the Court rejects as unreasonable the 7.4 hours allocated to preparing and filing the Complaint in this matter. (*See* Clark Fee Decl., Ex. A, Entries for March 27, 2015, and April 7, 2015). The Court observes in this regard that the Complaint was substantively indistinct from many that have been filed by Mr. Faillace's firm with this Court. Accordingly, it will award only 3.5 hours for those efforts.

- Mr. Clark billed 1 hour for reviewing the case file, apparently after Ms. Gutierrez departed the firm. (*See* Clark Fee Decl., Ex. A, Entry for August 31, 2016).[7] The Court will not task Defendants with fees occasioned by changes within Plaintiffs' legal team.

- Ms. Santos billed 4.5 hours for attending depositions. (*See* Clark Fee Decl., Ex. A, Entry for October 10, 2016). Mr. Clark billed the same time, and billed also for preparing for those depositions. (*See id.*, Entries for October 7, 2016, and October 10, 2016). The Court will only credit the time to Mr. Clark.

- Mr. Clark billed 19.5 hours under the nondescript heading "Preparation re Trial," and an additional 2 hours under the slightly-more-descriptive heading "Preparation re Trial, Deps." (*See* Clark Fee Decl.,

---

[7] The bulk of the entries for the period from June 2015 until August 2016 were submitted by Ms. Gutierrez. They are extensive, but the Court accepts them all, as they largely track the Court's recollection of the early stages of this case, and the significant efforts undertaken by Ms. Gutierrez at the Court's direction to work productively with Ms. Koo.

13

- Ex. A, Entries for October 5, 2016, October 6, 2016, October 11, 2016, October 12, 2016, October 14, 2016, and October 19, 2016). Based on the Court's observations of the conduct of trial, and considering as well the hours billed for similar (if not the same) work by Ms. Santos, the Court reduces the aggregate figure of 21.5 hours to 10 hours.

- Mr. Clark and Ms. Santos have very different figures for the amount of time they were engaged in the actual trial. (*See* Clark Fee Decl., Ex. A, Entries for October 17, 2016, October 18, 2016, and October 20, 2016). The Court will use Ms. Santos's lower figures.

- Mr. Clark and Ms. Santos jointly billed 13 hours for the preparation of Plaintiffs' Proposed Findings of Fact and Conclusions of Law. (*See* Clark Fee Decl., Ex. A, Entries for January 5, 2017, January 9, 2017, January 11, 2017, January 12, 2017, and January 13, 2017; *see also* Dkt. #75). However, the document itself comprises 33 pages of proposed findings and conclusions and a two-page chart. More importantly, substantial portions of the document were basic legal precepts that seemed cut and pasted from other documents. For this category of work, the Court will allow 8 hours, reducing each of Mr. Clark's and Ms. Santos's submitted entries by 2.5 hours.

Thus, the Court determines that the reasonable hours attributable to Mr. Faillace are 7.05; to Ms. Gutierrez are 34.9; to Mr. Clark are 46.45; and to Ms. Santos are 24.

### 3. Reducing the Award Based on Limited Success

Multiplying the reasonable hours figures by the reasonable rates figures determined in the preceding sections yields a tentative fees award to Plaintiffs' of $31,480. Such an award, however, stands in stark incongruity to the actual recovery obtained, exclusive of prejudgment interest, of $24,937.12. Precisely for this reason, Defendants request that the Court reduce the fees awarded by

50 percent, to account for the fact that "Plaintiffs succeeded in recovering a mere 5 percent of their alleged damages[.]" (Def. Fee Opp. 13).

Evaluation of Defendants' argument requires the Court to consider two conflicting lines of precedent. On the one hand, the Supreme Court and the Second Circuit have concluded that a court retains discretion to reduce a fees award to account for limited success. *See Barfield* v. *N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008); *see also Hensley*, 461 U.S. at 436 (observing that in awarding attorney's fees, "the most critical factor is the degree of success obtained").[8] On the other hand, both Courts have also concluded that a statutory fee award need not be proportional to the amount of damages recovered. *See City of Riverside* v. *Rivera*, 477 U.S. 561, 564-65, 574 (1986) (affirming attorney's fee award under 42 U.S.C. § 1988 that was approximately seven times greater than the amount of damages the plaintiffs were awarded); *see also Gonzalez* v. *Scalinatella, Inc.*, 112 F. Supp. 3d 5, 10 (S.D.N.Y. 2015) (observing that "the clear thrust of case law in this Circuit

---

[8] The Court recognizes that the *Henley* decision was specifically focused on a situation where certain claims were unsuccessful, and not where all claims were successful but a substantially lesser amount was awarded than was demanded. *See Hensley*, 461 U.S. at 434 (noting that the "important factor of the 'results obtained'" is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief"). However, subsequent decisions from within this Circuit confirm that a court may also compare the award obtained with the damages initially sought. *See Sanchez* v. *I&A Rest. Corp.*, No. 14 Civ. 726 (DCF), 2017 WL 2537814, at *6 (S.D.N.Y. May 22, 2017) ("'A district court's assessment of the degree of success achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims,' and '[b]oth the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve[,] are key factors in determining the degree of success achieved.'" (quoting *Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)) (applying a 15 percent reduction to fees sought by the Faillace firm)).

15

rejects the need for an FLSA attorney's award of fees to be proportional to the success achieved for the client") (collecting cases).

The Court finds support for a fee reduction on this basis in recent cases from this Circuit, including cases involving Plaintiffs' counsel. *See, e.g., Salustio*, 2017 WL 5714089, at *2 (imposing reduction of 50 percent in case involving the Faillace firm) (collecting cases); *Leevson* v. *Aqualife USA, Inc.*, 296 F. Supp. 3d 503, 526 (E.D.N.Y. 2017) ("The court has considered plaintiffs' affirmation in support of attorney's fees and finds that plaintiffs' hours and rate are reasonable, but must be reduced to reflect plaintiffs' degree of success. Because the FLSA claims comprised roughly half of plaintiffs' counsels' work in this case, the fees are reduced by one-half."); *Bond* v. *Welpak Corp.*, No. 15 Civ. 2403 (JBW) (SMG), 2017 WL 4325819, at *7 (E.D.N.Y. Sept. 26, 2017) (imposing 25 percent reduction), *appeal dismissed* (Apr. 9, 2018); *but cf. Alvarado* v. *Five Town Car Wash Inc.*, No. 13 Civ. 1672 (RJD) (JO), 2015 WL 5437254, at *4-5 (E.D.N.Y. July 23, 2015) (rejecting defense request for reduction based on limited recovery, while acknowledging "modest" recovery of approximately 20 percent of damages sought), *report and recommendation adopted*, 2015 WL 5444930 (E.D.N.Y. Sept. 15, 2015).

After reviewing *Barfield* and its more recent progeny, the Court concludes that it will reduce Plaintiffs' tentative attorney's fees award by an additional 35 percent. In so doing, the Court wishes to make clear the bases of its decision. To a degree, the Court has considered the enormous disparity (even setting aside the change in the law concerning liquidated damages) between the

16

damages Plaintiffs originally sought and those they ultimately were awarded. But that is not the principal basis for the reduction. In no way does the Court wish to penalize counsel for bringing difficult cases — that is precisely why the FLSA and the NYLL contain fee-shifting provisions. And this Opinion should not be read to disincentivize attorneys from bringing these important cases, which in this District disproportionately affect poor and undocumented workers who can be easy prey for unscrupulous employers. What happened in the instant case, however, is different: Perhaps because of inattention, Plaintiffs' counsel did not adequately probe their clients before taking their claims to trial. As an immediate result, Plaintiffs' counsel argued for wildly outsized damages awards that were at odds with the facts of the case, even when presented in discovery with records of Plaintiffs' employment. More problematically, however, counsel allowed at least one Plaintiff to present perjured testimony at trial. The Court will not punish a plaintiff's attorney for bringing a marginal case, but it will punish the attorney for subverting, or permitting the client to subvert, the trial process. Thus, the Court will award attorney's fees in the amount of $20,462.

## C. Calculating Reasonable Costs

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg* v. *Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted); *see generally Chen* v. *E. Market Rest., Inc.*, No. 13 Civ. 3902 (HBP), 2018 WL 3970894, at *4-5 (S.D.N.Y. Aug. 20, 2018) (discussing compensable

costs). Here, Plaintiffs seek $5,665.06 in costs, comprising the filing fee, fees for several transcripts, and the costs of two interpreters. The Court finds, contrary to Defendants' arguments (*see* Def. Fee Opp. 14), that these costs are reasonable and adequately substantiated. Consequently, the Court will award Plaintiffs the full amount of the requested costs.

## CONCLUSION

For the reasons set forth in this Opinion and Order, the Court awards attorney's fees in the amount of $20,462 and costs in the amount of $5,665.06. The Clerk of Court is directed to terminate the motion at docket entry 86.

SO ORDERED.

Dated:    September 7, 2018
             New York, New York

                                            KATHERINE POLK FAILLA
                                            United States District Judge